1              IN THE UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF OHIO
2                       EASTERN DIVISION

3                          - - -

4    Joseph Casagrande,              :
                                     :
5           Plaintiff,               :
                                     :
6           vs.                      :    Case No.
                                     :    2:13-CV-00238
7    OhioHealth Corporation,         :
     et al.,                         :
8                                    :
            Defendants.              :
9
                                 - - -
10
                  DEPOSITION OF ROSE CACCIOPA
11
                                 - - -
12
                              Wednesday, March 12, 2014
13                            9:38 o'clock a.m.
                              Mansell Law, LLC
14                            1457 South High Street
                              Columbus, Ohio  43207
15

16                              - - -

17               MARILYN K. MARTIN,

18          REGISTERED PROFESSIONAL REPORTER

19                              - - -

20

21

22          ANDERSON REPORTING SERVICES, INC.
              3242 West Henderson Road, Suite A
23                 Columbus, Ohio  43220
                      (614) 326-0177
24                  FAX (614) 326-0214

**Rose Cacciopa**
**3/12/2014**                                                          2

1    APPEARANCES:

2              GREGORY R. MANSELL, Attorney at Law
               Mansell Law, LLC
3              1457 South High Street
               Columbus, Ohio  43207
4              (614) 610-4134
               greg.mansell@ohio-employmentlawyer.com
5
                    On behalf of the Plaintiff.
6
               M.J. ASENSIO, Attorney at Law
7              LINDSEY D'ANDREA, Attorney at Law
               Baker, Hostetler
8              65 East State Street, Suite 2100
               Columbus, Ohio  43215
9              (614) 462-2603
               masensio@bakerlaw.com
10             ldandrea@bakerlaw.com

11                  On behalf of the Defendants.

12                        - - -

13   ALSO PRESENT:

14         Joseph Casagrande

15                        - - -

16

17

18

19

20

21

22

23

24

Rose Cacciopa
3/12/2014                                                           3

```
1                              WEDNESDAY MORNING SESSION
                                 March 12, 2014
2                                9:38 o'clock a.m.

3                              - - -

4                          STIPULATIONS

5                              - - -

6              It is stipulated by and between counsel

7      for the respective parties herein that this

8      deposition of ROSE CACCIOPA, a Witness herein, called

9      by the Plaintiff under the statute, may be taken at

10     this time and reduced to writing in stenotypy by the

11     Notary, whose notes may thereafter be transcribed out

12     of the presence of the witness; and that proof of the

13     official character and qualifications of the Notary

14     is waived.

15                             - - -

16

17

18

19

20

21

22

23

24
```

```
 1                        I N D E X

 2                          - - -

          WITNESS                               PAGE
 3
          ROSE CACCIOPA
 4
                    Cross-Examination            05
 5                  (By Mr. Mansell)

 6                          - - -

 7        EXHIBITS                             MARKED

 8        Exhibit No. 1                         08
          (Computer notes)
 9
          Exhibit No. 2                         20
10        (Fax dated October 1, 2012)

11        Exhibit No. 3                         31
          (Fax from Canyon Medical Center)
12
          Exhibit No. 4                         40
13        (E-mail chain)

14        Exhibit No. 5                         55
          (E-mail chain)
15
          Exhibit No. 6                         59
16        (E-mail chain)

17        Exhibit No. 7                         67
          (E-mail chain)
18
          Exhibit No. 8                         70
19        (E-mail chain)

20                          - - -

21

22

23

24  .
```

Rose Cacciopa
3/12/2014

5

Page 5

1       P R O C E E D I N G S
2              - - -
3              ROSE CACCIOPA,
4    being by me first duly sworn, as hereinafter
5    certified, deposes and says as follows:
6              CROSS-EXAMINATION
7    BY MR. MANSELL:
8    Q.       Would you please state your name for the
9    record.
10   A.       Rose Cacciopa.
11   Q.       Do you mind if I call you Rose?
12   A.       No.
13   Q.       I'm an attorney for Mr. Casagrande and Amy
14   Sayers in the lawsuit. We haven't met before,
15   correct?
16   A.       No.
17   Q.       Have you ever had your deposition taken?
18   A.       No.
19   Q.       I'm going to go over a couple ground rules
20   that will help keep the record straight. The court
21   reporter is taking everything down, so try to keep
22   your answers verbal, "yes," "no," not nods of the
23   head or "uh-huh" or "huh-uh." They're hard for her
24   to take down and keep the record straight. Is that

Page 6

1    fair?
2    A.       Yes.
3    Q.       If at any time you don't understand a
4    question that I'm asking, just let me know. I'll try
5    to rephrase it, ask a better question. I just want
6    to make sure you understand what I'm asking. If you
7    don't tell me, I'll assume you do. Is that fair?
8    A.       Okay.
9    Q.       Is there any medications you're on today
10   that would prevent you from recalling facts
11   truthfully or accurately?
12   A.       No.
13   Q.       Okay. I don't imagine this is going to be
14   a very long deposition, but you might need a break;
15   and if you do, that's fine. Just let me know. You
16   can take as many breaks as you need. All that I ask
17   is if there's a question pending, that we answer it
18   before you take a break. Is that fair?
19   A.       Yes.
20   Q.       Where are you currently employed?
21   A.       OhioHealth.
22   Q.       How long have you been employed with
23   OhioHealth?
24   A.       Seven and a half years from this date.

Page 7

1    Q.       And what's your current position?
2    A.       I'm a disability case manager in the
3    associate health and wellness office.
4    Q.       And how long have you been in that
5    position?
6    A.       For that whole time, seven and a half
7    years.
8    Q.       Tell me what your job duties are in that
9    position.
10   A.       My main role is to help associates return
11   to work; so when they're on a medical leave or if
12   they present restrictions from their doctor, I
13   coordinate that with their manager and -- between
14   them and their manager.
15   Q.       And you know Mr. Casagrande?
16   A.       Yes.
17   Q.       And did you assist him in getting back to
18   work while he was on medical leave?
19   A.       Yes. I was his assigned case manager.
20           MR. MANSELL: We were calling documents
21   plaintiff's exhibits from yesterday?
22           MR. ASENSIO: Yes.
23           MR. MANSELL: We'll just call this
24   OhioHealth Exhibit 1 just in case I want to reuse

Page 8

1    some of the exhibits. Is that okay?
2           MR. ASENSIO: That's fine.
3              - - -
4           And, thereupon, OhioHealth Exhibit No. 1
5    was marked for purposes of identification.
6              - - -
7    BY MR. MANSELL:
8    Q.       I've handed you what we marked as
9    OhioHealth Exhibit 1. Take a second and review this
10   document, please, and let me know when you've had a
11   chance to review it.
12   A.       Yep.
13   Q.       Have you seen this document before?
14   A.       Yes.
15   Q.       And can you tell me what this is.
16   A.       This is the -- a transcript of all my
17   notes on my computer, case management system, our
18   case management system notes.
19   Q.       And do you have -- Go ahead. Sorry.
20   A.       It's okay.
21   Q.       Do you keep this on all the individuals
22   that you're the case manager for?
23   A.       Yes. We have a case management system
24   that is -- you know, contains medical. It's only

Page 9

1  seen by those in associate health and wellness.
2  Q.     And is this something that you personally
3  keep, or does OhioHealth keep it?
4  A.     Well, other people in my office have
5  access, like the people in our office who process
6  the -- you know, FMLA. When they get leave of
7  absence applications, they can go in and make a note.
8  We have a note -- If they're referred to work with
9  the associate, they can make a note on it. So it's
10  really an associate health and wellness tool.
11  Q.     And do you keep track of all
12  communications related to the individual that this is
13  for?
14  A.     Yes.
15  Q.     Okay. I also want to just let you know
16  that the document, at the bottom, they will have
17  Bates numbers on them, if you see in the bottom right
18  corner.
19  A.     Okay.
20  Q.     This helps us refer to documents because
21  you got a stack like that. I don't want to tell you
22  to turn to Page 3. And I'll probably miss a couple,
23  so I'll refer to documents like that so we know we're
24  on the same page.

Page 10

1  A.     Okay. Thank you.
2  Q.     You're welcome. Let's turn to the last
3  page of the document that's Bates labeled 1228. Does
4  this back page reflect when you opened this file for
5  Mr. Casagrande?
6  A.     Yes.
7  Q.     And Mr. Casagrande had several -- multiple
8  leaves of absence while he was with OhioHealth,
9  correct?
10  A.     Yes.
11  Q.     And you were his case manager for all of
12  them?
13  A.     Well, I'm only aware of -- Like, in July,
14  he went off and I was assigned; but I actually don't
15  think I had much contact at that time because the way
16  it works is, you know, I'm assigned to non
17  work-related injury, illness; and then it's up to the
18  case manager. We can call them, say, "Hi. I'm your
19  case manager. You know, I'd like to introduce
20  OhioHealth has transitional work services," that kind
21  of thing. And sometimes -- When I have a lot going
22  on, I will also just send a letter. So I believe I
23  just -- initially for this leave in July, August I
24  sent a letter to kind of tell him that I was his main

Page 11

1  contact.
2  Q.     Okay. If you look, there's three columns;
3  and in the far right column, there is a first initial
4  and a last name. Do you see that?
5  A.     Yes.
6  Q.     Who is A. White?
7  A.     Alice White. She's a disability claims
8  analyst. There's four associates that answer our
9  phones, and they will -- they will get the initial,
10  you know, paperwork, either by mail, by fax, you
11  know, however that the associate hands it in. And
12  they will process and review for -- We -- In
13  associate health, we review for two benefits, FMLA,
14  which is the job protection and temporary disability
15  pay, which is short-term disability pay that
16  OhioHealth pays associates who have been there at
17  least six months and -- as long as they're benefits
18  eligible. Like, they would have to work a certain
19  amount of hours.
20  Q.     And it's my understanding that OhioHealth
21  is self insured for short-term disability.
22  A.     Yes. But I'm used to that term of
23  Workers' Comp. There's self insured Workers' Comp.
24  I mean, short-term is paid out by OhioHealth. Is

Page 12

1  that what you mean?
2  Q.     What's your understanding of how their
3  short-term disability is paid out?
4  A.     Without -- The term short-term is paid out
5  on our paycheck just like normal pay; so it's a
6  benefit from OhioHealth, not through an insurance
7  company.
8  Q.     And then you said you review for
9  short-term disability and FMLA. Explain to me what
10  you mean by "review."
11  A.     Well, the ladies who receive the paperwork
12  will just use, you know -- For FMLA, under the law,
13  you have to, you know, have -- There's two
14  eligibility requirements, that you've worked a
15  certain amount of hours in the rolling calendar
16  year -- we go by rolling, not calendar -- and also
17  that you have worked at least a year.
18  Q.     And so that's something that's reviewed
19  before it gets to you?
20  A.     Yes.
21  Q.     Do you also review it again on your own?
22  A.     No.
23  Q.     Have you had FMLA training?
24  A.     Well, I'm a certified rehabilitation

**Page 13**

1  counselor; so, you know, we are familiar with FMLA,
2  but no specific trainings, but just more going off of
3  the, you know, the two eligibility requirements. My
4  role is not really FMLA. You know, our office
5  reviews for that; and it's more an administration
6  piece. You know, my role is mainly, you know, case
7  management, reaching out to the associate and trying
8  to get them back to work. So I'll work with
9  associates whether they're FMLA protected or not,
10  whether they're getting paid short-term disability or
11  not, we -- whether they're on a Workers' Compensation
12  claim or not. So I'm not really involved with the
13  FMLA administration.
14  Q.      Okay. That's fair.
15          Who is M. Heyder?
16  A.      That's Marsha Heyder. Diane Heyder, but
17  she goes by Marsha Heyder. She's also -- She has the
18  same title as Alice. So there's four ladies who will
19  potentially, you know, receive paperwork.
20  Sometimes -- Any of the four ladies would be
21  receiving the paperwork on any claim; and then, you
22  know, they -- you know, one of them would be in
23  charge of pay. So maybe Marsha got involved because
24  she's going to, you know, look at the case and open

**Page 14**

1  it up, because our office handles the short-term
2  disability pay. So we take over, put in the codes
3  and the time keeping system. Well, my clerks do.
4  That's not my job. But they will -- You know, so
5  there's four of them; and so she probably opened the
6  pay and then saw that, you know, this person was
7  going to be on a leave for a certain amount of time,
8  and then, you know, decided to assign me.
9  Q.      All right. I want to have you turn a
10  couple pages forward to 1226. I want to direct you
11  to the third entry from the bottom, 11/5/2012. Do
12  you see that?
13  A.      Uh-huh.
14  Q.      And it says: "EE called. Initial
15  assessment," and then it has your name on the right.
16  Do you see that?
17  A.      Yes.
18  Q.      If your name is on the right, does it mean
19  that you're entering that?
20  A.      Yes.
21  Q.      And if somebody else's name on is on the
22  right, does that mean they entered the note?
23  A.      Yes.
24  Q.      So all the people that have entered notes

**Page 15**

1  in here have access to this, correct?
2  A.      Yes.
3  Q.      Is November 5, 2012, the first time you
4  learned that Mr. Casagrande was going to be taking a
5  leave of absence?
6  A.      I'm sorry. Can you repeat that. I was
7  reading.
8  Q.      Sure. Is November 5, 2012, the first time
9  that you were notified Mr. Casagrande was going to be
10  taking this leave of absence?
11  A.      Yes. Well, Marsha -- I mean, I didn't
12  note when the manager informed me, but it probably
13  was the same day or around that day.
14  Q.      All right. And you're referring to the
15  previous page, 1227. If you look there on the second
16  entry from the top, it says: "Spoke to manager."
17  A.      Oh, yes. 11/5, yes.
18  Q.      And you spoke with Mr. Casagrande's
19  manager that day?
20  A.      Yes.
21  Q.      And is that Amy Sayers?
22  A.      Yes.
23  Q.      And how do you transcribe notes? You do
24  it while you're on the phone or afterwards based on

**Page 16**

1  what the conversation was?
2  A.      Yeah, both sometimes.
3  Q.      Do you remember anything from that
4  November 5 conversation with Amy Sayers that's not
5  contained in the note on 1227?
6  A.      No. I mean, normally managers -- or, you
7  know, HR sometimes will call and let us know if
8  someone is on leave of absence; and, you know, it
9  all -- As a courtesy to associates, we will send out
10  leave of absence paperwork or put them on a pending
11  FMLA. You have 15 days to return. So instead of him
12  just going off and not getting paid, because, you
13  know, it appeared to be a medical related leave, they
14  called me.
15  Q.      And then let's go back to 1226. There are
16  two entries at the bottom from Marsha Heyder. Do you
17  see those?
18  A.      Yes.
19  Q.      And what prompts Ms. Heyder to send these
20  notification letters, if you know?
21  A.      Well, two things. One is if they receive
22  the paperwork, like the medical paperwork. And, you
23  know, they can review because you also have to -- the
24  office has to verify if it's a serious medical

Rose Cacciopa
3/12/2014                                          8

**Page 17**

1  condition under the FMLA. Well, in this case, we
2  didn't have the medical right away. But we will go
3  ahead and send the denial letter if the other
4  ineligibility -- if there's -- The other requirements
5  for FMLA, you know, are -- he was ineligible; so as
6  soon as they saw that he had worked less than 1250
7  hours, they sent it out. They process many of these
8  each day. That's basically their job, to receive the
9  medical leave of absence paperwork.
10 Q.       So the bottom two entries wasn't something
11 that you were involved with?
12 A.       No.
13 Q.       But you were involved with talking to
14 Mr. Casagrande at some point on November 5, correct?
15 A.       Yes.
16 Q.       And you advised him that he was not
17 eligible for FMLA in that conversation, correct?
18 A.       I don't think I would have -- Yes, I guess
19 I did.
20 Q.       And you were referencing the letter?
21 A.       Right. As -- I was referring to the
22 letter, right. So, yes, I did, that he's eligible
23 for TDP.
24 Q.       And do you believe you saw the letter or

**Page 18**

1  reviewed the letter prior to the phone call with
2  Mr. Casagrande?
3  A.       No. I wouldn't have done that. It's in
4  our system, but it's a form letter.
5  Q.       Okay.
6  A.       So, I mean, I would have seen the note
7  that it would have been denied. A letter was sent.
8  And --
9  Q.       I see what you're --
10 A.       And also knowing he's there less than a
11 year, we -- you know, he's going off on his leave.
12 He's less than that year, he's not eligible. So it's
13 not -- But it wouldn't matter for me working with him
14 because our goal is -- always at OhioHealth is to
15 return people to their job. We're big advocates for
16 the associate in trying to just to get them back to
17 work.
18 Q.       Is it to return to their specific job or
19 to return them to work?
20 A.       Well, you know, the order is -- Like, in
21 my field for, you know, is same job, same company.
22 And if for some reason, you know, permanent, you know,
23 permanent restrictions that go back or because, you
24 know, in this case, you know, if there was

**Page 19**

1  no -- Well, I mean, we were so early on in the
2  process; so, I mean, at the time when Joe was
3  released to return, there would have been a position
4  in his department to go back to. That would have
5  been our first inquiry; and if there isn't, then we
6  would look at other positions within the company.
7  And, you know, being an RN, you know, I felt pretty
8  good that, you know, we could when he was ready.
9  Q.       When he was ready to --
10 A.       When the doctor released him to return to
11 work, you know, depending on when that was and what
12 he needed at that time. You know, there's always RN
13 positions at OhioHealth. I can't guarantee that.
14 You know, as a case manager, I'm not in charge of
15 hiring and firing, you know, that he was
16 what -- We're just there to help bring them back
17 to -- you know, to that point where they can come
18 back.
19 Q.       All right. And then did you tell him that
20 you were going to have to have his medical provider
21 fill out paperwork?
22 A.       Yes.
23 Q.       And then if you look three entries above,
24 there's an entry from you. It says: "Fax to

**Page 20**

1  Dr. Nuss with form B." Do you see that?
2  A.       Yes.
3              - - -
4              And, thereupon, OhioHealth Exhibit No. 2
5  was marked for purposes of identification.
6              - - -
7  BY MR. MANSELL:
8  Q.       I've handed you what's been marked as
9  OhioHealth Exhibit 2. The first page is a cover
10 page, correct?
11 A.       Yes.
12 Q.       And if you look, it's dated 10/1/2012. Do
13 you see that?
14 A.       Yes.
15 Q.       Do you think that's inaccurate at the top
16 too where the fax --
17 A.       That's probably inaccurate.
18 Q.       Probably just from an old form or
19 something?
20 A.       We copy and paste.
21 Q.       But you do believe that this was the fax
22 letter that accompanied the fax on November 5, right?
23 A.       Yes. That's bad.
24 Q.       And if you look on the second page -- I

Rose Cacciopa
3/12/2014                                                                          9

**Page 21**

1 assume you sent this to the office not filled out,
2 correct?
3 A.      Right.
4 Q.      And this is what you received back --
5 A.      Yes.
6 Q.      -- and filled out?
7 A.      Uh-huh. I assumed he was a doctor, but he
8 was actually a nurse practitioner.
9 Q.      So what do you do when you receive this
10 back, the second page?
11 A.      Well, it goes through, like, Marsha and
12 Alice. You know, it's either faxed -- This was
13 probably faxed in. It looks like it was faxed back.
14 And then it shows up in my images box, because I can
15 see the medical that was received. I don't -- I
16 would really note the return to work dates to see
17 when he would be released. But basically, it's --
18 You know, this was -- this was something I would just
19 check to make sure was there so that we have the
20 documentation to support the pay.
21 Q.      For the short-term disability?
22 A.      Yes. For the short-term disability.
23 Q.      And this document says he's able to return
24 to work on November 23, 2012, correct?

**Page 22**

1 A.      Yes.
2 Q.      And do you enter that in the system
3 anywhere or just in the notes?
4 A.      Yeah. I mean, in the system, there's like
5 a return to work screen; and either my associates,
6 when they receive it enter it; or if they didn't
7 update it, I would update it.
8 Q.      And Mr. Casagrande did, in fact, take a
9 leave of absence at that time, right?
10 A.      Yes.
11 Q.      And you're allowed after that point to
12 make sure that he was getting in to see doctors that
13 he needed to and get the treatment that he needed,
14 correct?
15 A.      Yes.
16 Q.      Who is Jean Lefebvre?
17 A.      She's a case manager with OhioHealth
18 group.
19 Q.      So is there a difference between what was
20 your job title and her job title, disability case
21 manager versus case manager?
22 A.      You know, I'm not sure of her exact job
23 title. And normally it would be just me working with
24 the associates. And I think there's other

**Page 23**

1 initiatives like -- I mean, sometimes Aetna will have
2 a case manager and, you know, OhioHealth group -- I
3 guess OhioHealth, the insurance plan to just try to
4 reach out to associates and try to help them from a
5 medical case management. So in our case, you know,
6 Jean had a good rapport with Joe. I had a good
7 rapport with Joe, so we were all just working to help
8 him return to work. So in this case, we did work
9 together, but she doesn't work in our department.
10 Q.      And I want you to look at Page 1125.
11      MR. ASENSIO: On Exhibit 1?
12      MR. MANSELL: On Exhibit 1, yes.
13 Q.      You can set Exhibit 2 to the side. Let me
14 just ask you a question. How do you put the e-mails
15 in here? Do you do a copy and paste from the e-mail,
16 or does it automatically put in the e-mail in?
17 A.      No. It's copy and paste. Sometimes I
18 just copy and paste, and sometimes I forward my
19 e-mail so I can include the, you know, "to," "from."
20 But we're not really held to -- Like, you know, we
21 just kind of put in what we wrote; so, yeah, it might
22 look kind of not formatted.
23 Q.      If you look at the third entry down on
24 November 21, 2012, it's an entry by yourself. It

**Page 24**

1 says: "E-mail to manager. DCA extend TDP."
2 A.      Yes.
3 Q.      What does "DCA" stand for?
4 A.      Disability claims analyst. That's the job
5 title of Alice White, Marsha Heyder and the other two
6 women that work in that position.
7 Q.      And if you look below it, it appears to be
8 copy and paste of an e-mail from Amy Sayers to
9 yourself initially, correct?
10 A.      Yes.
11 Q.      And then the second portion appears to be
12 notes -- your notes?
13 A.      Okay. Which portion are you reading?
14 Q.      If you go to the end of Amy's e-mail,
15 which I assume ends with her pager number --
16 A.      Okay.
17 Q.      -- do you see it starts: "Joe is not
18 ready to return to work"?
19 A.      Yes. I see it. I was reading.
20 Q.      And then it says: "We're trying to secure
21 appointment with specialist and is referring.
22 Providers not being very helpful. I know you have
23 posted/filled the position. I will be referring Joe
24 to work with our workplace accommodation specialist

**Page 25**

1  in HR when ready to return to work." Do you see
2  that?
3  A.      Yes.
4  Q.      What is a workplace accommodation
5  specialist?
6  A.      Well, in our office, we used to have just
7  case managers; but my manager helped create this
8  position because, you know, we have a lot of
9  long-term associates; and, you know, it was sort of
10  an effort to make sure that associates who -- you
11  know, aging workforce and permanent restrictions, so
12  this -- this position was a great creation because
13  their focus is to help associates who have, like, you
14  know, permanent accommodation. And then also they
15  assist with, in this case, job search assistance for
16  associates who might have been displaced due to FMLA,
17  you know, denial and then subsequent, you know,
18  posting and filling of the position.
19        So, again, knowing that, you know, this
20  was the situation, you know, Joe was headed toward,
21  I, you know, was thinking in my head I wanted to call
22  in the workplace accommodation specialist at some
23  point to help him, you know, make sure that there
24  wasn't too much gap between when he was released by

**Page 26**

1  his physician to return to work and actually be on a
2  job.
3  Q.      Is Michael Kramb a workplace --
4  A.      No. He's the HR -- At the time, he was an
5  assistant. He had just begun, and so he was -- You
6  know, I referred to HR, the associate relations reps.
7  Q.      Did Mr. Casagrande work with a workplace
8  accommodation specialist related to this leave? Are
9  you aware?
10  A.      Well, I introduced him to Nancy Miller at
11  some point.
12  Q.      So that's Nancy Miller's --
13  A.      The title, yes.
14  Q.      Job title?
15  A.      Uh-huh. She's a case manager as well,
16  certified rehab counselor and social worker.
17  Q.      So here you're extending his leave to the
18  next pay period, which would be December 8, 2012,
19  correct?
20  A.      Well, I asked them to extend the temporary
21  disability pay, not the leave. But we were -- It was
22  a courtesy because, you know, we were always kind of
23  chasing down medical from his provider.
24  Q.      And you had a lot of contact related to

**Page 27**

1  Joe's leave of absence prior to this, correct?
2  A.      Yes.
3  Q.      So you knew what was going on?
4  A.      Yes. Right.
5  Q.      How long can an employee be on temporary
6  disability pay?
7  A.      The benefit is for 17 weeks in a rolling
8  calendar year, 120 days. But it really is
9  based -- The -- We have to have a medical note to
10  extend it, so even though we might tell him, "Your
11  temporary disability pay will expire at this date,"
12  there needs to be medical to back it up.
13  Q.      That's just the max, but they're still
14  going to have to have something to entitle them to
15  that?
16  A.      Yes. Yes.
17  Q.      And also, just from a court reporter
18  standpoint too, I know that we talk and you know
19  where I'm going with the question and you might want
20  to answer it, and I might know where you're going
21  with an answer and may want to ask the question or
22  follow-up question. But just so the court reporter
23  is able to take everything down, try to let me finish
24  my question and then provide an answer.

**Page 28**

1  A.      Okay.
2  Q.      And I'll do the same.
3  A.      Okay.
4  Q.      Was it your understanding that Joe's
5  position was going to be posted?
6  A.      Yes.
7  Q.      Because he was not FMLA eligible?
8  A.      Well, there was a -- most likely a
9  business need to post the position. So -- But, yes,
10  normally, you know, if they're denied, the manager
11  would have the option to post if there was a business
12  need.
13  Q.      All right. So when you say there was
14  mostly a business need, are you just saying under
15  normal circumstances?
16  A.      It's not up to me. It's more of a manager
17  decision.
18        MR. ASENSIO: Let him finish his question.
19  BY MR. MANSELL:
20  Q.      So when you say there's mostly a business
21  need to fill the position, are you saying under
22  normal circumstances, there probably would be a
23  business need to fill the RN position, or are you
24  talking about this specific situation that you recall

Page 29

1  there being a business need to fill Joe's position?
2  A.      I'm generally speaking.
3  Q.      Okay. Do you have any recollection
4  whether or not there was a business need or that you
5  were aware that there was a business need in this
6  particular situation?
7  A.      Well, Amy had told me that she was going
8  to post the position in the -- in that e-mail.
9  Q.      Did she tell you that there was a business
10 need?
11 A.      Not specifically. I mean, managers can't
12 get permission to post unless there's a need, you
13 know, for an opening.
14      MR. ASENSIO: Just answer the questions.
15 BY MR. MANSELL:
16 Q.      In order to post a position, does a
17 manager have to get approval?
18 A.      Yes.
19 Q.      And before they receive approval, they
20 can't formally post the position?
21 A.      I don't know that. That's HR.
22 Q.      Turn to Page 1222 on Exhibit 1, please.
23 The bottom of this page there's an entry from you on
24 December 11, 2012. Do you see that it says: "Spoke

Page 30

1  to employee"?
2  A.      Yes.
3  Q.      It says: "Informed employee that manager
4  is filling position and sending letter. Didn't want
5  to blindside him." Do you see that?
6  A.      Yes.
7  Q.      So at this point, had you been informed
8  that Mr. Casagrande's position was going to be
9  filled?
10 A.      Yes.
11 Q.      And if you look at the next entry on
12 December 12, 2012, it's from yourself. It says:
13 "Spoke to Dr. DiPietra/Allison." Do you see that?
14 A.      Yes.
15 Q.      At this point, you hadn't gotten an
16 official letter extending Joe's medical time off, had
17 you?
18 A.      I don't recall. But I was -- We were
19 chasing medical a lot, so I don't recall the dates.
20 Q.      What do you mean you were "chasing
21 medical"?
22 A.      I don't recall whether, you know --
23 Q.      Sure. When you say "chasing medical,"
24 you're talking about providers of the individual?

Page 31

1  A.      Yeah. Joe had given me an okay to help
2  get medical, and so he would be covered for temporary
3  disability pay.
4  Q.      And you find that's typical, that it's
5  hard to get in touch with medical providers?
6  A.      Yes. You know, typically it is the
7  associate's responsibility. You know, I was
8  assisting and -- because I had a rapport with Joe and
9  understood what he was going through, so I just --
10 Q.      You were being proactive helping him?
11 A.      Yeah.
12          - - -
13      And, thereupon, OhioHealth Exhibit No. 3
14 was marked for purposes of identification.
15          - - -
16 BY MR. MANSELL:
17 Q.      I've handed you what's been marked as
18 OhioHealth Exhibit 3. Do you recognize this
19 document?
20 A.      Yes.
21 Q.      Do you believe you've seen this document
22 before? I guess that's the same as asking if you
23 recognize it.
24      MR. ASENSIO: The one you gave her is

Page 32

1  highlighted. Is that your copy?
2      MR. MANSELL: Probably.
3  A.      It's pretty hard to read.
4  Q.      This appears to be a fax along with a note
5  from Mr. Casagrande's medical provider; is that
6  accurate?
7  A.      Yes.
8  Q.      And if you look on the second page, I know
9  it's difficult to read because it's a health
10 professional's writing and it's very dark. But are
11 you able to read this?
12 A.      Yes, I am able to read it.
13 Q.      What -- What does it say?
14 A.      "Joe will need continuance" maybe --
15 "continuance of his current disability status." I
16 can't read that -- I think it says "continuance" --
17 continual of his current disability status."
18 Q.      "Continuation" maybe?
19 A.      "Continuation," right. Yes.
20 "Continuation of his current disability status
21 through February" -- there is another word there
22 right before "through" -- "through February 2013."
23 Q.      "At least through"?
24 A.      "At least through."

Rose Cacciopa
3/12/2014                                                                12

### Page 33

1  Q.      So at this point when you received this,
2  did you extend the medical leave until the end of
3  February?
4  A.      Yes, we did as a courtesy because he
5  didn't write an exact date, but it said "through
6  February," so it's hard to get exact dates.
7  Q.      So he wasn't very specific?
8  A.      Yeah. So --
9  Q.      So you erred on the side of --
10 A.      Right. Exactly.
11 Q.      Now, let's look at the next page, 1221.
12 At the bottom of the page, there's a January 1, 2013,
13 entry by you. It says you spoke to Joe. Do you see
14 that?
15 A.      '13?
16 Q.      What did I say? January 3, 2013. Do you
17 see that?
18 A.      Yes, I see it.
19 Q.      And it says: Told him I spoke to Jean;
20 she mentioned re: assistance with return to work. Do
21 you see that?
22 A.      Yes.
23 Q.      Do you remember what your conversation
24 with Jean was about regarding assistance with return

### Page 34

1  to work?
2  A.      I mean, I think -- Not specifically. I
3  mean, generally just talking about help in doing a
4  job search.
5  Q.      So is Jean involved with Mr. Casagrande's
6  work as far as you know?
7  A.      That was my main role really. I mean,
8  Jean actually did a lot more than, you know, I think
9  people in our role -- in her role. I think Joe was
10 anxious about returning to work and -- I mean, not
11 having a job and if, you know, Amy had filled it.
12 And so there was conversation. I mean, I don't
13 remember specifically, you know, the conversation. I
14 do remember with Jean that we just had a conversation
15 about, "Okay. Who's going to lead this because we
16 can't have too many people doing, you know, the same
17 thing as far as return to work."
18 Q.      And did you decide that you were going to
19 lead it?
20 A.      Yeah. That was our role in the
21 department.
22 Q.      And do you remember if in this
23 conversation January 3, 2013, you talked about
24 returning to work with Mr. Casagrande?

### Page 35

1  A.      I mean, we were talking in general. I
2  didn't -- just talking in general about getting back
3  and getting job search assistance. I mean, his
4  doctor wrote him off through the end of February, so
5  he -- you know, he's off work through then medically;
6  but if he was released, you know, and there was no
7  job to go back to; so, yes, we discussed job search
8  and, you know, had to do that. And associates in
9  general, I say even if they're on a disability leave,
10 they're welcome to look on our job board for
11 positions that they think they qualify for.
12 Q.      If Mr. Casagrande received release to
13 return to work on January 3, 2013, do you know if his
14 short-term -- or his TDP pay would end?
15 A.      Typically it would end. In some cases, it
16 could be extended; but typically the rule was that if
17 the -- if the medical released him to work with no
18 restrictions, the short-term disability would end.
19 If he had restrictions and the department couldn't
20 accommodate, then that could be reviewed as to
21 whether to continue the disability pay until some
22 accommodation could be figured out.
23 Q.      Turn to the next page that's labeled 1220.
24 The third entry up is a January 8, 2013, e-mail from

### Page 36

1  John: "Left voicemail," and it's an entry by you.
2  Do you see that?
3  A.      Yes.
4  Q.      And do you know who the "left voicemail"
5  is referring to, to whom?
6  A.      Me. I left probably a voicemail back
7  and -- yes, "left voicemail to confirm a 12:30 time."
8  Q.      So here Jean says: "Joe sounds great and
9  wants to start talking about return to work," right?
10 A.      Yes.
11 Q.      And then you guys talk about scheduling a
12 meeting?
13 A.      Yes.
14 Q.      What was the purpose of the meeting?
15 A.      Well, I thought it would be helpful to
16 just have everybody who was on Joe's team there to
17 help, you know, get him started for a job search, you
18 know, so just -- so that, you know, we would have
19 some applications in so when he was ready to be
20 released medically, you know, he would be at least
21 starting to apply for jobs. And also just as a, you
22 know, case manager counselor, you know, I thought it
23 would be helpful to -- Well, his sister came and
24 his -- We had -- You know, I invited HR. I just

Page 37

1 thought that would help Joe, because a lot of times
2 HR and associates are on the phone, and I figured if
3 we get one HR person to come and see Joe, and they
4 hear of a position -- It's just that networking. It
5 was kind of a networking and also to kind of
6 understand what other departments, you know, Joe
7 would be, you know, interested in going to and have
8 the HR person know and also our workplace
9 accommodation specialist because she could review
10 jobs that, you know, might be a good fit, you know,
11 based on his experience and whatever medical needs he
12 might have when he was released, if any.
13 Q.        And you did schedule a meeting, correct?
14 A.        Yes.
15 Q.        And then you had to reschedule it. Do you
16 recall that?
17 A.        Yeah. Hard to schedule six people.
18 Q.        And that's reflected in the note above,
19 that it's rescheduled from January 11 to January 18,
20 correct?
21 A.        Yes.
22 Q.        You did, in fact, meet on January 18?
23 A.        Yes.
24 Q.        And I know you described generally what

Page 38

1 the purpose of the meeting was, but I want to talk to
2 you about the actual meeting. Do you remember how
3 long it was?
4 A.        Maybe an hour. I don't know. I don't
5 recall.
6 Q.        If you turn to the next page 1219 on
7 Exhibit 1 --
8 A.        Yes.
9 Q.        -- on the bottom, January 16, 2013, you
10 had a phone conversation with Joe that you note here,
11 right?
12 A.        Yes.
13 Q.        And you note that Joe applied for five
14 positions for OhioHealth. Do you see that?
15 A.        Yes.
16 Q.        And it says: "Have you missed more than
17 certain number of days." Do you know what that's
18 referring to?
19 A.        "Applied for 5 positions for OhioHealth -
20 internal..." -- Oh, it might have been on the
21 application. You know, they ask in general about
22 your -- for internal associates, like, you know,
23 possibly that. And you know, sometimes I kind of
24 have little run on sentences just going. So I think

Page 39

1 that's what it was in reference to, like, on the
2 actual online applications, like the form -- forms
3 they have online for filling out. And that's why she
4 would have called Susie in HR.
5 Q.        Go up to 1/8/2013, the entry from Marsha
6 Heyder.
7 A.        Yes.
8 Q.        What does "PAF" stand for?
9 A.        Personal action form, and it's just, I
10 think, a computer term. Like, it basically is your
11 status. So our office -- When someone -- Like, in
12 the people's -- HR Peoplesoft system, it will say
13 you're active, meaning you're at work. And your
14 office will -- If an associate is off for probably
15 more than three or four weeks, they would change the
16 status to leave of absence status. And it -- it's
17 just -- Like, they can't access certain corporate
18 education because, you know, they're not supposed to
19 do work, you know, when they're off work.
20         But basically it's just a -- Our office
21 will direct IS to change the PA if -- to "off work,"
22 and I don't think it was done from the beginning. It
23 should have been done from the beginning.
24 Q.        And --

Page 40

1 A.        Sometimes they miss it so, so they do it.
2 Q.        I don't see any notes from you or anybody
3 else regarding the meeting on January 18, 2013.
4 A.        Right.
5 Q.        Do you know why there aren't --
6 A.        That was a big miss on my part because the
7 meeting was on a Friday, and I should have put notes
8 in.
9 Q.        Did you take notes?
10 A.        No.
11         - - -
12         And, thereupon, OhioHealth Exhibit No. 4
13 was marked for purposes of identification.
14         - - -
15 A.        I know it seems really odd, but I just
16 didn't put it in, and I -- It was a Friday, and I
17 just kind of -- we just went forward with applying.
18 Q.        I've handed you what's been marked as
19 OhioHealth Exhibit 4. I want you to look at the
20 first e-mail timewise. So the bottom e-mail on the
21 page is from you to Susan Talebi to Michael Kramb
22 dated January 18, 8:58 a.m. Do you see that?
23 A.        Yes.
24 Q.        Now, I assume that the actual e-mail was

Rose Cacciopa
3/12/2014
14

**Page 41**

1  sent before the meeting with Mr. Casagrande, correct?
2  A.     Yes.
3  Q.     But then on the bottom of the page there
4  appears to be a note, maybe a sticky note that was on
5  the document that says: "Meeting notes for this
6  meeting on other side of paper." Do you see that?
7  A.     Yes.
8  Q.     Is that your handwriting?
9  A.     No, that isn't my handwriting.
10 Q.     Are you aware if anybody took notes at the
11 January 18 meeting?
12        MR. ASENSIO: Can you read it?
13 A.     Yeah. I was looking at the handwriting.
14 I thought it was going to be -- Well, I mean, there
15 probably was people there with notebooks. I just
16 don't recall.
17 Q.     That's all I'm asking, is whether you
18 recall.
19 A.     Yeah. I don't recall.
20 Q.     Do you remember who was present at the
21 meeting?
22 A.     Yes.
23 Q.     Okay. Who was that?
24 A.     It was Joe's sister, Joe, Jean Lefebvre,

**Page 42**

1  and then on the other side, Michael, Nancy
2  and -- Michael Kramb, Nancy Miller and myself. I
3  believe Nancy was there too.
4        THE WITNESS: No, she wasn't there?
5        MR. ASENSIO: No.
6        THE WITNESS: Sorry.
7        MR. ASENSIO: Just testify. Don't look
8  for anybody else for help on answers.
9  BY MR. MANSELL:
10 Q.     So you don't believe Nancy was there?
11 A.     I don't recall.
12 Q.     Do you ever recall seeing meeting notes
13 from the meeting?
14 A.     I don't.
15 Q.     Was Susan Talebi at the meeting?
16 A.     No. She wasn't. Michael Kramb came in
17 her place.
18 Q.     All right. Tell me what you recall about
19 the meeting.
20 A.     It was more just everyone kind of
21 discussing, you know, what kind of jobs, you
22 know -- you know, finding out what Joe's interest
23 was, you know, and just really kind of presenting
24 what he thought would be a good fit, floors --

**Page 43**

1  different floors. There was talk about, you
2  know -- I mean, because I had knowledge of Joe's
3  medical for that, you know, time period and what he
4  was going through, we were -- and he was a new
5  nurse -- and trying to maybe see if there were any
6  floors relatively speaking that, you know, were less
7  stressful, you know. So I think -- And it was just
8  kind of more of just to get together and, you know,
9  try to -- I mean, a lot of the reasons why I called
10 the meeting was more of because when people are off
11 work, they're feeling disconnected, and we wanted
12 to -- I wanted Joe to make sure that he knew that,
13 you know, I was going to try to advocate, you know,
14 and help him do a job search. And, you know, he
15 was -- By the end of February, he would have been,
16 you know -- hopefully, you know, his doctor would
17 have cleared him. The note estimated to be off
18 through the end of February. So --
19 Q.     Did you discuss his ability to work at
20 that time?
21        MR. ASENSIO: During the meeting?
22 BY MR. MANSELL:
23 Q.     Yes. In the meeting, did you discuss his
24 ability to work as of January 18, 2013?

**Page 44**

1  A.     I mean, the meeting was, you know, a job
2  search. I mean --
3  Q.     Do you remember Joe telling you he was
4  capable of working at that time?
5  A.     Well, I think he anticipated he would, you
6  know, be ready upon release. I mean, he knew that we
7  had to have medical to release him to return to work.
8  So the meeting was really about job search and, you
9  know, the networking.
10 Q.     But if he gave you a return to work, most
11 likely his temporary disability pay would end,
12 correct?
13 A.     Yes. But he also was applying for
14 long-term.
15 Q.     The long-term disability certainly
16 wouldn't be approved if he was able to return to
17 work?
18 A.     Right. Right. Right.
19 Q.     Do you remember discussing Joe not getting
20 a return to work because he didn't know what job he
21 would be returning to work in?
22 A.     No. We -- I mean, I was told he -- Anyone
23 on a leave of absence are welcome to apply for jobs.
24 They can interview. We might have talked about maybe

Rose Cacciopa
3/12/2014

15

1 getting an okay from his doctor to do the job
2 interviews and make sure he was ready because, you
3 know, he wanted -- we wanted to make sure that he
4 felt good to sell himself to the next manager. And
5 then -- And then, you know, if he was offered a
6 position, you know, before he could start work, he
7 would have to have a release for that, you know, to
8 go and that, you know, he should discuss with his
9 doctor what job he had been offered. And that's kind
10 of just general conversation that I advise associates
11 to do so before they take anything that might not be
12 something they'll be successful with, to work with
13 their provider.
14 Q.        So would you agree that there wasn't a
15 need for a return to work or release to work until he
16 had a job to be released to?
17 A.        Well, I mean, that's really -- You know,
18 the physician -- You know, that's up to them, so
19 we -- But as far as pay and -- I mean, the notice,
20 but it's really up to the physician when he's
21 released. I mean, it wasn't something -- We were
22 really more focused on what kind of jobs could he
23 apply to. And for me, I don't have much power when
24 someone applies to a position. You know, it goes

1 into the system, so that's why I wanted -- I was
2 trying to get HR there so that we could, you know,
3 get that moving. Maybe repeat your question.
4 Q.        Did Mr. Casagrande indicate to you that if
5 he received a job before the end of February that he
6 wouldn't be able to return to work?
7 A.        I don't recall.
8 Q.        You did talk about job search in the
9 meeting?
10 A.        Job search?
11 Q.        Did you talk about applying for positions
12 that were immediately available?
13 A.        That were on the job board. So that
14 would -- I mean, you have to go through the interview
15 process, so we met because it takes awhile to get
16 call -- You know, you put in the application, it
17 takes time to get the application going. So, I mean,
18 yes, it would be for positions that were open,
19 available or, you know, as they came up on units that
20 he was interested in working.
21 Q.        So if Mr. Casagrande was offered a
22 position with a start date before the end of
23 February, that's just something you would figure out
24 and deal with at that time?

1 A.        What do you --
2 Q.        Whether he could start working or whether
3 he needed to wait?
4 A.        Well, if his -- if -- If the position
5 would start before his release date, he would have
6 to, you know, meet with his doctor and discuss if he
7 can return or not, you know, based on their plan of
8 care.
9 Q.        Anything that you recall being discussed
10 at the January 1, 2013, meeting?
11 A.        No. It was more of a -- kind of a
12 cheerleading session, just -- His sister was there,
13 we just -- I mean, that's why -- I mean, yeah, it was
14 mainly okay. We got everybody together. Joe's
15 uncle -- He had put in some -- put in for some
16 position. He had some questions for HR regarding,
17 you know, the applications.
18 Q.        Was there a discussion about Michael Kramb
19 assisting him in the job search?
20 A.        Yes. I think we made him, like, a main
21 contact for Joe, because sometimes it was hard to,
22 you know, reach HR. They're -- the associate
23 relations reps they also, you know, work with all the
24 associates that are, you know, working, so working

1 on, you know, their job. So Michael was good enough
2 to say he could be a point of contact.
3 Q.        And now, the position that Mr. Casagrande
4 was formerly in, it had been indicated to you that
5 that was filled?
6 A.        Posted or filled. Like, a lot of times we
7 don't know when things are filled until we ask them,
8 like, if -- so when he's ready to apply, we would go
9 back. So formally -- At the time of his release, you
10 know, we would go back to his -- I would go back to
11 his manager and say, "Okay. Are there any other
12 positions that are open on your floor?"
13 Q.        Did you have that discussion with
14 Ms. Sayers in January?
15 A.        I don't think I had it in January because
16 we weren't -- you know, he wasn't released yet. I
17 mean, but she knew that obviously. We would try to
18 return him to work when he was released.
19 Q.        And why do you say that?
20 A.        Well, that's what we do. We would always
21 call the manager; and if they don't have a position
22 available, we let HR know, and they will help us to
23 try to identify a position. I was just kind of
24 starting that process ahead of time with having

Page 49

1 Michael Kramb there to see if he could identify, you
2 know, positions.
3 Q.      So when you say that she
4 knew -- Ms. Sayers knew that you would try to do
5 that, are you speaking generally, or do you remember
6 a specific --
7 A.      I'm speaking in general. That's my
8 process with, you know, managers. They know that I'm
9 going to get back to them when an associate is
10 released to see if the position is open at that time
11 or a similar position, maybe a different shift in
12 their department because, you know, as -- just our
13 practice is same job, same, you know, company is the
14 first step, and then we look at other jobs.
15 Q.      All right. I want you to look at an entry
16 that's on Page 1219, but the heading is on Page 1218
17 of Exhibit 1. It's the January 25, 2013, entry by
18 yourself. It says: "Spoke to Joe regarding BEH form
19 from Cigna." Do you see that?
20 A.      Yes.
21 Q.      That's what I was going to ask you. Do
22 you know what "BEH" stands for?
23 A.      "Doctor doesn't have to fill out..." --
24 Oh, I wonder if I meant to write "med form." I know

Page 50

1 that's a big jump because -- I mean, I think just a
2 medical form from Cigna because they sent the doctor
3 a behavioral medical form -- behavioral health
4 medical form.
5 Q.      I want you to look at the next page. The
6 second line down says: "Michael can't move forward
7 before knowing what any limitations are for. I
8 thought what we decided." What -- Do you know what
9 that means? And it might mean two separate things.
10 But that first portion of the sentence, "can't move
11 forward" -- or "Michael can't move forward before
12 knowing what any limitations are for" --
13 A.      You know, I mean --
14 Q.      Only what you recall.
15 A.      Just that if someone has restrictions, you
16 know, we would want to know so that we can make sure
17 that any positions identified would fit into that or
18 any advice, like, you know -- like, I don't know any
19 advice that the doctor might have to, you know,
20 be -- to have him be successful at work.
21 Q.      And then the second portion says: "I
22 thought what we decided." Do you see that? Do you
23 know what that's referring to?
24 A.      Well, I don't recall. I mean, it might

Page 51

1 have -- might have been just Joe getting some
2 clarification, you know, from his doctor or, you
3 know, update if there was anything. But, yeah, it is
4 a little bit -- I don't recall.
5 Q.      Let's turn to the next page, 1218. Did
6 Mr. Casagrande ever tell you that ethically he was
7 uncomfortable applying for long-term disability?
8 A.      I don't recall.
9 Q.      Did he ever tell you that he didn't feel
10 like he was still disabled?
11 A.      Well, I don't recall -- I mean, I know Joe
12 would prefer to be, you know, going back to work. I
13 mean, nobody wants to be on long-term disability.
14 But I explained to Joe even though, like, long-term
15 disability says long-term, they can sometimes fill in
16 money in between, you know, when short-term runs out
17 and when they start work or if they -- if he
18 happened -- like, you know, if his doctor wrote him
19 that he could only go back part-time, for instance,
20 the long-term disability company is able to fill in
21 those hours.
22         So I mean, long-term is long-term in
23 respects that he's done with his short-term. I mean,
24 it wasn't -- You know, I certainly did not want, you

Page 52

1 know, Joe to get into the mindset that he could not
2 work. You know, that's never our, you know, goal.
3 Long-term is really just a financial net for that in
4 between because I think his disability pay was going
5 to run out, you know, even prior to his release, his
6 short-term disability.
7 Q.      And if we look at the middle of Page 1218,
8 there's an entry from you on January 30, 2013. It
9 says: "Refax and mailed to Dr. DiPietra. Spoke to
10 employee." Do you see that?
11 A.      I'm sorry. Can you locate it? Oh, yes.
12 Q.      I want you to jump down to the second line
13 at the end of that line on the right. It says:
14 "Employee feeling really frustrated because was told
15 to hold off in applying." Do you see that?
16 A.      Yes.
17 Q.      Do you know why Mr. Casagrande was told to
18 hold off in applying for jobs?
19 A.      No. But he already had put in, like, five
20 jobs or -- and then I told him to put in for three
21 more there. I'm not sure who told him that. But
22 also, like, just kind of common sense with the job
23 search. You don't want to blanket the job -- You
24 don't want to apply for everything because then they

Rose Cacciopa
3/12/2014

17

Page 53

1  kind of think you don't know what position you're
2  going to go into. So I think in general, like,
3  sometimes the accommodation specialists or -- I mean,
4  I'm, you know, just supposing here. But it was more
5  of, "Let's focus on which positions that you want to
6  apply for." I mean, that would be my --
7          MR. ASENSIO: Just answer if you know.
8  A.      I don't know.
9  Q.      And you just said you told him to go ahead
10 and apply for three jobs, right?
11 A.      Yes.
12 Q.      And then it says: "Employee feels doctor
13 will support him." Do you see that?
14 A.      Yes.
15 Q.      Do you know what that's referring to?
16 A.      In the job search.
17 Q.      Did -- Do you remember Mr. Casagrande
18 telling you that he feels the doctor would support
19 him to return to work in those jobs?
20 A.      Well, it would depend on, you know, the
21 job because we would -- You know, we would
22 ask -- See. When we start earlier, before a release,
23 it's always like you have to make sure that whatever
24 job -- I mean, it's kind of outside my office. He's

Page 54

1  applying for the jobs, and if he gets an interview, I
2  mean, that's up to him to go if he gets an offer.
3  You know, our office just needs to make sure there's
4  a release before he returns, you know, to work so --
5  to make sure that he can work. So he can apply and
6  do that all before, you know, he's released. So I
7  think we discussed the doctor -- you know, was the
8  doctor okay with him, you know, interviewing -- you
9  know, just doing a job search because this was a, you
10 know, specific type of medical leave, and he was
11 seeking different, you know, counseling and
12 different, you know, medical plan of care; so I think
13 to support him, just to support him.
14 Q.      So you don't believe -- or you don't
15 recall Mr. Casagrande telling you that his
16 doctor -- he feels his doctor would support him in
17 working in particular positions?
18 A.      Well, no, not in a specific position. I
19 mean, just --
20 Q.      In the positions he identified that he
21 wanted to apply for?
22 A.      Yes. I mean, whether he's -- he said:
23 "Employee feels doctor will support him." It's a
24 part of -- If he gets the job, he felt that the

Page 55

1  doctor would -- I'm supposing. The bottom line is
2  the associate has to have a release, you know, when
3  we -- you know, before they go back to work. If the
4  doctor had taken him off work at a certain date, you
5  know, we can't have him start if he's medically off
6  work. That --
7              - - -
8          And, thereupon, OhioHealth Exhibit No. 5
9  was marked for purposes of identification.
10             - - -
11 BY MR. MANSELL:
12 Q.      I've handed you what's been marked as
13 OhioHealth Exhibit 5. Have you seen this e-mail
14 thread before?
15 A.      Yes.
16 Q.      All right. And let's turn to the second
17 page, which is first in chronological order, which is
18 Bates stamped 1154. And it's an e-mail from you to
19 Nancy Miller from Michael Kramb, correct? It says:
20 "Nancy, Joe has been released as of February 1, 2013,
21 to return to work, but his position in Amy's area has
22 been posted, and associate agrees he needs to apply
23 for nursing jobs with less acuity." Do you see that?
24 A.      Yes.

Page 56

1  Q.      So at this time, had Mr. Casagrande been
2  released or -- Well, strike that.
3          This e-mail indicates that Mr. Casagrande
4  was released as of February 1, 2013, to return to
5  work, correct?
6  A.      I'm sorry. Can you repeat that.
7  Q.      Yes. This e-mail indicates that
8  Mr. Casagrande was released to return to work as of
9  February 1, 2013, correct?
10 A.      Yes.
11 Q.      Do you believe you spoke with Amy at this
12 time about Mr. Casagrande going back to work in her
13 department?
14 A.      I don't recall. I mean -- Yeah,
15 I'm -- The -- "Has been released as of 2/1 to return
16 to his position." I thought it was at the end
17 on -- end of February. So long ago. Do you have a
18 question?
19         MR. ASENSIO: No.
20 A.      Okay. Sorry.
21 Q.      All right. Let's look at Exhibit 1, Page
22 1217. I want to look at the entry on January 31,
23 2013, that says: "Spoke to Rick, EAP." Do you see
24 that?

Rose Cacciopa
3/12/2014                                                        18

Page 57

1  A.      Yes.
2  Q.      In here you make a note that says:
3  "Doesn't feel comfortable ethically to fill out PU"
4  -- which I assume means "patient" -- "work for
5  long-term disability and will refer to PCP" -- which
6  I assume is "primary care physician" --
7  Dr. DiPietra." Did I read that correctly?
8  A.      Yes.
9  Q.      Does this refresh your recollection
10 about --
11 A.      Yes.
12         MR. ASENSIO: Let him finish the question.
13 BY MR. MANSELL:
14 Q.      Does this refresh your recollection about
15 Mr. Casagrande not feeling comfortable ethically to
16 fill out long-term disability paperwork?
17 A.      Yes.
18 Q.      Do you remember if he provided you any
19 reason as to why or any other details related to the
20 long-term disability paperwork?
21 A.      I'm sorry. Can you repeat that question.
22 Why he didn't?
23 Q.      Do you remember if he
24 provided -- Mr. Casagrande provided you any reason as

Page 58

1  to why he didn't feel comfortable ethically filling
2  out paperwork for long-term disability?
3  A.      I mean, it's a statement. It's just clear
4  he didn't feel comfortable ethically to fill out
5  paperwork for long-term possibly because he didn't
6  feel like he needed to be on long-term disability --
7  Q.      That --
8  A.      -- because it wasn't a long-term issue for
9  him, you know.
10 Q.      So that's the inference that can be drawn
11 from your statement, but I'm asking for what you
12 specifically remember.
13 A.      I don't remember.
14         MR. ASENSIO: As a point of clarification
15 for the record, I don't know that there's a
16 foundation that it's her statement, but it's her
17 note.
18         MR. MANSELL: Sure. Okay. That's fair.
19 BY MR. MANSELL:
20 Q.      Let's turn to the next page of Exhibit 1,
21 1216. I want you to look in the -- Towards the
22 middle of the page there's an entry on February 5,
23 2013. It says: "E-mail to Nancy and Michael, CC
24 Susie." It's an entry by you. Do you see that?

Page 59

1  A.      Yes.
2                    - - -
3         And, thereupon, OhioHealth Exhibit No. 6
4  was marked for purposes of identification.
5                    - - -
6  BY MR. MANSELL:
7  Q.      I've now handed you what's been marked as
8  OhioHealth Exhibit 6. Take a second and look at this
9  document. Let me start with the e-mail on the bottom
10 of the page.
11 A.      Okay.
12 Q.      This appears to be an e-mail from you to
13 Nancy Miller and Susie dated February 5, 2013,
14 correct?
15 A.      Yes.
16 Q.      And it says: "I talked to Joe today.
17 He's very anxious as his TDP runs out on 2/12/2013,
18 right?
19 A.      Yes.
20 Q.      And that's when he would stop receiving
21 pay, correct?
22 A.      Yes.
23 Q.      And so when you're saying he's very
24 anxious, do you have an understanding -- or what do

Page 60

1  you mean by "very anxious" here? Was it in relation
2  to getting a job, earning money, if you know what
3  you're referring to here?
4  A.      I think both.
5  Q.      At this point -- Strike that.
6         Let's go to Page 1214 of Exhibit 1.
7  A.      Excuse me. May I have a break?
8         MR. MANSELL: Yeah. Absolutely.
9         (Recess taken.)
10 BY MR. MANSELL:
11 Q.      All right. Back on the record.
12         We were talking about
13 document -- Exhibit 1 in document No. 1214, and I
14 wanted to direct you to the middle of the page,
15 February 14, 2013, an entry by you that says: "Spoke
16 to employee." Do you see that?
17 A.      Yes.
18 Q.      And are these notes from your conversation
19 with Mr. Casagrande? Is that who "employee" refers
20 to?
21 A.      Yes.
22 Q.      Now, I want you to drop down to the middle
23 of that paragraph. It says: "Doctor confirmed okay
24 to release." Do you see that?

Rose Cacciopa
3/12/2014                                                            19

Page 61

1  A.      Yes.
2  Q.      Do you know what that's referring to?
3  A.      You know, a return to work date. Okay.
4  Maybe the March 1 date. I don't -- I don't know
5  because it's kind of -- "doctor confirmed okay to
6  release."
7  Q.      And then it continues and says: "Had
8  meeting with EAP/reg." Went really well. Return as
9  needed." Do you see that?
10 A.      Yes.
11 Q.      And if you don't recall any specific
12 details about what this was referring to or the
13 conversation with Mr. Casagrande, I'm not asking you
14 to guess. Just want to know as you sit here today.
15 Do you remember what you meant by adding those notes?
16 A.      No.
17 Q.      Okay. All right. Let's turn to the next
18 page, 1213. I want to go to the entry 2/20/2013 that
19 says: "Spoke to employee." Do you see that?
20 A.      Yes.
21 Q.      On the second line of that towards the
22 right it says: Employee main reason to call - he
23 received FMLA denial letter and was looking it over;
24 wanted to understand why he was denied. "CM," which

Page 62

1  is case manager, correct?
2  A.      Yes.
3  Q.      And you're the case manager, right?
4  A.      Yes.
5  Q.      Case manager explained the need to have
6  worked one year as well as have 1250 hours in rolling
7  calendar year from day he went off.
8  A.      Yes.
9  Q.      All right. Do you remember the
10 conversation you had with Mr. Casagrande on February
11 20 where he was inquiring about his FMLA denial?
12 A.      Yes.
13 Q.      Tell me what you remember about that
14 conversation.
15 A.      I mean, you know, simply he was asking
16 questions about it, and I explained what I believed
17 at the time to be the law.
18 Q.      And so you're talking about the two
19 criteria?
20 A.      The two criteria from the day he went off
21 work from the leave, from the day he went -- Like,
22 when he was -- went off on his leave of absence, he
23 had not worked there a year.
24 Q.      And you indicated your understanding at

Page 63

1  that time. What did you mean by that?
2  A.      Where?
3  Q.      You just testified that you were taking
4  notes about your understanding at that time.
5  A.      Yes, because -- Well, since, you know, Joe
6  actually brought to your attention that the law -- and
7  I had to bring it to my manager, and it went up to
8  our legal because at the time our office was, you
9  know, reviewing based on had they been here a year
10 when they went off, had they worked a certain number
11 of hours; and those four ladies who get all the
12 paperwork, you know, was reviewing based on this.
13 So --
14 Q.      So do you have a different understanding
15 today than you had then?
16 A.      Yes, sir.
17 Q.      Okay. What is the difference?
18 A.      Well, I mean, it's just very rare that
19 someone has worked 1250 hours in a year and -- but,
20 you know, in retrospect there's a lot of overtime at
21 OhioHealth. So Joe had those hours, so now we have
22 to be cognizant of the fact that when someone goes
23 off and they are denied because of that criteria
24 only, that we need to, you know, track when their

Page 64

1  year hits because I guess my understanding right now
2  is that because he was still employed with OhioHealth
3  even though he was on a leave of absence, he would
4  have been eligible at that time that he hit his one
5  year mark.
6  Q.      So at the time he went off, the only
7  eligibility criteria he wasn't meeting was the one
8  year, correct?
9  A.      Yes. And that -- Yeah.
10 Q.      And at a certain point --
11 A.      And we didn't have the medical at that
12 point either. But they denied it based on the year.
13 That's why the letter went out.
14 Q.      Okay. So you're talking about the initial
15 letter?
16 A.      Yes.
17 Q.      And then at some point you got medical
18 information from his doctor, right?
19 A.      Yes.
20 Q.      And at some point he hit one year while he
21 was still an employee, correct?
22 A.      Yes.
23 Q.      And your understanding today is that he
24 would then become protected after he hit the one year

Page 65

1 and meet all the other -- and met all the other
2 criteria?
3 A.      Correct.
4 Q.      So you then sent an e-mail -- or you said
5 you then forwarded this or contacted your supervisor?
6 A.      Yes.
7 Q.      Who is your supervisor?
8 A.      Chris Moranda.
9 Q.      Did you call her, or did you e-mail her?
10 A.      Well, she works down the hall, so he could
11 have e-mailed her and --
12 Q.      Stopped in her office maybe?
13 A.      Yeah. Which I -- She might not have been
14 available right away, so I might have put it in an
15 e-mail first.
16 Q.      Okay. Do you think all those
17 conversations and e-mails related to the FMLA would
18 have been contained -- or would be contained in
19 Exhibit 1?
20 A.      I'm sorry?
21 Q.      Exhibit 1, the document that you have in
22 front of you.
23 A.      Yes.
24 Q.      And so February 20 was the first time that

Page 66

1 Mr. Casagrande brought up that his interpretation of
2 the -- the FMLA regulations appeared different than
3 OhioHealth's, right?
4 A.      Well, I don't -- I think at that point he
5 was asking me what I thought. I don't think he -- I
6 think he came back a little later. Like, he started
7 asking questions, so then I think -- Then when he was
8 going through the law and sending the excerpts from
9 the law, so we had some e-mail.
10 Q.      Okay. And those -- He wrote you an e-mail
11 on February 21, 2013, correct?
12 A.      Yes.
13 Q.      And that's where he put in FMLA
14 regulations in his e-mail; is that right?
15 A.      That's the next page, right? On 2/20?
16 Yes. Yeah. The next day, 2/21.
17 Q.      Now, did you ever inform legal or inquire
18 with legal related to this issue, or did you talk to
19 other people?
20 A.      My manager.
21 Q.      And did your manager ever tell you when
22 she first contacted legal about this issue?
23 A.      Well, it was pretty -- We tried to do it
24 as soon as possible because, you know -- I mean, we

Page 67

1 had -- If something was wrong, you know, we would
2 correct it. So I mean, I thought it happened pretty
3 fast. I don't remember the actual time period in
4 between. But I mean --
5 Q.      You think less than a week or more than a
6 week?
7 A.      Yeah. It was about -- about that time.
8 Like, it was pretty quick. I mean, I think he was
9 back at work by March. It was as soon as that was
10 cleared. I mean, legal had to look at it, so it took
11 a little time, and it came back. I mean, we were on
12 it though.
13                     ---
14         And, thereupon, OhioHealth Exhibit No. 7
15 was marked for purposes of identification.
16                     ---
17 BY MR. MANSELL:
18 Q.      You can flip over these just so you don't
19 get confused. I'm handing you what's been marked as
20 OhioHealth Exhibit 7. Do you recognize this
21 document?
22 A.      Yes.
23 Q.      And the first e-mail chronologically
24 is -- starts at the bottom of the page, and it's an

Page 68

1 e-mail to Susan Talebi and Amy Sayers from yourself,
2 correct?
3 A.      Yes.
4 Q.      It's dated March 12, 2013, right?
5 A.      Yes.
6 Q.      Do you remember contacting Mr. Casagrande
7 on March 12, 2013?
8 A.      Yes.
9 Q.      And the e-mail I assume provides notes to
10 Susan and -- or Susie and Amy about your conversation
11 with Joe.
12 A.      Yes.
13 Q.      And is this when you first offered
14 Mr. Casagrande a position back with OhioHealth?
15 A.      Yes.
16 Q.      Is this the first time you informed Amy
17 Sayers that Mr. Casagrande would potentially be
18 coming back to her unit?
19 A.      Honestly, I don't recall. I mean, this is
20 when I documented it, that I was, you know,
21 authorized by HR to do this. I mean, we could have
22 said -- I mean, as soon as -- there could have been
23 verbals about that because this was the formal, like,
24 "Okay. Here are the positions." So I mean, I think

Rose Cacciopa
3/12/2014                                                    21

## Page 69

1   what we were going to offer him was the matter of --
2   the positions based on a matter of, you know, what
3   the positions were.
4   Q.        I understand this was a year ago, and
5   so --
6   A.        Yeah.  So --
7   Q.        -- if you only remember what's contained
8   in the e-mails or the documentation, that's okay.
9   But this is our opportunity to find out if you have
10  any other knowledge outside what's contained in the
11  documentation.  So that's all I'm trying to figure
12  out.
13  A.        Okay.
14  Q.        And so on March 12 -- As you sit here
15  today, I want to know if you recall any conversations
16  you had with Amy Sayers before you sent this e-mail
17  on March 12.
18  A.        No.  I don't recall.
19  Q.        Do you recall any phone conversations with
20  Amy Sayers after you told her that Mr. Casagrande may
21  be coming back to her unit?
22  A.        No.  I mean, just to tell her that he's
23  coming back to this unit, he wanted that position.  I
24  probably did talk with her after this e-mail.

## Page 70

1   Q.        Right.  But I -- Do you remember any
2   specific conversations?
3   A.        No, nothing specific.  I mean, it was very
4   brief with the manager.
5                     - - -
6                     And, thereupon OhioHealth Exhibit No. 8
7   was marked for purposes of identification.
8                     - - -
9   BY MR. MANSELL:
10  Q.        I've handed you what's been marked as
11  OhioHealth Exhibit 8.  It's an e-mail thread between
12  you and Mr. Casagrande, correct?
13  A.        Yes.
14  Q.        Do you remember Joe asking you for a
15  formal letter summarizing the points that you guys
16  discussed in the phone call related to his job?
17  A.        Only what I read here.  I wasn't sure if a
18  formal letter was forthcoming.
19  Q.        And you didn't provide any points,
20  correct?
21  A.        No.
22  Q.        And that's what your e-mail reflects above
23  that says, "Hi, Joe.  My pleasure.  I will not
24  be sending a letter or summary points," right?

## Page 71

1   A.        No, because it -- No.
2   Q.        And was there a reason?
3   A.        Well, we were just returning him back to
4   his job, so it's not like a new job offer.  You know,
5   it was more of, "What shifts do you want to work" and
6   "You're going back."  I mean, that's the policy.  If
7   someone's FMLA protected and their job -- well, their
8   job should still be available, so they go back to
9   their job.  And once OhioHealth knew that he should
10  have been FMLA protected, I believe -- you know, that
11  was what we did.  We returned him to his job and gave
12  him an option of shifts, his old shift or some other
13  shift on the same unit.
14  Q.        Did you personally offer Mr. Casagrande on
15  behalf of OhioHealth any pay related to his FMLA?
16  A.        No.
17  Q.        Okay.  All right.  Now, after
18  Mr. Casagrande went back to his job and started
19  working with Amy Sayers, did you have any more
20  involvement with his employment?
21  A.        No.
22  Q.        So then you closed his case file, it
23  appears if you look on the first page of Exhibit 1,
24  on March 19, 2013?

## Page 72

1   A.        Yes.
2   Q.        And is that your last involvement with
3   Mr. Casagrande's employment at OhioHealth?
4   A.        Yes.
5                     MR. MANSELL:  Give me a second.  I might
6   be done.
7                     (Recess taken.)
8                     MR. MANSELL:  I don't have anything
9   further.
10                    (Signature not waived.)
11                    - - -
12                    And, thereupon, the deposition was
13  concluded at approximately 11:44 a.m.
14                    - - -

Rose Cacciopa
3/12/2014                                                                        22

Page 73

1   State of Ohio     :
                    SS:
2   County of Franklin:

3          I, ROSE CACCIOPA, do hereby certify that I

4   have read the foregoing transcript of my deposition

5   given on March 12, 2014; that together with the

6   correction page attached hereto noting changes in

7   form or substance, if any, it is true and correct.

8

9          ROSE CACCIOPA
10

11         I do hereby certify that the foregoing

12  transcript of the deposition of ROSE CACCIOPA was

13  submitted to the witness for reading and signing;

14  that after she had stated to the undersigned Notary

15  Public that she had read and examined her deposition,

16  she signed the same in my presence on the _____

17  day of _____, _____.

18

19         Notary Public

20  My commission expires _____

21         - - -

22

23

24

CERTIFICATE

State of Ohio        :

SS:

County of Franklin:

I, Marilyn K. Martin, Notary Public in and for the State of Ohio, duly commissioned and qualified, certify that the within named witness was by me duly sworn to testify to the whole truth in the cause aforesaid; that the testimony was taken down by me in stenotypy in the presence of said witness, afterwards transcribed upon a computer; that the foregoing is a true and correct transcript of the testimony given by said witness taken at the time and place in the foregoing caption specified.

I certify that I am not a relative, employee, or attorney of any of the parties hereto, or of any attorney or counsel employed by the parties, or financially interested in the action.

IN WITNESS WHEREOF, I have set my hand and affixed my seal of office at Columbus, Ohio, on this

_____ day of _____, _____.

_____

MARILYN K. MARTIN, Notary Public
in and for the State of Ohio
and Registered Professional Reporter

My Commission expires October 15, 2016.

Rose Cacciopa
3/12/2014

1

**WORD INDEX**

< 0 >
05    4:2
08    4:8

< 1 >
1    4:8, 10
  7:24   8:4,
9   20:12
  23:11, 12
  29:22
  33:12
  38:7
  39:5
  47:10
  49:17
  55:20
  56:4, 9,
15, 21
  58:20
  60:6, 13
  61:4
  65:19, 21
  71:23
10    20:12
11    14:11
  15:17
  29:24
  37:19
11:44
  72:13
1125    23:10
1154    55:18
12    1:8
  3:1
  30:12
  59:17
  68:4, 7
  69:14, 17
  73:5
12:30    36:7
120    27:8
1213    61:18
1214    60:6,
13
1216    58:21
1217    56:22

1218
  49:16
  51:5    52:7
1219    38:6
  49:16
1220    35:23
1221    33:11
1222    29:22
1226
  14:10
  16:15
1227
  15:15
  16:5
1228    10:3
1250    17:6
  62:6
  63:19
13    33:15
14    60:15
1457    1:14
  2:3
15    16:11
  74:24
16    38:9
17    27:7
18    37:19,
22    40:3,
22    41:11
  43:24
19    71:24

< 2 >
2    4:8
  20:4, 9
  23:13
  56:15
  59:17
  61:18
  66:15, 16
2:13-CV-0023
8    1:6
20    4:8
  61:18
  62:11
  65:24
  66:15
2012    4:10
  14:11
  15:3, 8

20:12
21:24
23:24
26:18
29:24
30:12
2013
  32:22
  33:12, 16
  34:23
  35:13, 24
  38:9
  39:5
  40:3
  43:24
  47:10
  49:17
  52:8
  55:20
  56:4, 9,
23    58:23
  59:13, 17
  60:15
  61:18
  66:11
  68:4, 7
  71:24
2014    1:8
  3:1    73:5
2016    74:24
21    23:24
  66:11, 16
2100    2:8
23    21:24
25    49:17

< 3 >
3    4:11
  9:22
  31:13, 18
  33:16
  34:23
  35:13
30    52:8
31    4:11
  56:22
3242    1:22
326-0177
  1:23

326-0214
  1:24

< 4 >
4    4:11
  40:12, 19
40    4:11
43207
  1:14    2:3
43215    2:8
43220    1:23
462-2603
  2:9

< 5 >
5    4:14
  14:11
  15:3, 8,
17   16:4
  17:14
  20:22
  38:19
  55:8, 13
  58:22
  59:13
55    4:14
59    4:14

< 6 >
6    4:14
  59:3, 8
610-4134
  2:4
614    1:23,
24    2:4, 9
65    2:8
67    4:17

< 7 >
7    4:17
  67:14, 20
70    4:17

< 8 >
8    4:17
  26:18
  35:24
  39:5
  70:6, 11

8:58    40:22

< 9 >
9:38    1:13
  3:2

< A >
a.m    1:13
  3:2
  40:22
  72:13
ability
  43:19, 24
able
  21:23
  27:23
  32:11, 12
  44:16
  46:6
  51:20
absence
  9:7    10:8
  15:5, 10
  16:8, 10
  17:9
  22:9
  27:1
  39:16
  44:23
  62:22
  64:3
Absolutely
  60:8
access
  9:5    15:1
  39:17
accommodate
  35:20
accommodatio
n    24:24
  25:4, 14,
22    26:8
  35:22
  37:9    53:3
accompanied
  20:22
accurate
  32:6
accurately
  6:11

Rose Cacciopa
3/12/2014

2

action
39:9
74:16
active
39:13
actual
38:2
39:2
40:24
67:3
acuity
55:23
adding
61:15
administrati
on    13:5,
13
advice
50:18, 19
advise
45:10
advised
17:16
advocate
43:13
advocates
18:15
Aetna    23:1
affixed
74:18
aforesaid
74:7
aging
25:11
ago    56:17
69:4
agree
45:14
agrees
55:22
ahead
8:19
17:3
48:24
53:9
aired    33:9
al    1:7
Alice
11:7
13:18

21:12
24:5
Allison
30:13
allowed
22:11
amount
11:19
12:15
14:7
Amy    5:13
15:21
16:4
24:8
29:7
34:11
56:11
68:1, 10,
16   69:16,
20    71:19
Amy's
24:14
55:21
analyst
11:8    24:4
ANDERSON
1:22
answer
6:17
11:8
27:20, 21,
24    29:14
53:7
answers
5:22    42:8
anticipated
44:5
anxious
34:10
59:17, 24
60:1
anybody
40:2
41:10
42:8
APPEARANCES
2:1
appeared
16:13
66:2

appears
24:7, 11
32:4
41:4
59:12
71:23
application
38:21
46:16, 17
applications
9:7
36:19
39:2
47:17
applied
38:13, 19
applies
45:24
apply
36:21
44:23
45:23
48:8
52:24
53:6, 10
54:5, 21
55:22
applying
40:17
44:13
46:11
51:7
52:15, 18
54:1
appointment
24:21
approval
29:17, 19
approved
44:16
approximatel
y    72:13
area    55:21
ASENSIO
2:4    7:22
8:2
23:11
28:18
29:14

31:24
41:12
42:5, 7
43:21
53:7
56:19
57:12
58:14
asked
26:20
asking
6:4, 6
31:22
41:17
58:11
61:13
62:15
66:5, 7
70:14
assessment,
14:15
assign
14:8
assigned
7:19
10:14, 16
assist
7:17
25:15
assistance
25:15
33:20, 24
35:3
assistant
26:5
assisting
31:8
47:19
associate
7:3    9:1,
9, 10
11:11, 13
13:7
18:16
26:6
39:14
47:22
49:9
55:2, 22

associates
7:10
11:8, 16
13:9
16:9
22:5, 24
23:4
25:9, 10,
13, 16
35:8
37:2
38:22
45:10
47:24
associate's
31:7
assume
6:7    21:1
24:15
40:24
57:4, 6
68:9
assumed
21:7
attached
73:6
attention
63:6
Attorney
2:2, 4, 7
5:13
74:14, 15
August
10:23
authorized
68:21
automaticall
y    23:16
available
46:12, 19
48:22
65:14
71:8
aware
10:13
26:9
29:5
41:10
awhile

46:15

< B >
back    7:17
10:4
13:8
16:15
18:16, 23
19:4, 16,
18    21:4,
10, 13
27:12
35:2, 7
36:6
48:9, 10,
10    49:9
51:12, 19
55:3
56:12
60:11
66:6
67:9, 11
68:14, 18
69:21, 23
71:3, 6, 8,
18
bad    20:23
Baker    2:7
based
15:24
27:9
37:11
47:7
63:9, 12
64:12
69:2
basically
17:8
21:17
39:10, 20
Bates
9:17
10:3
55:18
beginning
39:22, 23
begun    26:5
BEH    49:18,
22

behalf
2:4, 11
71:15
behavioral
50:3, 3
believe
10:22
17:24
20:21
31:21
42:3, 10
54:14
56:11
71:10
believed
62:16
benefit
12:6    27:7
benefits
11:13, 17
better    6:5
big    18:15
40:6    50:1
bit    51:4
blanket
52:23
blindside
30:5
board
35:10
46:13
bottom
9:16, 17
14:11
16:16
17:10
29:23
33:12
38:9
40:20
41:3
55:1
59:9
67:24
box    21:14
break
6:14, 18
60:7
breaks

6:16
brief    70:4
bring
19:16
63:7
brought
63:6    66:1
business
28:9, 11,
14, 20, 23
29:1, 4, 5,
9

< C >
CACCIOPA
1:8    3:8
4:2    5:3,
10    73:3,
9, 12
calendar
12:15, 16
27:8    62:7
call    5:11
7:23
10:18
16:7
18:1
25:21
46:16
48:21
61:22
65:9
70:16
called
3:8
14:14
16:14
39:4    43:9
calling
7:20
Canyon
4:11
capable
44:4
caption
74:12
care    47:8
54:12
57:6

Casagrande
1:4    2:14
5:13
7:15
10:5, 7
15:4, 9
17:14
18:2
22:8
26:7
34:24
35:12
41:1
46:4, 21
48:3
51:6
52:17
53:17
54:15
56:1, 3, 8,
12    57:15,
24    60:19
61:13
62:10
66:1
68:6, 14,
17    69:20
70:12
71:14, 18

Casagrande's
15:18
30:8
32:5
34:5    72:3
Case    1:6
7:2, 19,
24    8:17,
18, 22, 23
10:11, 18,
19    13:6,
24    17:1
18:24
19:14
22:17, 20,
21    23:2,
5, 5, 8
25:7, 15
26:15
36:22

62:1, 3, 5
71:22
cases
35:15
cause    74:7
CC    58:23
Center
4:11
certain
11:18
12:15
14:7
38:17
39:17
55:4
63:10
64:10
certainly
44:15
51:24
CERTIFICATE
74:1
certified
5:5
12:24
26:16
certify
73:3, 11
74:5, 13
chain
4:13, 14,
16, 17, 19
chance
8:11
change
39:15, 21
changes
73:6
character
3:13
charge
13:23
19:14
chasing
26:23
30:19, 20,
23
check
21:19

cheerleading
47:12
Chris 65:8
chronologica
l 55:17
chronologica
lly 67:23
Cigna
49:19
50:2
circumstance
s 28:15,
22
claim
13:12, 21
claims
11:7 24:4
clarificatio
n 51:2
58:14
clear 58:3
cleared
43:17
67:10
clerks
14:3
closed
71:22
CM, 61:24
codes 14:2
cognizant
63:22
Columbus
1:14, 23
2:3, 8
74:18
column
11:3
columns
11:2
come
19:17
37:3
comfortable
57:3, 15
58:1, 4
coming
68:18
69:21, 23

commission
73:20
74:24

commissioned
74:4
common
52:22
communicatio
ns 9:12
Comp
11:23, 23
company
12:7
18:21
19:6
49:13
51:20

Compensation
13:11
Computer
4:8 8:17
39:10
74:9
concluded
72:13
condition
17:1
confirm
36:7
confirmed
60:23
61:5
confused
67:19
contact
10:15
11:1
26:24
47:21
48:2
contacted
65:5
66:22
contacting
68:6
contained
16:5

65:18, 18
69:7, 10
contains
8:24
continual
32:17
continuance
32:14, 15,
16
Continuation
32:18, 20
Continuation
, 32:19
continue
35:21
continues
61:7

conversation
16:1, 4
17:17
33:23
34:12, 13,
14, 23
38:10
45:10
60:18
61:13
62:10, 14
68:10
conversation
s 65:17
69:15, 19
70:2
coordinate
7:13
copy
20:20
23:15, 17,
18 24:8
32:1
corner
9:18
corporate
39:17
Corporation
1:7
correct
5:15

10:9
15:1
17:14, 17
20:10
21:2, 24
22:14
24:9
26:19
27:1
37:13, 20
41:1
44:12
55:19
56:5, 9
59:14, 21
62:1
64:8, 21
65:3
66:11
67:2
68:2
70:12, 20
73:7
74:10
correction
73:6
correctly
57:7
counsel
3:6 74:15
counseling
54:11
counselor
13:1
26:16
36:22
County
73:2 74:2
couple
5:19
9:22
14:10
COURT 1:1
5:20
27:17, 22
courtesy
16:9
26:22
33:4
cover 20:9

covered
31:2
create
25:7
creation
25:12
criteria
62:19, 20
63:23
64:7 65:2
Cross-Examin
ation 4:2
5:6
current
7:1
32:15, 17,
20
currently
6:20

< D >
D'ANDREA
2:7
dark 32:10
date 6:24
33:5
46:22
47:5
55:4
61:3, 4
date,
27:11
dated
4:10
20:12
40:22
59:13
68:4
dates
21:16
30:19
33:6
day 15:13,
13, 19
17:8
62:7, 20,
21 66:16
73:17
74:19

| | | | | |
|---|---|---|---|---|
| **days** | 72:12 | **disabled** | 31:19, 21 | **eligibility** |
| 16:11 | 73:4, 12, | 51:10 | 41:5 | 12:14 |
| 27:8 | 15 | | 59:9 | 13:3   64:7 |
| 38:17 | **described** | **disconnected** | 60:13, 13 | **eligible** |
| **DCA**   24:1, | 37:24 | 43:11 | 65:21 | 11:18 |
| 3 | **details** | **discuss** | 67:21 | 17:17, 22 |
| **deal**   46:24 | 57:19 | 43:19, 23 | **documentatio** | 18:12 |
| **December** | 61:12 | 45:8   47:6 | **n**   21:20 | 28:7   64:4 |
| 26:18 | **Diane** | **discussed** | 69:8, 11 | **else's** |
| 29:24 | 13:16 | 35:7 | **documented** | 14:21 |
| 30:12 | **difference** | 47:9 | 68:20 | **E-mail** |
| **decide** | 22:19 | 54:7 | **documents** | 4:13, 14, |
| 34:18 | 63:17 | 70:16 | 7:20 | 16, 17, 19 |
| **decided** | **different** | **discussing** | 9:20, 23 | 23:15, 16, |
| 14:8 | 43:1 | 42:21 | **doing** | 19   24:1, |
| 50:8, 22 | 49:11 | 44:19 | 34:3, 16 | 8, 14 |
| **decision** | 54:11, 12 | **discussion** | 54:9 | 29:8 |
| 28:17 | 63:14 | 47:18 | **Dr**   20:1 | 35:24 |
| **Defendants** | 66:2 | 48:13 | 30:13 | 40:20, 20, |
| 1:8   2:11 | **difficult** | **displaced** | 52:9   57:7 | 24   55:13, |
| **denial** | 32:9 | 25:16 | **drawn** | 18   56:3, |
| 17:3 | **DiPietra** | **DISTRICT** | 58:10 | 7   58:23 |
| 25:17 | 30:13 | 1:1, 1 | **drop**   60:22 | 59:9, 12 |
| 61:23 | 52:9   57:7 | **DIVISION** | **due**   18:22 | 65:4, 9, |
| 62:11 | **direct** | 1:2 | 25:16 | 15   66:9, |
| **denied** | 14:10 | **doctor** | **duly**   5:4 | 10, 14 |
| 18:7 | 39:21 | 7:12 | 74:4, 6 | 67:23 |
| 28:10 | 60:14 | 19:10 | **duties**   7:8 | 68:1, 9 |
| 61:24 | **disability** | 21:7 | | 69:16, 24 |
| 63:23 | 7:2   11:7, | 35:4 | **< E >** | 70:11, 22 |
| 64:12 | 14, 15, 21 | 43:16 | **EAP**   56:23 | **e-mailed** |
| **department** | 12:3, 9 | 45:1, 9 | 61:8 | 65:11 |
| 19:4 | 13:10 | 47:6 | **earlier** | **e-mails** |
| 23:9 | 14:2 | 49:23 | 53:22 | 23:14 |
| 34:21 | 21:21, 22 | 50:2, 19 | **early**   19:1 | 65:17 |
| 35:19 | 22:20 | 51:2, 18 | **earning** | 69:8 |
| 49:12 | 24:4 | 53:12, 18 | 60:2 | **employed** |
| 56:13 | 26:21 | 54:7, 8, | **East**   2:8 | 6:20, 22 |
| **departments** | 27:6, 11 | 16, 16, 23 | **EASTERN** | 64:2 |
| 37:6 | 31:3 | 55:1, 4 | 1:2 | 74:15 |
| **depend** | 32:15, 17, | 60:23 | **education** | **employee** |
| 53:20 | 20   35:9, | 61:5 | 39:18 | 27:5 |
| **depending** | 18, 21 | 64:18 | **EE**   14:14 | 30:1, 3 |
| 19:11 | 44:11, 15 | **doctors** | **effort** | 52:10, 14 |
| **deposes** | 51:7, 13, | 22:12 | 25:10 | 53:12 |
| 5:5 | 15, 20 | **document** | **either** | 54:23 |
| **DEPOSITION** | 52:4, 6 | 8:10, 13 | 11:10 | 60:16, 19 |
| 1:8   3:8 | 57:5, 16, | 9:16 | 21:12 | 61:19, 22 |
| 5:17 | 20   58:2, 6 | 10:3 | 22:5 | 64:21 |
| 6:14 | | 21:23 | 64:12 | 74:14 |

| | | | | |
|---|---|---|---|---|
| employment | examined | extending | 52:14 | firing |
| 71:20 | 73:15 | 26:17 | 57:15 | 19:15 |
| 72:3 | excerpts | 30:16 | feels | first    5:4 |
| ends     24:15 | 66:8 | | 53:12, 18 | 11:3 |
| enter | Excuse | < F > | 54:16, 23 | 15:3, 8 |
| 22:2, 6 | 60:7 | fact     22:8 | felt    19:7 | 19:5 |
| entered | Exhibit | 37:22 | 45:4 | 20:9 |
| 14:22, 24 | 4:8, 8, 11, | 63:22 | 54:24 | 40:20 |
| entering | 11, 14, 14, | facts    6:10 | field | 49:14 |
| 14:19 | 17, 17 | fair    6:1, | 18:21 | 50:10 |
| entitle | 7:24    8:4, | 7, 18 | figure | 55:17 |
| 27:14 | 9    20:4, 9 | 13:14 | 46:23 | 65:15, 24 |
| entries | 23:11, 12, | 58:18 | 69:11 | 66:22 |
| 16:16 | 13    29:22 | familiar | figured | 67:23 |
| 17:10 | 31:13, 18 | 13:1 | 35:22 | 68:13, 16 |
| 19:23 | 38:7 | far    11:3 | 37:2 | 71:23 |
| entry | 40:12, 19 | 34:6, 17 | file    10:4 | fit    37:10 |
| 14:11 | 49:17 | 45:19 | 71:22 | 42:24 |
| 15:16 | 55:8, 13 | fast    67:3 | fill | 50:17 |
| 19:24 | 56:21 | FAX    1:24 | 19:21 | five |
| 23:23, 24 | 58:20 | 4:10, 11 | 28:21, 23 | 38:13 |
| 29:23 | 59:3, 8 | 11:10 | 29:1 | 52:19 |
| 30:11 | 60:6, 13 | 19:24 | 49:23 | flip    67:18 |
| 33:13 | 65:19, 21 | 20:16, 21, | 51:15, 20 | floor |
| 35:24 | 67:14, 20 | 22    32:4 | 57:3, 16 | 48:12 |
| 36:1 | 70:6, 11 | faxed | 58:4 | floors |
| 39:5 | 71:23 | 21:12, 13, | filled | 42:24 |
| 49:15, 17 | EXHIBITS | 13 | 21:1, 6 | 43:1, 6 |
| 52:8 | 4:7    7:21 | February | 24:23 | FMLA    9:6 |
| 56:22 | 8:1 | 32:21, 22 | 30:9 | 11:13 |
| 58:22, 24 | experience | 33:3 | 34:11 | 12:9, 12, |
| 60:15 | 37:11 | 35:4 | 48:5, 6, 7 | 23    13:1, |
| 61:18 | expire | 43:15, 18 | filling | 4, 9, 13 |
| erred    33:9 | 27:11 | 46:5, 23 | 25:18 | 16:11 |
| estimated | expires | 55:20 | 30:4 | 17:1, 5, |
| 43:17 | 73:20 | 56:4, 9, | 39:3    58:1 | 17    25:16 |
| et    1:7 | 74:24 | 17    58:22 | financial | 28:7 |
| ethically | Explain | 59:13 | 52:3 | 61:23 |
| 51:6 | 12:9 | 60:15 | financially | 62:11 |
| 57:3, 15 | explained | 62:10 | 74:16 | 65:17 |
| 58:1, 4 | 51:14 | 65:24 | find    31:4 | 66:2, 13 |
| everybody | 62:5, 16 | 66:11 | 69:9 | 71:7, 10, |
| 36:16 | extend | February, | finding | 15 |
| 47:14 | 24:1 | 33:6 | 42:22 | focus |
| exact | 26:20 | feel    51:9 | fine    6:15 | 25:13 |
| 22:22 | 27:10 | 57:3 | 8:2 | 53:5 |
| 33:5, 6 | 33:2 | 58:1, 4, 6 | finish | focused |
| Exactly | extended | feeling | 27:23 | 45:22 |
| 33:10 | 35:16 | 43:11 | 28:18 | follows |
| | | | 57:12 | 5:5 |

| | | | | |
|---|---|---|---|---|
| follow-up | | goes | ground | heading |
| 27:22 | < G > | 13:17 | 5:19 | 49:16 |
| foregoing | gap    25:24 | 21:11 | group | health |
| 73:4, 11 | general | 45:24 | 22:18 | 7:3    9:1, |
| 74:10, 12 | 35:1, 2, 9 | 63:22 | 23:2 | 10    11:13 |
| form    18:4 | 38:21 | going | guarantee | 32:9    50:3 |
| 20:1, 18 | 45:10 | 5:19 | 19:13 | hear    37:4 |
| 39:2, 9 | 49:7    53:2 | 6:13 | guess | held    23:20 |
| 49:18, 24 | generally | 10:21 | 17:18 | help    5:20 |
| 50:2, 3, 4 | 29:2 | 13:2, 24 | 23:3 | 7:10 |
| 73:7 | 34:3 | 14:7 | 31:22 | 19:16 |
| formal | 37:24 | 15:4, 9 | 61:14 | 23:4, 7 |
| 68:23 | 49:5 | 16:12 | 64:1 | 25:13, 23 |
| 70:15, 18 | getting | 18:11 | guys | 31:1 |
| formally | 7:17 | 19:20 | 36:11 | 34:3 |
| 29:20 | 13:10 | 27:3, 14, | 70:15 | 36:17 |
| 48:9 | 16:12 | 19, 20 | | 37:1 |
| formatted | 22:12 | 28:5 | < H > | 42:8 |
| 23:22 | 35:2, 3 | 29:7 | half    6:24 | 43:14 |
| formerly | 44:19 | 30:8 | 7:6 | 48:22 |
| 48:4 | 45:1 | 31:9 | hall    65:10 | helped |
| forms    39:2 | 51:1    60:2 | 34:15, 18 | hand    74:17 | 25:7 |
| forthcoming | Give    72:5 | 37:7 | handed | helpful |
| 70:18 | given | 38:24 | 8:8    20:8 | 24:22 |
| forward | 31:1 | 41:14 | 31:17 | 36:15, 23 |
| 14:10 | 73:5 | 43:4, 13 | 40:18 | helping |
| 23:18 | 74:11 | 46:17 | 55:12 | 31:10 |
| 40:17 | go    5:19 | 49:9, 21 | 59:7 | helps    9:20 |
| 50:6, 11, | 8:19    9:7 | 51:12 | 70:10 | Henderson |
| 11 | 12:16 | 52:4 | handing | 1:22 |
| forwarded | 16:15 | 53:2 | 67:19 | hereinafter |
| 65:5 | 17:2 | 56:12 | handles | 5:4 |
| foundation | 18:23 | 66:8 | 14:1 | hereto |
| 58:16 | 19:4 | 69:1    71:6 | hands | 73:6 |
| four    11:8 | 24:14 | good    19:8 | 11:11 | 74:14 |
| 13:18, 20 | 35:7 | 23:6, 6 | handwriting | Heyder |
| 14:5 | 39:5 | 37:10 | 41:8, 9, 13 | 13:15, 16, |
| 39:15 | 45:8 | 42:24 | happened | 16, 17 |
| 63:11 | 46:14 | 45:4    48:1 | 51:18 | 16:16, 19 |
| Franklin | 48:8, 10, | gotten | 67:2 | 24:5    39:6 |
| 73:2    74:2 | 10    51:19 | 30:15 | hard    5:23 | Hi    10:18 |
| Friday | 53:2, 9 | great | 31:5 | 70:23 |
| 40:7, 16 | 54:2 | 25:12 | 32:3 | High    1:14 |
| front | 55:3 | 36:8 | 33:6 | 2:3 |
| 65:22 | 60:6 | greg.mansell | 37:17 | highlighted |
| frustrated | 61:18 | @ohio-employ | 47:21 | 32:1 |
| 52:14 | 71:8 | mentlawyer.c | head    5:23 | hiring |
| further | goal | om    2:4 | 25:21 | 19:15 |
| 72:9 | 18:14 | GREGORY | headed | hit    64:4, |
| | 52:2 | 2:2 | 25:20 | |

Rose Cacciopa
3/12/2014

8

| | | | | |
|---|---|---|---|---|
| 20, 24 | illness | inquire | January | jobs |
| hits  64:1 | 10:17 | 66:17 | 33:12, 16 | 36:21 |
| hold | images | inquiring | 34:23 | 37:10 |
| 52:15, 18 | 21:14 | 62:11 | 35:13, 24 | 42:21 |
| Honestly | imagine | inquiry | 37:19, 19, | 44:23 |
| 68:19 | 6:13 | 19:5 | 22  38:9 | 45:22 |
| hopefully | immediately | instance | 40:3, 22 | 49:14 |
| 43:16 | 46:12 | 51:19 | 41:11 | 52:18, 20 |
| Hostetler | inaccurate | insurance | 43:24 | 53:10, 19 |
| 2:7 | 20:15, 17 | 12:6  23:3 | 47:10 | 54:1 |
| hour  38:4 | include | insured | 48:14, 15 | 55:23 |
| hours | 23:19 | 11:21, 23 | 49:17 | Joe  19:2 |
| 11:19 | indicate | interest | 52:8 | 23:6, 7 |
| 12:15 | 46:4 | 42:22 | 56:22 | 24:17, 23 |
| 17:7 | indicated | interested | Jean | 25:20 |
| 51:21 | 48:4 | 37:7 | 22:16 | 31:1, 8 |
| 62:6 | 62:24 | 46:20 | 23:6 | 32:14 |
| 63:11, 19, | indicates | 74:16 | 33:19, 24 | 33:13 |
| 21 | 56:3, 7 | internal | 34:5, 8, | 34:9 |
| HR  16:7 | individual | 38:20, 22 | 14  36:8 | 36:8 |
| 25:1 | 9:12 | interpretati | 41:24 | 37:1, 3, 6 |
| 26:4, 6 | 30:24 | on  66:1 | job  7:8 | 38:10, 13 |
| 29:21 | individuals | interview | 11:14 | 41:24 |
| 36:24 | 8:21 | 44:24 | 14:4 | 43:12 |
| 37:2, 3, 8 | ineligibilit | 46:14 | 17:8 | 44:3, 19 |
| 39:4, 12 | y  17:4 | 54:1 | 18:15, 18, | 47:21 |
| 46:2 | ineligible | | 21  22:20, | 49:18 |
| 47:16, 22 | 17:5 | interviewing | 20, 22 | 51:1, 11, |
| 48:22 | inference | 54:8 | 24:4 | 14  52:1 |
| 68:21 | 58:10 | interviews | 25:15 | 55:20 |
| huh-uh | inform | 45:2 | 26:2, 14 | 59:16 |
| 5:23 | 66:17 | introduce | 34:4, 11 | 63:5, 21 |
| | information | 10:19 | 35:3, 7, 7, | 68:11 |
| < I > | 64:18 | introduced | 10  36:17 | 70:14, 23 |
| identificati | informed | 26:10 | 43:14 | Joe's |
| on  8:5 | 15:12 | invited | 44:1, 8, | 27:1 |
| 20:5 | 30:3, 7 | 36:24 | 20  45:1, | 28:4 |
| 31:14 | 68:16 | involved | 9, 16 | 29:1 |
| 40:13 | initial | 13:12, 23 | 46:5, 8, | 30:16 |
| 55:9 | 11:3, 9 | 17:11, 13 | 10, 13 | 36:16 |
| 59:4 | 14:14 | 34:5 | 47:19 | 41:24 |
| 67:15 | 64:14 | involvement | 48:1 | 42:22 |
| 70:7 | initially | 71:20 | 49:13 | 43:2 |
| identified | 10:23 | 72:2 | 52:22, 23 | 47:14 |
| 50:17 | 24:9 | issue | 53:16, 21, | John  36:1 |
| 54:20 | initiatives | 58:8 | 24  54:9, | Joseph |
| identify | 23:1 | 66:18, 22 | 24  60:2 | 1:4  2:14 |
| 48:23 | injury | | 70:16 | July |
| 49:1 | 10:17 | < J > | 71:4, 4, 7, | 10:13, 23 |
| | | | 8, 9, 11, 18 | |

| | | | | |
|---|---|---|---|---|
| jump 50:1 | 12, 14, 15, | 16, 16, 18, | 62:17 | 64:13, 15 |
| 52:12 | 17 21:12, | 18, 19, 23 | 63:6 | 70:15, 18, |
| | 18 22:22 | 51:2, 3, | 66:8, 9 | 24 |
| < K > | 23:2, 5, | 11, 12, 16, | lawsuit | letters |
| keep 5:20, | 19, 20 | 18, 24 | 5:14 | 16:20 |
| 21, 24 | 24:22 | 52:1, 2, 2, | ldandrea@bak | limitations |
| 8:21 9:3, | 25:8, 9, | 5, 17 | erlaw.com | 50:7, 12 |
| 3, 11 | 11, 14, 17, | 53:1, 4, 7, | 2:10 | LINDSEY |
| keeping | 17, 19, 20, | 8, 15, 20, | lead | 2:7 |
| 14:3 | 21, 23 | 21 54:3, | 34:15, 19 | line 50:6 |
| kind | 26:6, 22 | 4, 6, 7, 8, | learned | 52:12, 13 |
| 10:20, 24 | 27:18, 18, | 9, 10, 11, | 15:4 | 55:1 |
| 23:21, 22 | 20 28:10 | 12 55:2, | leave | 61:21 |
| 26:22 | 29:13, 21 | 3, 5 58:9, | 7:11, 18 | little |
| 37:5, 5 | 30:22 | 15 60:2 | 9:6 | 38:24 |
| 38:23 | 31:6, 7 | 61:2, 3, 4, | 10:23 | 51:4 |
| 40:17 | 32:8 | 14 62:15 | 14:7 | 66:6 |
| 42:20, 21, | 34:6, 8, | 63:5, 9, | 15:5, 10 | 67:11 |
| 23 43:8 | 11, 13, 16 | 12, 20, 24 | 16:8, 10, | LLC 1:13 |
| 45:9, 22 | 35:5, 6, 8, | 66:24 | 13 17:9 | 2:2 |
| 47:11 | 13 36:4, | 67:1 | 18:11 | locate |
| 48:23 | 17, 18, 18, | 68:20 | 22:9 | 52:11 |
| 52:22 | 20, 22, 22, | 69:2, 15 | 26:8, 17, | long 6:14, |
| 53:1, 24 | 24 37:6, | 71:4, 10 | 21 27:1 | 22 7:4 |
| 61:5 | 7, 8, 10, | knowing | 33:2 | 11:17 |
| knew 27:3 | 10, 24 | 18:10 | 35:9 | 27:5 |
| 43:12 | 38:4, 17, | 25:19 | 39:16 | 38:3 |
| 44:6 | 21, 22, 23 | 50:7, 12 | 44:23 | 56:17 |
| 48:17 | 39:18, 19 | knowledge | 54:10 | long-term |
| 49:4, 4 | 40:5, 15 | 43:2 | 62:21, 22 | 25:9 |
| 71:9 | 42:21, 22, | 69:10 | 64:3 | 44:14, 15 |
| know 6:4, | 22, 23 | Kramb | leaves | 51:7, 13, |
| 15 7:15 | 43:2, 3, 6, | 26:3 | 10:8 | 14, 15, 20, |
| 8:10, 24 | 7, 8, 13, | 40:21 | Lefebvre | 22, 22 |
| 9:6, 15, | 13, 14, 16, | 42:2, 16 | 22:16 | 52:3 |
| 23 10:16, | 16 44:1, | 47:18 | 41:24 | 57:5, 16, |
| 19 11:10, | 6, 9, 20 | 49:1 | Left 36:1, | 20 58:2, |
| 11 12:12, | 45:3, 5, 6, | 55:19 | 4, 6, 7 | 5, 6, 8 |
| 13 13:1, | 7, 8, 17, | | legal | look 11:2 |
| 3, 4, 6, 6, | 18, 24 | < L > | 63:8 | 13:24 |
| 19, 22, 22, | 46:2, 16, | labeled | 66:17, 18, | 15:15 |
| 24 14:4, | 18, 19 | 10:3 | 22 67:10 | 19:6, 23 |
| 6, 8 16:7, | 47:6, 7, | 35:23 | letter | 20:12, 24 |
| 7, 8, 13, | 17, 22, 23, | ladies | 10:22, 24 | 23:10, 22, |
| 20, 23 | 24 48:1, | 12:11 | 17:3, 20, | 23 24:7 |
| 17:5 | 7, 10, 16, | 13:18, 20 | 22, 24 | 30:11 |
| 18:11, 20, | 22 49:2, | 63:11 | 18:1, 4, 7 | 32:8 |
| 21, 22, 24, | 8, 8, 12, | Law 1:13 | 20:22 | 33:11 |
| 24 19:7, | 13, 22, 24 | 2:2, 2, 4, | 30:4, 16 | 35:10 |
| 7, 8, 11, | 50:8, 13, | 7 12:12 | 61:23 | 40:19 |

Rose Cacciopa
3/12/2014

10

| | | | | |
|---|---|---|---|---|
| 42:7 | 26:15 | 8  20:5, 8 | 53:3, 6, | 36:20 |
| 49:14, 15 | 28:10, 16 | 31:14, 17 | 24  54:2, | 55:5 |
| 50:5 | 29:17 | 40:13, 18 | 19, 22 | medications |
| 52:7 | 30:3 | 55:9, 12 | 56:14 | 6:9 |
| 56:21, 22 | 36:22 | 59:4, 7 | 58:3 | meet |
| 58:21 | 45:4 | 67:15, 19 | 60:1 | 37:22 |
| 59:8 | 48:11, 21 | 70:7, 10 | 62:15 | 47:6  65:1 |
| 67:10 | 62:1, 3, 5 | Marsha | 63:1, 18 | meeting |
| 71:23 | 63:7 | 13:16, 17, | 66:24 | 36:12, 14 |
| looking | 66:20, 21 | 23  15:11 | 67:2, 4, 8, | 37:13 |
| 41:13 | 70:4 | 16:16 | 10, 11 | 38:1, 2 |
| 61:23 | managers | 21:11 | 68:19, 21, | 40:3, 7 |
| looks | 16:6 | 24:5  39:5 | 22, 24 | 41:1, 5, 6, |
| 21:13 | 25:7 | MARTIN | 69:22 | 11, 21 |
| lot  10:21 | 29:11 | 1:17 | 70:3  71:6 | 42:12, 13, |
| 25:8 | 49:8 | 74:3, 21 | meaning | 15, 19 |
| 26:24 | Mansell | masensio@bak | 39:13 | 43:10, 21, |
| 30:19 | 1:13  2:2, | erlaw.com | means | 23  44:1, |
| 34:8 | 2  4:5 | 2:9 | 50:9  57:4 | 8  46:9 |
| 37:1 | 5:7  7:20, | matter | meant | 47:10 |
| 43:9 | 23  8:7 | 18:13 | 49:24 | 61:8  64:7 |
| 48:6 | 20:7 | 69:1, 2 | 61:15 | mentioned |
| 63:20 | 23:12 | max  27:13 | med  49:24 | 33:20 |
| | 28:19 | mean | Medical | met  5:14 |
| < M > | 29:15 | 11:24 | 4:11 | 46:15 |
| M.J  2:4 | 31:16 | 12:1, 10 | 7:11, 18 | 65:1 |
| mail  11:10 | 32:2 | 14:18, 22 | 8:24 | Michael |
| mailed | 42:9 | 15:11 | 16:13, 22, | 26:3 |
| 52:9 | 43:22 | 16:6 | 24  17:2, | 40:21 |
| main  7:10 | 55:11 | 18:6 | 9  18:22 | 42:1, 2, |
| 10:24 | 57:13 | 19:1, 2 | 19:20 | 16  47:18 |
| 34:7 | 58:18, 19 | 22:4 | 21:15 | 48:1 |
| 47:20 | 59:6 | 23:1 | 23:5 | 49:1 |
| 61:22 | 60:8, 10 | 29:11 | 26:23 | 50:6, 11 |
| management | 67:17 | 30:20 | 27:9, 12 | 55:19 |
| 8:17, 18, | 70:9 | 34:2, 3, 7, | 30:16, 19, | 58:23 |
| 23  13:7 | 72:5, 8 | 10, 12 | 21  31:2, | middle |
| 23:5 | March  1:8 | 35:1, 3 | 5  32:5 | 52:7 |
| manager | 3:1  61:4 | 41:14 | 33:2 | 58:22 |
| 7:2, 13, | 67:9 | 43:2, 9 | 35:17 | 60:14, 22 |
| 14, 19 | 68:4, 7 | 44:1, 2, 6, | 37:11 | Miller |
| 8:22 | 69:14, 17 | 22  45:17, | 43:3 | 26:10 |
| 10:11, 18, | 71:24 | 19, 21 | 44:7 | 42:2 |
| 19  15:12, | 73:5 | 46:14, 17 | 50:2, 3, 4 | 55:19 |
| 16, 19 | MARILYN | 47:13, 13 | 54:10, 12 | 59:13 |
| 19:14 | 1:17 | 48:17 | 64:11, 17 | Miller's |
| 22:17, 21, | 74:3, 21 | 50:1, 9, | medical, | 26:12 |
| 21  23:2 | mark  64:5 | 13, 24 | 30:23 | mind  5:11 |
| 24:1 | MARKED | 51:11, 13, | medically | mindset |
| 25:7 | 4:7  8:5, | 22, 23 | 35:5 | 52:1 |

missed
 38:16
money
 51:16
 60:2
months
 11:17
Moranda
 65:8
MORNING
 3:1
move    50:6,
 10, 11
moving
 46:3
multiple
 10:7

< N >
name    5:8
 11:4
 14:15, 18,
21
named    74:5
Nancy
 26:10, 12
 42:1, 2, 3,
10    55:19,
20    58:23
 59:13
need    6:14,
16    28:9,
12, 14, 21,
23    29:1,
4, 5, 10,
12    32:14
 45:15
 62:5
 63:24
needed
 19:12
 22:13, 13
 47:3
 58:6    61:9
needs
 27:12
 37:11
 54:3
 55:22
net    52:3

networking
 37:4, 5
 44:9
never    52:2
new    43:4
 71:4
no,    5:22
nods    5:22
non    10:16
normal
 12:5
 28:15, 22
normally
 16:6
 22:23
 28:10
Notary
 3:11, 13
 73:14, 19
 74:3, 21
note    9:7,
8, 9
 14:22
 15:12
 16:5
 18:6
 21:16
 27:9
 32:4
 37:18
 38:10, 13
 41:4, 4
 43:17
 57:2
 58:17
notebooks
 41:15
notes
 3:11    4:8
 8:17, 18
 14:24
 15:23
 22:3
 24:12, 12
 40:2, 7, 9
 41:5, 10
 42:12
 60:18
 61:15
 63:4    68:9

notice
 45:19
notification
 16:20
notified
 15:9
noting
 73:6
November
 15:3, 8
 16:4
 17:14
 20:22
 21:24
 23:24
number
 24:15
 38:17
 63:10
numbers
 9:17
nurse
 21:8    43:5
nursing
 55:23
Nuss    20:1

< O >
obviously
 48:17
o'clock
 1:13    3:2
October
 4:10
 74:24
odd    40:15
offer
 54:2
 69:1
 71:4, 14
offered
 45:5, 9
 46:21
 68:13
office
 7:3    9:4,
5    13:4
 14:1
 16:24

21:1
 25:6
 39:11, 14,
20    53:24
 54:3
 63:8
 65:12
 74:18
official
 3:13
 30:16
Oh    15:17
 38:20
 49:24
 52:11
OHIO    1:1,
14, 23
 2:3, 8
 73:1
 74:1, 4,
18, 21
OhioHealth
 1:7    6:21,
23    7:24
 8:4, 9
 9:3    10:8,
20    11:16,
20, 24
 12:6
 18:14
 19:13
 20:4, 9
 22:17
 23:2, 3
 31:13, 18
 38:14, 19
 40:12, 19
 55:8, 13
 59:3, 8
 63:21
 64:2
 67:14, 20
 68:14
 70:6, 11
 71:9, 15
 72:3

OhioHealth's
 66:3

Okay    6:8,
13    8:1,
20    9:15,
19    10:1
 11:2
 13:14
 18:5
 24:13, 16
 28:1, 3
 29:3
 31:1
 34:15
 41:23
 45:1
 47:14
 48:11
 54:8
 56:20
 58:18
 59:11
 60:23
 61:3, 5,
17    63:17
 64:14
 65:16
 66:10
 68:24
 69:8, 13
 71:17
old    20:18
 71:12
once    71:9
online
 39:2, 3
open
 13:24
 48:12
 49:10
opened
 10:4    14:5
opening
 29:13
opportunity
 69:9
option
 28:11
 71:12
order
 18:20

29:16
55:17
outside
53:24
69:10
overtime
63:20

< P >
PA    39:21
PAF   39:8
PAGE   4:2
 9:22, 24
 10:3, 4
 15:15
 20:9, 10,
24   21:10
 23:10
 29:22, 23
 32:8
 33:11, 12
 35:23
 38:6
 40:21
 41:3
 49:16, 16
 50:5
 51:5
 52:7
 55:17
 56:21
 58:20, 22
 59:10
 60:6, 14
 61:18
 66:15
 67:24
 71:23
 73:6
pager
 24:15
pages
 14:10
paid
 11:24
 12:3, 4
 13:10
 16:12
paper   41:6

paperwork
 11:10     .
 12:11
 13:19, 21
 16:10, 22,
22   17:9
 19:21
 57:16, 20
 58:2, 5
 63:12
paragraph
 60:23
part   40:6
 54:24
particular
 29:6
 54:17
parties
 3:7
 74:14, 16
part-time
 51:19
paste
 20:20
 23:15, 17,
18   24:8
patient
 57:4
pay   11:15,
15   12:5
 13:23
 14:2, 6
 21:20
 26:18, 21
 27:6, 11
 31:3
 35:14, 21
 44:11
 45:19
 52:4
 59:21
 71:15
paycheck
 12:5
pays   11:16
PCP    57:5
pending
 6:17
 16:10

people
 9:4, 5
 14:24
 18:15
 34:9, 16
 37:17
 41:15
 43:10
 66:19
people's
 39:12
Peoplesoft
 39:12
period
 26:18
 43:3    67:3
permanent
 18:23
 25:11, 14
permission
 29:12
person
 14:6
 37:3, 8
Personal
 39:9
personally
 9:2    71:14
phone
 15:24
 18:1
 37:2
 38:10
 69:19
 70:16
phones
 11:9
physician
 26:1
 45:18, 20
 57:6
piece   13:6
place
 42:17
 74:12
Plaintiff
 1:5    2:4
 3:9
plaintiff's
 7:21

plan    23:3
 47:7
 54:12
please
 5:8    8:10
 29:22
pleasure
 70:23
point
 17:14
 19:17
 22:11
 25:23
 26:11
 30:7, 15
 33:1
 48:2
 58:14
 60:5
 64:10, 12,
17, 20
 66:4
points
 70:15, 19
points,
 70:24
policy
 71:6
portion
 24:11, 13
 50:10, 21
position
 7:1, 5, 9
 19:3
 24:6, 23
 25:8, 12,
18    28:5,
9, 21, 23
 29:1, 8,
16, 20
 30:4, 8
 37:4
 45:6, 24
 46:22
 47:4, 16
 48:3, 21,
23    49:10,
11    53:1
 54:18
 55:21

56:16
 68:14
 69:23
positions
 19:6, 13
 35:11
 38:14, 19
 46:11, 18
 48:12
 49:2
 50:17
 53:5
 54:17, 20
 68:24
 69:2, 3
possible
 66:24
possibly
 38:23
 58:5
post    28:9,
11    29:8,
12, 16, 20
posted
 24:23
 28:5
 48:6
 55:22
posting
 25:18
potentially
 13:19
 68:17
power
 45:23
practice
 49:13

practitioner
 21:8
prefer
 51:12
presence
 3:12
 73:16
 74:8
PRESENT
 2:13
 7:12
 41:20

presenting
  42:23
pretty
  19:7
  32:3
  66:23
  67:2, 8
prevent
  6:10
previous
  15:15
primary
  57:6
prior
  18:1
  27:1    52:5
proactive
  31:10
probably
  9:22
  14:5
  15:12
  20:17, 18
  21:13
  28:22
  32:2
  36:6
  39:14
  41:15
  69:24
process
  9:5
  11:12
  17:7
  19:2
  46:15
  48:24
  49:8

PROFESSIONAL
  1:18
  74:22
professional
  's    32:10
prompts
  16:19
proof    3:12
protected
  13:9

  64:24
  71:7, 10
protection
  11:14
provide
  27:24
  70:19
provided
  57:18, 24,
  24
provider
  19:20
  26:23
  32:5
  45:13
Providers
  24:22
  30:24
  31:5
provides
  68:9
PU    57:3
Public
  73:15, 19
  74:3, 21
purpose
  36:14
  38:1
purposes
  8:5    20:5
  31:14
  40:13
  55:9
  59:4
  67:15
  70:7
put    14:2
  16:10
  23:14, 16,
  21    40:7,
  16    46:16
  47:15, 15
  52:19, 20
  65:14
  66:13

< Q >
qualificatio
ns    3:13

qualified
  74:5
qualify
  35:11
question
  6:4, 5, 17
  23:14
  27:19, 21,
  22, 24
  28:18
  46:3
  56:18
  57:12, 21
questions
  29:14
  47:16
  62:16
  66:7
quick    67:8

< R >
rapport
  23:6, 7
  31:8
rare    63:18
reach
  23:4
  47:22
reaching
  13:7
read    32:3,
  9, 11, 12,
  16    41:12
  57:7
  70:17
  73:4, 15
reading
  15:7
  24:13, 19
  73:13
ready
  19:8, 9
  24:18
  25:1
  36:19
  44:6
  45:2    48:8
really
  9:10
  13:4, 12

  21:16
  23:20
  27:8
  34:7
  40:15
  42:23
  44:8
  45:17, 20,
  22    52:3,
  14    61:8
reason
  18:22
  57:19, 24
  61:22
  71:2
reasons
  43:9
recall
  28:24
  30:18, 19,
  22    37:16
  38:5
  41:16, 18,
  19    42:11,
  12, 18
  46:7
  47:9
  50:14, 24
  51:4, 8,
  11    54:15
  56:14
  61:11
  68:19
  69:15, 18,
  19
recalling
  6:10
receive
  12:11
  13:19
  16:21
  17:8
  21:9
  22:6
  29:19
received
  21:4, 15
  33:1
  35:12

  46:5
  61:23
receiving
  13:21
  59:20
Recess
  60:9    72:7
recognize
  31:18, 23
  67:20

recollection
  29:3
  57:9, 14
record
  5:9, 20,
  24    58:15
  60:11
reduced
  3:10
Refax    52:9
refer
  9:20, 23
  57:5
reference
  39:1
referencing
  17:20
referred
  9:8    26:6
referring
  15:14
  17:21
  24:21, 23
  36:5
  38:18
  50:23
  53:15
  60:3
  61:2, 12
refers
  60:19
reflect
  10:4
reflected
  37:18
reflects
  70:22
refresh

Rose Cacciopa
3/12/2014

14

| | | | | |
|---|---|---|---|---|
| 57:*9, 14* | 35:*6, 17* | **rescheduled** | 54:4 | 70:*1, 24* |
| **reg** 61:*8* | 36:*20* | 37:*19* | **reuse** 7:*24* | 71:17 |
| **regarding** | 37:*12* | **respective** | **review** | **RN** 19:*7,* |
| 33:*24* | 45:*16, 21* | 3:*7* | 8:*9, 11* | *12* 28:*23* |
| 40:*3* | 48:*16, 18* | **respects** | 11:*12, 13* | **Road** 1:*22* |
| 47:*16* | 49:*10* | 51:*23* | 12:*8, 10,* | **role** 7:*10* |
| 49:*18* | 54:*6* | **responsibili** | *21* 16:*23* | 13:*4, 6* |
| **REGISTERED** | 55:*20* | **ty** 31:*7* | 37:*9* | 34:*7, 9, 9,* |
| 1:*18* | 56:*2, 4, 8,* | **restrictions** | **reviewed** | *20* |
| 74:*22* | *15* | 7:*12* | 12:*18* | **rolling** |
| **regulations** | **remember** | 18:*23* | 18:*1* | 12:*15, 16* |
| 66:*2, 14* | 16:*3* | 25:*11* | 35:*20* | 27:*7* 62:*6* |
| **rehab** | 33:*23* | 35:*18, 19* | **reviewing** | **ROSE** 1:*8* |
| 26:*16* | 34:*13, 14,* | 50:*15* | 63:*9, 12* | 3:*8* 4:*2* |
| **rehabilitati** | *22* 38:*2* | **retrospect** | **reviews** | 5:*3, 10,* |
| **on** 12:*24* | 41:*20* | 63:*20* | 13:*5* | *11* 73:*3,* |
| **related** | 44:*3, 19* | **return** | **Rick** 56:*23* | *9, 12* |
| 9:*12* | 49:*5* | 7:*10* | **right** | **rule** 35:*16* |
| 16:*13* | 53:*17* | 16:*11* | 9:*17* | **rules** 5:*19* |
| 26:*8, 24* | 57:*18, 23* | 18:*15, 18,* | 11:*3* | **run** 38:*24* |
| 57:*19* | 58:*12, 13* | *19* 19:*3,* | 14:*9, 15,* | 52:*5* |
| 65:*17* | 61:*15* | *10* 21:*16,* | *18, 22* | **runs** |
| 66:*18* | 62:*9, 13* | *23* 22:*5* | 15:*14* | 51:*16* |
| 70:*16* | 67:*3* | 23:*8* | 17:*2, 21,* | 59:*17* |
| 71:*15* | 68:*6* | 24:*18* | *22* 19:*19* | |
| **relation** | 69:*7* | 25:*1* | 20:*22* | **< S >** |
| 60:*1* | 70:*1, 14* | 26:*1* | 21:*3* | **saw** 14:*6* |
| **relations** | **repeat** | 33:*20, 24* | 22:*9* | 17:*6, 24* |
| 26:*6* | 15:*6* | 34:*17* | 27:*4* | **Sayers** |
| 47:*23* | 46:*3* | 35:*13* | 28:*13* | 5:*14* |
| **relative** | 56:*6* | 36:*9* | 32:*19, 22* | 15:*21* |
| 74:*13* | 57:*21* | 44:*7, 10,* | 33:*10* | 16:*4* |
| **relatively** | **rephrase** | *16, 20* | 36:*9* | 24:*8* |
| 43:*6* | 6:*5* | 45:*15* | 38:*11* | 48:*14* |
| **release** | **REPORTER** | 46:*6* | 40:*4* | 49:*4* |
| 35:*12* | 1:*18* | 47:*7* | 42:*18* | 68:*1, 17* |
| 44:*6, 7* | 5:*21* | 48:*18* | 44:*18, 18,* | 69:*16, 20* |
| 45:*7, 15* | 27:*17, 22* | 53:*19* | *18* 49:*15* | 71:*19* |
| 47:*5* | 74:*22* | 55:*21* | 52:*13* | **saying** |
| 48:*9* | **REPORTING** | 56:*4, 8,* | 53:*10* | 28:*14, 21* |
| 52:*5* | 1:*22* | *15* 61:*3, 8* | 55:*16* | 59:*23* |
| 53:*22* | **reps** 26:*6* | **returned** | 56:*21* | **says** 5:*5* |
| 54:*4* | 47:*23* | 71:*11* | 59:*18* | 14:*14* |
| 55:*2* | | **returning** | 60:*11* | 15:*16* |
| 60:*24* | **requirements** | 34:*10, 24* | 61:*17, 22* | 19:*24* |
| 61:*6* | 12:*14* | 44:*21* | 62:*3, 9* | 21:*23* |
| **released** | 13:*3* 17:*4* | 71:*3* | 64:*1, 18* | 24:*1, 20* |
| 19:*3, 10* | **reschedule** | **returns** | 65:*14* | 29:*24* |
| 21:*17* | 37:*15* | | 66:*3, 14,* | 30:*3, 12* |
| 25:*24* | | | *15* 68:*4* | 32:*16* |

Rose Cacciopa
3/12/2014
15

33:13, 19
36:8
38:16
41:5
49:18
50:6, 21
51:15
52:9, 13
53:12
55:19
56:23
57:2
58:23
59:16
60:15, 23
61:7, 19,
22   70:23
**schedule**
37:13, 17
**scheduling**
36:11
**screen**
22:5
**seal**   74:18
**search**
25:15
34:4
35:3, 7
36:17
43:14
44:2, 8
46:8, 10
47:19
52:23
53:16
54:9
**second**
8:9
15:15
20:24
21:10
24:11
32:8
50:6, 21
52:12
55:16
59:8
61:21
72:5

**secure**
24:20
**see**   9:17
11:4
14:12, 16
16:17
18:9
20:1, 13
21:15, 16
22:12
24:17, 19
25:1
29:24
30:5, 13
33:13, 17,
18, 21
36:2
37:3
38:14
40:2, 22
41:6
43:5
49:1, 10,
19   50:22
52:10, 15
53:13, 22
55:23
56:23
58:24
60:16, 24
61:9, 19
**seeing**
42:12
**seeking**
54:11
**seen**   8:13
9:1   18:6
31:21
55:13
**self**
11:21, 23
**sell**   45:4
**send**
10:22
16:9, 19
17:3
**sending**
30:4
66:8
70:24

**sense**
52:22
**sent**
10:24
17:7
18:7
21:1
41:1
50:2
65:4
69:16
**sentence**
50:10
**sentences**
38:24
**separate**
50:9
**serious**
16:24
**SERVICES**
1:22
**services,**
10:20
**SESSION**
3:1   47:12
**set**   23:13
74:17
**Seven**
6:24   7:6
**shift**
49:11
71:12, 13
**shifts**
71:5, 12
**short-term**
11:15, 21,
24   12:3,
4, 9
13:10
14:1
21:21, 22
35:14, 18
51:16, 23
52:6
**shows**
21:14
**side**
23:13
33:9
41:6   42:1

**Signature**
72:10
**signed**
73:16
**signing**
73:13
**similar**
49:11
**simply**
62:15
**sir**   63:16
**sister**
36:23
41:24
47:12
**sit**   61:14
69:14
**situation**
25:20
28:24
29:6
**six**   11:17
37:17
**social**
26:16
**somebody**
14:21
**someone's**
71:7
**soon**   17:6
66:24
67:9
68:22
**Sorry**
8:19
15:6
42:6
52:11
56:6, 20
57:21
65:20
**sort**   25:9
**sounds**
36:8
**South**
1:14   2:3
**SOUTHERN**
1:1
**speaking**
29:2

43:6
49:5, 7
**specialist**
24:21, 24
25:5, 22
26:8   37:9
**specialists**
53:3
**specific**
13:2
18:18
28:24
33:7
49:6
54:10, 18
61:11
70:2, 3

**specifically**
29:11
34:2, 13
58:12
**specified**
74:12
**Spoke**
15:16, 18
29:24
30:13
33:13, 19
49:18
52:9
56:11, 23
60:15
61:19
**SS**   73:1
74:2
**stack**   9:21
**stamped**
55:18
**stand**
24:3   39:8
**standpoint**
27:18
**stands**
49:22
**start**
36:9
45:6
46:22
47:2, 5

51:17
53:22
55:5    59:9
started
  36:17
  66:6
  71:18
starting
  36:21
  48:24
starts
  24:17
  67:24
State    2:8
  5:8    73:1
  74:1,  4,  21
stated
  73:14
statement
  58:3,  11,
  16
STATES    1:1
status
  32:15,  17,
  20    39:11,
  16,  16
statute
  3:9
stenotypy
  3:10    74:8
step    49:14
sticky
  41:4
stipulated
  3:6

STIPULATIONS
  3:4
stop    59:20
Stopped
  65:12
straight
  5:20,  24
Street
  1:14    2:3,
8
stressful
  43:7
strike
  56:2    60:5

submitted
  73:13
subsequent
  25:17
substance
  73:7
successful
  45:12
  50:20
Suite
  1:22    2:8
summarizing
  70:15
summary
  70:24
supervisor
  65:5,  7
support
  21:20
  53:13,  18
  54:13,  13,
  16,  23
supposed
  39:18
supposing
  53:4    55:1
sure    6:6
  15:8
  21:19
  22:12,  22
  25:10,  23
  30:23
  43:12
  45:2,  3
  50:16
  52:21
  53:23
  54:3,  5
  58:18
  70:17
Susan
  40:21
  42:15
  68:1,  10
Susie
  39:4
  58:24
  59:13
  68:10

sworn    5:4
  74:6
system
  8:17,  18,
23    14:3
  18:4
  22:2,  4
  39:12
  46:1

< T >
take    5:24
  6:16,  18
  8:9    14:2
  22:8
  27:23
  40:9
  45:11
  59:8
taken    3:9
  5:17
  55:4
  60:9
  72:7
  74:7,  11
takes
  46:15,  17
Talebi
  40:21
  42:15
  68:1
talk
  27:18
  36:11
  38:1
  43:1
  46:8,  11
  66:18
  69:24
talked
  34:23
  44:24
  59:16
talking
  17:13
  28:24
  30:24
  34:3
  35:1,  2
  36:9

60:12
  62:18
  64:14
TDP    17:23
  24:1
  35:14
  59:17
team    36:16
tell    6:7
  7:8    8:15
  9:21
  10:24
  19:19
  27:10
  29:9
  42:18
  51:6,  9
  62:13
  66:21
  69:22
telling
  44:3
  53:18
  54:15
temporary
  11:14
  26:20
  27:5,  11
  31:2
  44:11
term
  11:22
  12:4
  39:10
testified
  63:3
testify
  42:7    74:6
testimony
  74:7,  11
Thank    10:1
thing
  10:21
  34:17
things
  16:21
  48:7    50:9
think
  10:15
  17:18

20:15
  22:24
  32:16
  34:2,  8,  9
  35:11
  38:24
  39:10,  22
  43:7
  44:5
  47:20
  48:15
  50:1
  52:4
  53:1,  2
  54:7,  12
  60:4
  65:16
  66:4,  5,  6,
7    67:5,  8
  68:24
thinking
  25:21
third
  14:11
  23:23
  35:24
thought
  36:15,  22
  37:1
  41:14
  42:24
  50:8,  22
  56:16
  66:5    67:2
thread
  55:14
  70:11
three
  11:2
  19:23
  39:15
  52:20
  53:10
time    3:10
  6:3    7:6
  10:15
  14:3,  7
  15:3,  8
  19:2,  12
  22:9

```
26:4                transcribe          50:9                verbal              wants
30:16                15:23               62:18, 20           5:22                 36:9
36:7                transcribed         type    54:10       verbals              51:13
43:3, 20             3:11    74:9       typical              68:23               way    10:15
44:4                transcript           31:4               verify              Wednesday
46:17, 24            8:16               typically            16:24               1:8    3:1
48:9, 24             73:4, 12            31:6               versus              week    67:5,
49:10                74:10               35:15, 16           22:21              6
56:1, 12                                                    voicemail           weeks
62:17               transitional        < U >                36:4, 6, 7          27:7
63:1, 4, 8          10:20               uh-huh              voicemail,           39:15
64:4, 6            treatment             5:23                36:1               welcome
65:24               22:13                14:13              vs    1:6             10:2
67:3, 7,           tried                 21:7                                    35:10
11   68:16          66:23                26:15              < W >                44:23
74:11              true    73:7         uncle              wait    47:3         Well    9:4
times               74:10                47:15             waived                10:13
37:1    48:6       truth    74:6        uncomfortabl        3:14                 12:11, 24
timewise           truthfully          e    51:7           72:10                14:3
40:20               6:11               undersigned        want    6:5           15:11
title              try    5:21          73:14              7:24                  16:21
13:18               6:4    23:3,        understand          9:15, 21            17:1
22:20, 20,         4    27:23           6:3, 6             14:9, 10             18:20
23    24:5          43:9, 13            37:6               23:10                19:1
26:13, 14           48:17, 23           61:24              27:19, 21            21:11
to,    23:19        49:4                69:4               30:4                 25:6
today    6:9       trying              understandin        38:1                 26:10, 15,
59:16               13:7               g    11:20          40:19               20    28:8
61:14               18:16               12:2               49:15                29:7
63:15               24:20               28:4               50:5, 16            36:15, 23
64:23               43:5                59:24              51:24                41:14
69:15               46:2                62:24              52:12, 23,          44:5
told    29:7        69:11               63:4, 14          24    53:5           45:17
33:19              turn    9:22         64:1, 23           56:22                47:4
44:22               10:2               understood          58:21               48:20
52:14, 17,          14:9                31:9               60:22               50:24
20, 21              29:22              unit                61:14, 18           51:11
53:9                35:23               68:18              69:15                53:20
69:20               38:6                69:21, 23          71:5                 54:18
tool    9:10        51:5                71:13             wanted                56:2
top    15:16        55:16              UNITED    1:1        25:21               61:8
20:15               58:20              units              43:11, 12            62:6
touch    31:5       61:17               46:19             45:3, 3              63:5, 18
track              two    11:13        update             46:1                 65:10
9:11                12:13               22:7, 7            54:21                66:4, 23
63:24               13:3                51:3               60:14                71:3, 7
training            16:16, 21          use    12:12        61:24              wellness
12:23               17:10                                  69:23                7:3    9:1,
trainings           24:5               < V >                                  10
13:2
```

went
 10:14
 40:17
 61:8
 62:7, 20,
21, 22
 63:7, 10
 64:6, 13
 71:18
we're
 9:23
 18:15
 19:16
 23:20
 24:20
West    1:22
WHEREOF
 74:17
White
 11:6, 7
 24:5
Witness
 3:8, 12
 4:2    42:4,
6    73:13
 74:5, 8,
11, 17
women    24:6
wonder
 49:24
word    32:21
work    7:11,
18    9:8
 10:20
 11:18
 13:8, 8
 18:17, 19
 19:11
 21:16, 24
 22:5
 23:8, 8, 9
 24:6, 18,
24    25:1
 26:1, 7
 33:20
 34:1, 6,
10, 17, 24
 35:5, 13,
17    39:13,
19, 19

 43:11, 19,
24    44:7,
10, 17, 20,
21    45:6,
12, 15, 15
 46:6
 47:23
 48:18
 50:20
 51:12, 17
 52:2
 53:19
 54:4, 5
 55:3, 4, 6,
21    56:5,
8, 12
 57:4
 61:3
 62:21
 67:9    71:5
work,
 36:9
 39:21
worked
 12:14, 17
 17:6
 62:6, 23
 63:10, 19
worker
 26:16
Workers
 11:23, 23
 13:11
workforce
 25:11
working
 18:13
 22:23
 23:7
 44:4
 46:20
 47:2, 24,
24    54:17
 71:19
workplace
 24:24
 25:4, 22
 26:3, 7
 37:8

work-related
 10:17
works
 10:16
 65:10
write
 33:5
 49:24
writing
 3:10
 32:10
wrong    67:1
wrote
 23:21
 35:4
 51:18
 66:10

< Y >
Yeah    16:2
 22:4
 23:21
 31:1, 11
 33:8
 34:20
 37:17
 41:13, 19
 47:13
 51:3
 56:14
 60:8
 64:9
 65:13
 66:16
 67:7    69:6
year
 12:16, 17
 18:11, 12
 27:8
 62:6, 7,
23    63:9,
19    64:1,
5, 8, 12,
20, 24
 69:4
years
 6:24    7:7
Yep    8:12
yes,    5:22

yesterday
 7:21

# Current Status Report

5/23/2013

| Employee Information | | Work Information | |
|---|---|---|---|
| Employee **Casagrande, Joseph** | SSN 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 | Company **RVHSP** | Dept **14040** |
| DOB **03/19/1956** | Phone **(614)581-8001** | Area **RMH001** | Occupation **Staff RN** |
| Address **1426 Yorktown Road** | | Work Shift **Third** | Work Phone | Ext. |
| City, State, Zip **Columbus, OH 43232** | | Work Status **Full Time** | Clock # **77893** | Date Hired **12/05/2011** |

| Disability/Absence Information | | Case Status | | |
|---|---|---|---|---|
| Date of Absence **07/19/2012** | Date Reported | Degree **Non-FMLA** | Reason **Illness - self** | Status **open** |
| Nature of Injury **Acute illness/injury** | Part of Body/Side **brain** | Coverage **FMLA only** | | Claim Number |
| Initial Tx | Initial Tx Date | Certification **Denied** | Certified By | Cert. Date |
| Desc. of Injury **anxiety d/o; HTN** | | Comments | | |

| Allowed Conditions | | | | | | |
|---|---|---|---|---|---|---|
| Type | ICD-9 | Description | Location | Site | Status | Date |

| Return-to-Work Information | | | | |
|---|---|---|---|---|
| Period **Initial Injury** | Last Day Worked **07/19/2012** | Released RTW **08/07/2012** | RTW Status **full duty** | Status Date **8/7/2012** |
| | Period | From | Thru | Days |
| | lost workdays | 07/19/2012 | 08/07/2012 | actual 20 |
| Period **Re-Injury #1** | Last Day Worked **11/02/2012** | Released RTW **03/01/2013** | RTW Status **full duty** | Status Date **3/18/2013** |
| | Period | From | Thru | Days |
| | lost workdays | 11/02/2012 | 03/17/2013 | actual 136 |

| Case Notes | | |
|---|---|---|
| 03/21/2013 | **PAF Change- RTW 3/18/13** | mheyder |
| | Thank you for submitting PAF changes for Casagrande,Joseph, Emplid 77893. Your transaction has been received by the HRIS department for processing. Most transactions will be processed within the pay period of the effective date. Terminations and pay increases with an effective date in the middle of a pay period will be processed the following pay period. | |
| 03/19/2013 | **PC from Delores in Payroll re: overpymt** | emann |
| | Delores from Payroll called today indicating they still have not received check from Joseph for $527.41 (amount of overpymt).  cg | |
| 03/19/2013 | **(2nd) Case Closure-CM closed.** | rcacioppo |



**DEPOSITION EXHIBIT**

3/12/14

PENGAD 800-631-6989

Casagrande v. OhioHealth 001202

Joe Casagrande "EE", DOB; 3/19/56, STaff RN Third Shift mgr. Amy Sayers med/surg telemetry hire date: 12/5/2011 36hrs FMLA denied (as not worked here a year) LTD elected? yes as of 1/1/2012 Did apply for LTD but case was closed as EE released to RTW on 2/27 at full duty by his doctor. originally off work fr 7/20 to ERTW 8/7/2012 dealing with severe anxiety, panic attacks written off by Tim Nuss, CNP, at Canyon Medical Center; CM offered TWS; met with his provider on 8/3 and confirmed RTWFD for 8/7. Then off work fr 11/2-no call no show that weekend of I believe 11/3, 11/4 ; on 11/5 manager (Amy Sayers) said family found him at home in bed; going through some mental health issues; Mgr gave associate this CM's contact info. and after speaking to Joe he gave me permission to assist in asking his doctor to complete form B medical certification for off work. EE Said Dr. referred him to Talbot Hall for alcohol rehab but EE had a lot of trouble to find if in network or not in network; we called OhioHealthy for assistance and Jean LeFebve, case manager assisted and we worked together as a team; CM also tried to contact Parkside for admittance; in end he went to Shepard's Hill in Newark for detox and then was discharged with recommendation to go for outpt. EE did meet with Neil Kennedy Recovery Clinicfor eval in Dublin for IOP after detox but then stated had trouble getting return calls; CM advised him to reconnect with his doctor for further direction and Rick G, at EAP in interim for mental health support; FMLA was denied due to not working 12 or more months prior to going out on FMLA; did meet the 1250hrs work criteria by the time he went off on 11/2; Position was posted in Nov and filled in Dec. Although EE was still written off work, CM arranged meetings for Joe to assist in job search as Joe agreed that he would like to look for work on other floors with less acuity perhaps and was concerned about not having job once release; Referred to WPAS to help him cut through the clutter of applications; He opted not to work with WPAS and stayed connected to Michael Kromb HR . CM also advised he tried to apply for LTD which he had elected as his TDP running out. However in late Feb. Joe researched the statute and brought to our attention that the FMLA regulations read differently than how we were intrepreting; CM reported to my manager and she communicated with Joe that we would have our legal dept review; On 3/12/2013; this CM offered Joe his position back at night along with 2 daytime shift options that were open. . CM then advised Joe that turning further discussion and finalization of offer and coordination of start date to mgr (amy Sayers) and HR (Susie Talebi). CM understands that Joe was to meet with mgr and start on 3/18/2013. This is pending.

Meanwhile EE has RTW as of 3/18/2013, CM will close out of case management in AHW.  -rcacioppo

03/18/2013   DO NOT SPEAK TO EE                                                    cmoranda
If he calls for anything, refer him to his attorney. Do not provide any information. cmoranda

03/14/2013   CIGNA LTD Closure                                                    rcacioppo
-----Forwarded by Rose M Cacioppo/Staff/OhioHealth on 03/14/2013 04:45PM ----- To: "RCACIOP2@OhioHealth.com" <RCACIOP2@OhioHealth.com> From: "McNeill, Erin L 250" <Erin.McNeill@Cigna.com> Date: 03/14/2013 02:45PM Cc: "SAGRAVM@OhioHealth.com" <SAGRAVM@OhioHealth.com> Subject: LTD closure  Good afternoon, This email is in regards to the Long Term Disability (LTD) claim for Joseph Casagrande. Please be advised that his LTD claim has been closed, and no benefits have been payable. He has been notified under separate cover. If you have any questions, please do not hesitate to contact me. Thanks! Policy Number: Policy Holder: Underwriting Company: Erin M Claim Manager Long Term Disability Cigna Group Insurance PO BOX 22325 Pittsburgh, PA 15222-0325 1-800-238-2125 x3164 Fax: 855-805-9610 Confidential, unpublished property of Cigna. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2013 Cigna.
----------------------- CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright (c) 2013 Cigna

REDACTED

Casagrande v. OhioHealth 001203



Companies to Work for 2010 " —— Forwarded by Christine Moranda/Staff/OhioHealth on 03/14/2013 08:52 AM —— ——Forwarded by Rose M Cacioppo/Staff/OhioHealth on 03/14/2013 08:41AM —— To: Jcasa123@aol.com From: Amy S Sayers/Staff/OhioHealth Date: 03/14/2013 08:36AM Cc: Susan Talebi/Staff/OhioHealth/OhioHealth, Rose M Cacioppo/Staff/OhioHealth/OhioHealth, Lindsey R Castle/Staff/OhioHealth@OhioHealth, Christy H Griskey/Staff/OhioHealth/OhioHealth, Chasidy R Crist/Staff/OhioHealth/OhioHealth Subject: Fw: JumpStart and Joseph Casagrande     Joseph, Hi! I need to catch up with Susie Talebi and find out if you and her had determined your shift and hours yesterday while I was out of the office; however, I wanted to provide you with the schedule already for next week. Riverside has recently developed and implemented a new program called JumpStart to assist with the orientation process in the hospital. Since you have been away from the bedside for an extended period of time, we want to provide you with a brief orientation time to get back into the flow. Please see all of the information below regarding the JumpStart process. You will be attending JumpStart starting on Tuesday, March 19, 2013 through Friday, March 22, 2013. Then we can still determine your unit schedule for the 2nd week of your refresher orientation. I wanted to provide you with this information already so you can start your preparation as directed below for next week and prepare your schedule for the week. Please read the attachments carefully regarding the schedule and the course you need to complete online before next Tuesday. I also would like to schedule a meeting with you next Monday, March 18, 2013 at 3pm so we can review schedules and expectations. Are you available that day at 3pm? Please let me know. Thanks! Amy Sayers, RN, MSN  Nurse Manager  7 Orange  Riverside Methodist Hospital  566-4747 (office) 229-8206 (pager) _____          FORTUNE "100 Best Companies to Work for 2010 " —— Forwarded by Amy S Sayers/Staff/OhioHealth on 03/14/2013 08:18 AM ——  From: Nichole I Oocumma/Staff/OhioHealth  To: Amy S Sayers/Staff/OhioHealth@OhioHealth Cc: Lindsey R Castle/Staff/OhioHealth@OhioHealth, Karen Hayes/Staff/OhioHealth@OHIOHEALTH, Tricia K Edwards/Staff/OhioHealth@OhioHealth, Ashley D Graham/Staff/OhioHealth@OhioHealth Date: 03/13/2013 12:40 AM Subject: Re: JumpStart and Joseph Casagrande     Amy, We would be glad to include Joseph in next weeks JumpStart session. It begins on Tuesday, March 19 at 8:30 am.  Besides arriving promptly, ready to participate, he should complete the learning styles inventory - directions attached. A discussion of learning styles will occur on Tuesday. As you will see from the agenda, also attached, we will be reviewing basic arrhythmia and participating in an introduction to clinical applications (computer) training on this first day. He should plan on participating the entire day. Wednesday - Thursday include both clinical skill practice and simulation. Please instruct him to bring his General RN Orientation manual for reference during the week.  As a JumpStart participant, Joseph will be included in the mid and end-point assessment process. As you know, these assessments allow us to track orientee progress, provide feedback and support the orientee/preceptor relationship.  We appreciate the opportunity to participate in Joseph's orientation experience. Please contact me if you have further questions. Otherwise, we will see Joseph next week.  Thanks -     Nichole I. Oocumma, BSDH, MA, CHES Experiential Learning Outcomes Manager  OhioHealth Experiential Learning  3525 Olentangy River Road, Suite 4300  noocumm2@ohiohealth.com <mailto:noocumm2@ohiohealth.com>  614.566.2235    ——Amy S Sayers/Staff/OhioHealth wrote:—    To: Nichole I Oocumma/Staff/OhioHealth  From: Amy S Sayers/Staff/OhioHealth Date: 03/12/2013 10:59AM Cc: Lindsey R Castle/Staff/OhioHealth@OhioHealth Subject: JumpStart and Joseph Casagrande   Hi Nichole,  I am requesting to have Joseph Casagrande, RN, in the JumpStart program starting next Tuesday, March 19th. He has been off from the unit since November on a medical leave. We want to provide him with the week of JumpStart and then one additional week of orientation on our unit the week of March 25th. Please verify that Joseph will be in the JumpStart program next week and please provide me with the details of the schedule so I can inform him where to go next Tuesday. Thank you! Amy Sayers, RN, MSN  Nurse Manager  7 Orange  Riverside Methodist Hospital  566-4747 (office)  229-8206 (pager)                FORTUNE "100 Best Companies to Work for 2010

"(See attached file: Casagrande Learning Styles Instructions.docx)(See attached file: JumpStart Participant Agenda.Rev.1.docx)(See attached file: Casagrande Learning Styles Instructions.docx)(See attached file: JumpStart Participant Agenda

03/14/2013     email reply fr HRec: Mike K, Amy S, Chris M                                        rcacioppo

Casagrande v. OhioHealth 001204

Thank you. Hope you feel better Susie.   Rose M. Cacioppo, MA, CRC RTW/Disability Case Manager 614-566-3747 fax 614-533-0039  OhioHealth Inc. Associate Health and Wellness 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908 _____ FORTUNE "100 Best Companies to Work for 2013 "   ----Susan Talebi/Staff/OhioHealth wrote:---- To: Rose M Cacioppo/Staff/OhioHealth, Amy S Sayers/Staff/OhioHealth From: Susan Talebi/Staff/OhioHealth Date: 03/14/2013 11:46AM Cc: Michael D Kramb/Staff/OhioHealth Subject: RE: Yesterday's telephone conversation I have not spoken to him. I think Amy's email is sufficient. I will ask mike to follow up with h as my voice is limited today. I will chat with Mike prior to him calling joe.       Sent with Good (www.good.com)

03/14/2013      email fr Amy Sayers to Joe                                              rcacioppo

----Forwarded by Rose M Cacioppo/Staff/OhioHealth on 03/14/2013 08:40AM ---- To: Jcasa123@aol.com From: Amy S Sayers/Staff/OhioHealth Date: 03/14/2013 08:36AM Cc: Susan Talebi/Staff/OhioHealth, Rose M Cacioppo/Staff/OhioHealth, Lindsey R Castle/Staff/OhioHealth@OhioHealth, Christy H Griskey/Staff/OhioHealth@OhioHealth, Chasidy R Crist/Staff/OhioHealth@OhioHealth Subject: Fw: JumpStart and Joseph Casagrande   Joseph, Hi! I need to catch up with Susie Talebi and find out if you and her had determined your shift and hours yesterday while I was out of the office; however, I wanted to provide you with the schedule already for next week. Riverside has recently developed and implemented a new program called JumpStart to assist with the orientation process in the hospital. Since you have been away from the bedside for an extended period of time, we want to provide you with a brief orientation time to get back into the flow. Please see all of the information below regarding the JumpStart process. You will be attending JumpStart starting on Tuesday, March 19, 2013 through Friday, March 22, 2013. Then we can still determine your unit schedule for the 2nd week of your refresher orientation. I wanted to provide you with this information already so you can start your preparation as directed below for next week and prepare your schedule for the week. Please read the attachments carefully regarding the schedule and the course you need to complete online before next Tuesday. I also would like to schedule a meeting with you next Monday, March 18, 2013 at 3pm so we can review schedules and expectations. Are you available that day at 3pm? Please let me know. Thanks! Amy Sayers, RN, MSN Nurse Manager 7 Orange  Riverside Methodist Hospital  566-4747 (office) 229-8206 (pager) _____ FORTUNE "100 Best Companies to Work for 2010 "  ---- Forwarded by Amy S Sayers/Staff/OhioHealth on 03/14/2013 08:18 AM ----  From: Nichole I Oocumma/Staff/OhioHealth  To: Amy S Sayers/Staff/OhioHealth@OhioHealth Cc: Lindsey R Castle/Staff/OhioHealth@OhioHealth, Karen Hayes/Staff/OhioHealth@OHIOHEALTH, Tricia K Edwards/Staff/OhioHealth@OhioHealth, Ashley D Graham/Staff/OhioHealth@OhioHealth Date: 03/13/2013 12:40 AM Subject: Re: JumpStart and Joseph Casagrande       Amy, We would be glad to include Joseph in next weeks JumpStart session. It begins on Tuesday, March 19 at 8:30 am.  Besides arriving promptly, ready to participate, he should complete the learning styles inventory - directions attached. A discussion of learning styles will occur on Tuesday. As you will see from the agenda, also attached, we will be reviewing basic arrhythmia and participating in an introduction to clinical applications (computer) training on this first day. He should plan on participating the entire day. Wednesday - Thursday include both clinical skill practice and simulation. Please instruct him to bring his General RN Orientation manual for reference during the week.  As a JumpStart participant, Joseph will be included in the mid and end-point assessment process. As you know, these assessments allow us to track orientee progress, provide feedback and support the orientee/preceptor relationship.   We appreciate the opportunity to participate in Joseph's orientation experience. Please contact me if you have further questions. Otherwise, we will see Joseph next week.  Thanks -    Nichole I. Oocumma, BSDH, MA, CHES Experiential Learning Outcomes Manager OhioHealth Experiential Learning 3525 Olentangy River Road, Suite 4300  noocumm2@ohiohealth.com <mailto:noocumm2@ohiohealth.com> 614.566.2235  ----Amy S Sayers/Staff/OhioHealth wrote:---- To: Nichole I Oocumma/Staff/OhioHealth From: Amy S Sayers/Staff/OhioHealth Date: 03/12/2013 10:59AM Cc: Lindsey R Castle/Staff/OhioHealth@OhioHealth Subject: JumpStart and Joseph Casagrande   Hi Nichole, I am requesting to have Joseph Casagrande, RN, in the JumpStart program starting next Tuesday, March 19th. He has been off from the unit since November on a medical leave. We want to provide him with the week of JumpStart and then one additional week of orientation on our unit the week of March 25th. Please verify that Joseph will be in the JumpStart program next week and please provide me with the details of the schedule so I can inform him where to go next Tuesday. Thank you! Amy Sayers, RN, MSN Nurse Manager 7 Orange  Riverside Methodist Hospital  566-4747 (office) 229-8206 (pager) _____ FORTUNE "100 Best Companies to Work for 2010

"(See attached file: Casagrande Learning Styles Instructions.docx)(See attached file: JumpStart Participant Agenda.Rev.1.docx)

03/14/2013      reply to Joe--forwarded to Susie, Amy, Chri                                    rcacioppo

Casagrande v. OhioHealth 001205

REDACTED

Hi Joe: My pleasure. I will not be sending a letter or summary points. As I mentioned in our conversation, HR and Management will further discuss with you. Susie Talebi and/or Amy Sayers will be contacting you and then I believe a letter will be issued to clarify the agreement. Appreciate your patience. Thank you. Rose M. Cacioppo, MA, CRC RTW/Disability Case Manager 614-566-3747 fax 614-533-0039 OhioHealth Inc. Associate Health and Wellness 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908

FORTUNE "100 Best Companies to Work for 2013 "

-----Jcasa123@aol.com wrote: ----- To: RCACIOP2@OhioHealth.com From: Jcasa123@aol.com Date: 03/13/2013 04:10PM Subject: Yesterday's telephone conversation Hi Rose: Thank you for calling me yesterday and informing me about my RN position being re-instated on 7 Orange with Riverside, OhioHealth. I wasn't sure if a formal letter was going to be forthcoming regarding our conversation yesterday, or not. If not, would you kindly summarize the points you made to me in writing? I just would like to make sure that everyone, including me, is on the same page. I believe you had told me that Amy Sayers would be calling me at some point before my return to work next week to discuss the particulars. Thanks again for your attention, concern, and professionalism as my disability case manager over the past few months. It is very much appreciated. Regards, Joseph Casagrande BSN, RN

03/12/2013   spoke to Marsha, DCA                                                    rcacioppo

Marsha reviewed FMLA usage and updated Ehealth to reflect that EE was FMLA eligible as of 12/5/2013-based on 12 weeks of FMLA, it expired on 2/26/13. EE was released by his doctor on 2/27/2013. CM informed EE today of job offer after Chris rec'd final word from 5. He offered Joe a few options in his old dept under AMy Sayers. Per direction from Chris M, my manager, CM turned over further discussion to Amy and Susie to contact Joe to work out details   -rcacioppo

03/12/2013   email to HR & mgr                                                      rcacioppo

Susie and Amy: I reached Joe this morning and let him know the following: That we (OhioHealth) would like to offer him a position. That we understand that he has the right to return to his position which was a 24hr night shift (Friday-Saturday schedule) under FMLA regulations. However we have 2 open positions on days and could offer him 24hr day shift position or a 36hr day time position. These are positions on 7Orange under Amy Sayers. He said he would need to think about it. Asked if he accepted 24hr daytime would he be able to work weekends as well(Sat-Sunday)? I told him I would leave a message for Amy to advise further on this. I did tell him that this would be like returning to work as usual so that his TB, BLS must be up to date and that his performance discipline would still be in effect is if he's at written etc. He understood. At this point I am turning over this negotiation to you and Amy. I advised him that you and Amy will contact him directly to answer his questions and complete the agreement. If you need to talk to Chris or I, feel free to call us this afternoon. I have spoken to Amy and I'm sure you will both want to discuss together before contacting him. As a reminder in your upcoming negotiation with Joe: Ultimately if he decides he doesn't want the daytime schedules, I                                I did tell him that we wondered if he might be interested in day--I told him I Thought that it might be helpful for him as a new nurse to be on similar schedule as his nurse manager, as well as perhaps better for his sleep needs if any but that was just side benefits, I told him. I told him the actual reason we would like to offer the daytime is because they are currently posted and open, however we understand he has right to return to that night position (24hrs) per the FMLA protection. And if he would like to return to nights, I would have to ask his manager and HR work on that.  *If he does accept the daytime position, please advise us (Chris MOranda or I) as our ·

.egards, Rose M. Cacioppo, MA, CRC RTW/Disability Case Manager 614-566-3747 fax 614-533-0039 OhioHealth Inc. Associate Health and Wellness 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908

FORTUNE "100 Best Companies to Work for 2013 "

03/12/2013   581-8001 tel to EE                                                     rcacioppo

CM and Chris Moranda left vm for JOe asking him to return call (left Rose's number x3747); (we can advise him of job offer).  -rcacioppo

03/11/2013   email to mgr and CM on RTW                                             cmoranda

From:   Christine Moranda/Staff/OhioHealth To:   Amy S Sayers/Staff/OhioHealth@OhioHealth, Rose M Cacioppo/Staff/OhioHealth@OhioHealth Date: 03/11/2013 04:27 PM Subject: Casagrande (z)   Amy/Rose - just want to make sure we are all clear on the return for Joe, before I inform everyone.

Per Amy OK to RTW 3/18/13  PAF - 24 hour position (what he had when he went out) - Amy is this OK or do you want to offer 36 or either? He is entitled to 24. Rose and I will call him to tell him tomorrow of the date of return and have him contact Amy for the schedule. As it is a different shift, and if he accepts, '
                              . If he only wants nights, we would have to accommodate. Our hope is that he will be OK with days. We will let you know following the call. Let me know if you have any other questions. Thanks Amy for your patience as we work through this. Chris Moranda, CDMS, CCM, Manager, Disability Services

03/08/2013   spoke to EE                                                           rcacioppo

Casagrande v. OhioHealth 001206

EE finished speaking with DCA re: payroll corr; found out Marsha and him have same birthday 3/19!-- CM asked how job search was going; EE said he had interview this past week on 2Orange-they said they will make a decision by week of 3/11/13. Michael told him they were trying to decide between him and one other applicant at GRant Plastic Surgery. CM asked him what kind of hours is he looking for or minimum hours he is considering--he said he originally started at 36 then switched to 24 in the summer when working for Amy. Is looking for either he said. CM said okay; wished him a good weekend and told him per my email, Chris Moranda has been in touch with Legal and they are still reviewing and hope to get back to him shortly. -rcacioppo

| 03/08/2013 | Overpayment email to EE | | mheyder |

Hi Joe- It was nice to talk to you. Thank you for being so understanding. Here is the information you need. Take care and I will be thinking of you on the 19th:) Marsha Please make check payable to: OhioHealth Corp. The amount is: $527.41 Mail to: OhioHealth Corp. 180 East Broad St. 31st Floor Columbus, Ohio 43215 Attn: Delores Morris

| 03/07/2013 | email fr Joe to Chris-'call into legal' | | rcacioppo |

------Forwarded by Rose M Cacioppo/Staff/OhioHealth on 03/07/2013 07:51AM ------ To: "Jcasa123" <Jcasa123@aol.com> From: Christine Moranda/Staff/OhioHealth Date: 03/06/2013 05:53PM Cc: Nancy Miller/Staff/OhioHealth@OhioHealth, Rose M Cacioppo/Staff/OhioHealth@OhioHealth Subject: Re: Specific FMLA Regulations applicable to my situation I have a call into Legal and hope to connect tomorrow. Will advise once I have spoken with them. Thanks foir checking. Chris Moranda, Manager, Disability Services Associate Health & Wellness OhioHealth 614-566-1967 614-570-8902 cmoranda@ohiohealth.com From: Jcasa123 Sent: 03/06/2013 05:36 PM EST To: Christine Moranda Cc: Nancy Miller; Rose Cacioppo Subject: Re: Specific FMLA Regulations applicable to my situation Hi Chris...just following up to see if you've been able to obtain answers regarding my FMLA questions after reviewing the related FMLA Regulations Title 29 Part 825, and more specifically the ones I cited below. Thanks, Joseph Casagrande BSN, RN In a message dated 3/1/2013 8:04:37 A.M. Eastern Standard Time, CMORANDA@OhioHealth.com writes: I appreciate your diligence in this matter. I will review and provide you with legal's opinion. What you sited is not in the regs that I have. I did know there was a recent update and was not aware of this change. Please allow me some time to gain further clarification in relation to your situation. Chris Moranda, CDMS, CCM, Manager, Disability Services OhioHealth, Associate Health and Wellness Direct Line: 614-566-1967 Cell Number: 614-570-8902 Fax Line: 614-566-6772 cmoranda@ohiohealth.com _____ FORTUNE '100 Best Companies to Work for 2010 ' From: Jcasa123@aol.com To: CMORANDA@ohiohealth.com Cc: nmiller@ohiohealth.com, rcacioppo2@ohiohealth.com Date: 02/28/2013 10:40 PM Subject: Specific FMLA Regulations applicable to my situation Hi Chris: I am attaching the following link to specific sections of Federal regulation Part 825 with regard to the items in question regarding my specific eligibility and also the question of FMLA leave vs. Non-FMLA leave as far as becoming FMLA eligible during a Non-FMLA leave period. Thanks again, Joseph Casagrande BSN, RN Electronic Code of Federal Regulations e-CFR Data is current as of February 26, 2013 Title 29: Labor PART 825—THE FAMILY AND MEDICAL LEAVE ACT OF 1993 http://www.ecfr.gov/cgi-bin/text-idx?c=ecfr&SID=f78273505d4af2af2ace4ce8c3b96878&rgn=div5&view=text&n ode=29:3.1.1.3.54&idno=29#29:3.1.1.3.54.1.489.10 <http://www.ecfr.gov/cgi-bin/text-idx?c=ecfr&SID=f78273505d4af2af2ace4ce8c3b96878&rgn=div5&view=text& node=29:3.1.1.3.54&idno=29> The following is the specific regulation number citation regarding being on non-FMLA leave (ST Disability) and then becoming qualified under FMLA during the non-FMLA leave period... Part 825.110 (3)(d). See my bold-type and underlining enhancements. § 825.110 Eligible employee. (3)(d) The determination of whether an employee has worked for the employer for at least 1,250 hours in the past 12 months and has been employed by the employer for a total of at least 12 months must be made as of the date the FMLA leave is to start. An employee may be on "non-FMLA leave" at the time he or she meets the eligibility requirements, and in that event, any portion of the leave taken for an FMLA-qualifying reason after the employee meets the eligibility requirement would be "FMLA leave." ( See § 825.300(b) for rules governing the content of the eligibility notice given to employees.) Next regarding the notice I received from OhioHealth dated November 5, 2012, and the second notice I received on December 11, 2012 from Amy Sayers; both notices indicated I did not meet either the 12 month criterion or the 1,250 hours worked criterion. In fact I did meet the 1,250 hours criterion as of the November 5, 2012 notice. As of the December 11, 2012 notice I met both the 12 employment criterion and the 1,250 hours worked criterion and therefore should have been notified as to my job being FMLA protected as of December 5, 2012. In addition, these two notices were deficient as per the requirements of Regulation Part 825.300 (b)(2) in that they did not include the number of months I actually had been employed, nor did the notices include the number of hours I worked during the rolling period. Here is the regulation with my bold-type and underlining enhancements: § 825.300 Employer notice requirements. (b) Eligibility notice (2) The eligibility notice must state whether the employee is eligible for FMLA leave as defined in § 825.110(a). If the employee is not eligible for FMLA leave, the notice must state at least one reason why the employee is not eligible, including as applicable the number of months the employee has been employed by the employer, the number of hours of service worked for the employer during the 12-month period, and whether the employee is employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite. Notification of eligibility may be oral or in writing; employers may use Appendix D of this part 825 to provide such notification to employees. The employer is obligated to translate this notice in any situation in which it is obligated to do so in § 825.300(a)(4).

Casagrande v. OhioHealth 001207

03/01/2013    2nd email fr Joe to Chris re: specific FMLA 2/28                          rcacioppo

-----Forwarded by Rose M Cacioppo/Staff/OhioHealth on 03/01/2013 02:18PM ----- To:
CMORANDA@ohiohealth.com From: Jcasa123@aol.com Date: 02/28/2013 10:40PM Cc:
nmiller@ohiohealth.com, rcaciop2@ohiohealth.com Subject: Specific FMLA Regulations applicable to my
situation  Hi Chris:  I am attaching the following link to specific sections of Federal regulation Part 825 with
regard to the items in question regarding my specific eligibility and also the question of FMLA leave vs.
Non-FMLA leave as far as becoming FMLA eligible during a Non-FMLA leave period.  Thanks again,  Joseph
Casagrande BSN, RN  Electronic Code of Federal Regulations  e-CFR Data is current as of February 26, 2013
Title 29: Labor    PART 825—THE FAMILY AND MEDICAL LEAVE ACT OF 1993
http://www.ecfr.gov/cgi-bin/text-idx?c=ecfr&SID=f78273505d4af2af2ace4ce8c3b96878&rgn=div5&view=text&n
ode=29:3.1.1.3.54&idno=29#29:3.1.1.3.54.1.489.10
<http://www.ecfr.gov/cgi-bin/text-idx?c=ecfr&SID=f78273505d4af2af2ace4ce8c3b96878&rgn=div5&view=text&
node=29:3.1.1.3.54&idno=29>  The following is the specific regulation number citation regarding being on
non-FMLA leave (ST Disability) and then becoming qualified under FMLA during the non-FMLA leave period...
Part 825.110 (3)(d). See my bold-type and underlining enhancements.  § 825.110 Eligible employee.  (3)(d) The
determination of whether an employee has worked for the employer for at least 1,250 hours in the past 12 months
and has been employed by the employer for a total of at least 12 months must be made as of the date the FMLA
leave is to start. An employee may be on "non-FMLA leave" at the time he or she meets the eligibility
requirements, and in that event, any portion of the leave taken for an FMLA-qualifying reason after the employee
meets the eligibility requirement would be "FMLA leave." ( See § 825.300(b) for rules governing the content of the
eligibility notice given to employees.)  Next regarding the notice I received from OhioHealth dated November 5,
2012, and the second notice I received on December 11, 2012 from Amy Sayers; both notices indicated I did not
meet either the 12 month criterion or the 1,250 hours worked criterion. In fact I did meet the 1,250 hours criterion
us of the November 5, 2012 notice. As of the December 11, 2012 notice I met both the 12 employment criterion
and the 1,250 hours worked criterion and therefore should have been notified as to my job being FMLA protected
as of December 5, 2012.  In addition, these two notices were deficient as per the requirements of Regulation Part
825.300 (b)(2) in that they did not include the number of months I actually had been employed, nor did the notices
include the number of hours I worked during the rolling period. Here is the regulation with my bold-type and
underlining enhancements:  § 825.300 Employer notice requirements.  (b) Eligibility notice.  (2) The eligibility
notice must state whether the employee is eligible for FMLA leave as defined in § 825.110(a). If the employee is
not eligible for FMLA leave, the notice must state at least one reason why the employee is not eligible, including as
applicable the number of months the employee has been employed by the employer, the number of hours of service
worked for the employer during the 12-month period, and whether the employee is employed at a worksite where
50 or more employees are employed by the employer within 75 miles of that worksite. Notification of eligibility
may be oral or in writing; employers may use Appendix D of this part 825 to provide such notification to
employees. The employer is obligated to translate this notice in any situation in which it is obligated to do so in §
825.300(a)(4).

03/01/2013    email fr Joe to Chris 2/28 post PC                                        rcacioppo

Casagrande v. OhioHealth 001208

Rose M. Cacioppo, MA, CRC Disability Case Manager Associate Health and Wellness 614-566-3747 fax 614-566-6772 OhioHealth 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908

_____ FORTUNE "100 Best Companies to Work for 2010" —Forwarded by Rose M Cacioppo/Staff/OhioHealth on 03/01/2013 02:18PM —— To: rcaciop2@ohiohealth.com From: Jcasa123@aol.com Date: 02/28/2013 07:42PM Subject: Fwd: FMLA question —— Message from Jcasa123@aol.com on Thu, 28 Feb 2013 19:08:24 -0500 (EST) —— To: CMORANDA@ohiohealth.com cc: rcaciop2@ohiohealth.com, nmiller@ohiohealth.com Subject: Fwd: FMLA question <http://www.dol.gov/> Hi Chris: I appreciate you talking to me today about the FML Act. I did find the following in the DOL Regulations at the following Dept of Labor link: <http://webapps.dol.gov/elaws/whd/fmla/6i.aspx> Below is a copy/paste of a portion of the above specifically which discusses in more detail the 12-month criterion...the third bullet point talks specifically about which weeks count toward the 12 months, and it includes time such as sick, vacation and "any week for which benefits or compensation are provided by the employer to the employee (e.g., workers' compensation, group health plan <http://webapps.dol.gov/elaws/whd/fmla/3.aspx?Glossary_Word=HEALTHPLAN> benefits, etc.)" As I mentioned to you during our conversation, I was told by Rose C. before applying for ST Disability (sick leave) in November that I did not qualify for FMLA protection at that November time period, and therefore I applied for ST Disability (sick) leave, which I did qualify for (I did not apply for FMLA leave in November 2012). My ST Disability application, as per my reading of the regulations, did not preclude me from qualifying for FMLA job protection as of my 12 month anniversary date of December 5, 2012, as I was still technically employed by OhioHealth as of that date, and also was receiving at least two employer provided benefits (ST Disability and Health Insurance). I had also met the 1,250 hour worked criterion, (my records show as of the date my ST Disability period began in November 2012 I had met the 1,250 hour worked criterion). And as I mentioned to you also, I received a letter from Amy Sayers dated December 11, 2012 (6 days after my 12 month anniversary date) stating (incorrectly in my opinion) that I did not meet the two criterion for FMLA leave protection as of December 11, 2012 and that my position had been replaced effective December 11, 2012. Amy's letter also replaced the word "employed" (as written in the FMLA law and the OhioHealth Policy) with the word "working" with regard to the 12 month criterion. To me, it is not a requirement under the FMLA law or OhioHealth policy that I physically be "working" to qualify for FML job protection at the time of my 12 month anniversary. The "working" requirement comes under the 1,250 hours worked criterion, not the "employed 12 month criterion". They are separate but both must be met, and my opinion is that I met both the employed and hours worked criterion on December 5, 2012 and should have been provided all the required protections as provided under the FMLA of 1993 as amended as of my anniversary date of December 5, 2012, in fact what I received was a letter dated December 12, 2012 from OhioHealth stating that I still did not qualify for FMLA protection which I believe was is in error, as stated above. In addition, the Regulations state that if an employee does not qualify for FML protection due to not meeting one or more of the criterion (as was the case when I applied for ST Disability in November 2012 as per above), this does not preclude the employee from becoming qualified at a future date. This citation is from the following FMLA regulations at www.wagehour.dol.gov <http://www.wagehour.dol.gov/> under the employee guide section...it states: "You may request leave again in the future. Employee eligibility can change." Please advise Thanks, Joseph Casagrande BSN, RN DOL Home <http://www.dol.gov/> > elaws Advisors <http://www.dol.gov/elaws/> > Family and Medical Leave Act Advisor <http://www.dol.gov/elaws/fmla.htm> - Family and Medical Leave Act Advisor Employee Eligibility Employees are eligible for FMLA protections only if they work for a covered employer, have worked for their employer for at least 12 months, have at least 1,250 hours of service during the 12 months preceding the start of leave, and work at a site where the employer employs at least 50 employees at the site or within 75 miles of the site. Details for each eligibility criterion follow. 12-Months The determination of whether an employee has been employed for 12 months or more must be made as of the date the FMLA leave is to start. The 12 months do not have to be consecutive. If an employee is maintained on the payroll for any part of a week, the week counts as a week of employment. This includes any periods of paid or unpaid leave (e.g., sick, vacation) during which other benefits or compensation are provided by the employer (e.g., workers' compensation, group health plan <http://webapps.dol.gov/elaws/whd/fmla/3.aspx?Glossary_Word=HEALTHPLAN> benefits, etc.) 52 weeks is deemed to be equal to 12 months for purposes of determining whether intermittent/occasional/casual employment qualifies as "at least 12 months." —— Message from Jcasa123@aol.com on Thu, 21 Feb 2013 00:23:43 -0500 (EST) —— To: RCACIOP2@OhioHealth.com Subject: FMLA question Hi Rose: I'm writing this email with regard to the telephone conversation we had Wednesday morning (2/20/2013) concerning the Family Medical Leave Act and the determination letter to me dated December 11, 2012 from my unit manager Amy Sayers indicating that I did not qualify for job protection under the provisions of FMLA and OhioHealth policies. Upon reading the law it appears there are two tests (1. employment period and 2. hours worked) which need to be met. First is the employment period, which is required to be at least twelve months; and the second is the hours worked requirement which is determined over a rolling calendar year and requires 1,250 of hours worked within that rolling calendar year. Upon reading OhioHealth Human Resources Policy #704.210 as revised February 2012 it states as follows: "Associates are eligible for Family Medical Leave if they have been employed by OhioHealth for at least twelve (12) months and have worked a minimum of 1,250 hours during the previous twelve (12) months." In addition, the FML Act indicates the following under Title I, Section 101 paragraph 2 "Eligible employee" IN GENERAL.—The term "eligible employee" means an employee who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested under section 102; and (ii) for at least

Casagrande v. OhioHealth 001209

1,250 hours of service with such employer during the previous 12-month period. Based on the above I believe the letter referenced above dated December 11, 2012 indicating that I did not meet the FMLA eligibility requirements was an incorrect determination, and in fact, I had met both the employment and hours worked requirements under both the FML Act and OhioHealth policy due to the following reasons: 1: My employment start date was December 5, 2011. Therefore, based on the definition of employment, my 12 months of "employment" had been satisfied as of December 5, 2012. According to your letter to me dated February 1, 2013 indicating that my original termination date would have been February 24, 2013, the end of my temporary disability period (subsequently extended to April 20, 2013 per your email to me on February 15) as of December 5, 2012 I should have still been considered an employee of OhioHealth, as so defined, and therefore I was an employee of OhioHealth for at least 12 months as of my 12 month anniversary date, meeting requirement number 1. 2. As of the effective date of my temporary disability period (my disability pay began on November 9, 2012) although this date is before my 12 month anniversary of December 5, 2012 I had accumulated more that the required 1,250 hours worked in the rolling twelve month period. My total hours worked since December 5, 2011 to the beginning of my temporary disability period and also as of December 5, 2012 (the rolling 12 month period) amounted to 1,345.50 hours which exceeds the minimum required, meeting requirement number 2. Therefore, it is my belief that I fulfilled both the employment and hours requirement for FMLA and I indeed qualified for job protection, and other protections under the provisions of OhioHealth company policy and also under the FMLA. Also, I believe that it was incorrectly determined by OhioHealth that I did not qualify, and therefore received an incorrect notice of determination from OhioHealth which I relied upon at the time. I therefore request that this determination be re-examined and re-determined as my being qualified for FMLA protection as of the date of qualification. Also for my information purposes please inform me specifically how it was determined that I did not qualify for FMLA coverage and protection according to the OhioHealth letter to me dated December 11, 2012 as indicated above. Thank you. Sincerely, Joseph Casagrande BSN, RN 614-581-8001

03/01/2013    email 1 fr Joe on 2/8 re: jobs                                                        rcacioppo
        ——Forwarded by Rose M Cacioppo/Staff/OhioHealth on 03/01/2013 02:09PM —— To: rcaciop2@ohiohealth.com From: Jcasa123@aol.com Date: 02/08/2013 12:48AM Subject: Fwd: Internal Applicant - Preadmission Testing Nurse @ RMH (917665)   Hi Rose:   Here are the internal positions with OhioHealth I applied for so far as per your request: 918501 RN (Columbus Metropolitan Plastic Surgery, Grant campus) - Interview on Monday February 11  918436 RN (RMH Outpatient Surgery)  No word yet  917665 RN (Preadmission Testing)  See below  Thanks  -Joe —— Message from MMILLE23@OHIOHEALTH.COM on Fri, 1 Feb 2013 16:18:20 -0500 —— To:  jcasa123@aol.com   Subject:  Internal Applicant - Preadmission Testing Nurse @ RMH (917665)   Dear Joseph Casagrande   Thank you for your recent transfer request. We appreciate the opportunity to learn about your background and experience.   Your application has been reviewed by Human Resources and sent to the hiring manager for consideration. Should the hiring manager wish to discuss the opportunity with you, he/she will contact you directly to schedule a formal interview.   Thank you again for your interest in this opportunity.   Thank You, Melissa Miller   2/

03/01/2013    emaiil fre Joe to Jean re: jobs 2/8                                                   rcacioppo
        FORTUNE "100 Best Companies to Work for 2010 "   ——Forwarded by Rose M Cacioppo/Staff/OhioHealth on 03/01/2013 02:04PM —— To: rcaciop2@ohiohealth.com From: Jcasa123@aol.com Date: 02/08/2013 12:51AM Subject: Fwd: Internal Applicant - Preadmission Testing Nurse @ RMH (917665)   Rose:   I sent this (below) in error to you ... should have gone to Jean L.  —— Message from Jcasa123@aol.com on Fri, 8 Feb 2013 00:39:24 -0500 (EST) —— To:   rcaciop2@ohiohealth.com   Subject:  Fwd: Internal Applicant - Preadmission Testing Nurse @ RMH (917665)   Hi Jean:   I have an interview scheduled with the Practice Office Manager for Monday at 11 am for the Grant Plastic Surgery RN position that you suggested I apply for. #918501. I had a telephone interview with the same manager on Thursday afternoon and I thought it went very well. Thanks again for that suggestion.   I did meet with Rick (counselor) of EAP a week ago Wednesday and we have a follow up meeting on February 13. I think that meeting went well also.   I will keep you updated.   Thanks again.   Joe —— Message from MMILLE23@OHIOHEALTH.COM on Fri, 1 Feb 2013 16:18:20 -0500 —— To:   jcasa123@aol.com   Subject:  Internal Applicant - Preadmission Testing Nurse @ RMH (917665)   Dear Joseph Casagrande   Thank you for your recent transfer request. We appreciate the opportunity to learn about your background and experience.   Your application has been reviewed by Human Resources and sent to the hiring manager for consideration. Should the hiring manager wish to discuss the opportunity with you, he/she will contact you directly to schedule a formal interview.   Thank you again for your interest in this opportunity.   Thank You, Melissa Miller

02/27/2013    EE called                                                                            rcacioppo
        EE called, stated saw his doctor, know his release 3/1/2013, but went ahead and had doctor reconfirm that he is released to RTW.   Asking my help to complete his file about what Tim Nuss, NP had submitted. CM emailing him the NOv/Dec mx. rec'd fr Tim Nuss, NP for 11/2 begin date o fabsence and Dr. D. in Dec.   States Michasel is assisting with job search;   Acknowledged EE's email re: the FMLA and noted Nancy had replied with phone call;   Asked if resolved on FMLA—he said no; I said are you going to contact legal (meaning the OH legal dept as Nancy Miller advised)? He said he contacted DOL and DOL agreed that he was still employed as of his year date. CM advised him to call our legal and also gave him my mgrs name; Told him that our understanding is that he has to be working; we reviewed his eligibility based on his begin date of leave of absence.   -rcacioppo

02/27/2013    Recd mx- RTWFD 2/27/13                                                               mbeyder

Casagrande v. OhioHealth 001210

| | | |
|---|---|---|
| 02/25/2013 | Spoke with Joe | nmiller |

Spoke with Joe. Advised Joe that he was not eligible for FMLA on 11/2012 because he had not been employed for one year. Joe feels that he should have been made elibable on 12/6/12, when he meet his one year date. WPAS explained that since he was not eligable on the date he went out, he would then not become eligable on 1 year date. Joe feels that WPAS is not correct and will contact attorney.

| | | |
|---|---|---|
| 02/25/2013 | reply to Nancy; (she spoke to EE 2/22) | rcacioppo |

Yes, thanks again Nancy. Noted you spoke to Joe on Friday and will casenote. I will review with Chris tomorrow in way of written reply. Thank you all. :) Rose M. Cacioppo, MA, CRC Disability Case Manager Associate Health and Wellness 614-566-3747 fax 614-566-6772 OhioHealth 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908 _____ FORTUNE *100 Best Companies to Work for 2010 * ----Nancy Miller/Staff/OhioHealth wrote: ----- To: Rose M Cacioppo/Staff/OhioHealth@OhioHealth From: Nancy Miller/Staff/OhioHealth Date: 02/22/2013 10:00AM Cc: Amy S Sayers/Staff/OhioHealth@OhioHealth, Christine Moranda/Staff/OhioHealth@OhioHealth, Michael D Kramb/Staff/OhioHealth@OhioHealth, Susan Talebi/Staff/OhioHealth@OhioHealth Subject: Re: Fw: FMLA question     Good morning.    Iff I am reading his e-mail right he has the mistaken belief that he should have become eligable for FMLA on 12/5/12, as that marks his year hire date.    The law requires meeting the criteria of having COMPLETED both 1 year of service and 1250 hours, at the time the person begins their leave of absence. He did not meet the minimum eligibility criteria of : 1 year of employment. He was 30 days shy of meeting the mark. He did meet the hours worked criterion of 1250 hours, having worked 1263 hours.    Nancy Miller, CRC phone: 566-4246 pager: 229-1677 fax: 566-6772 _____ FORTUNE *100 Best Companies to Work for 2010 *

| | | |
|---|---|---|
| 02/22/2013 | PC to EE to review FMLA eligibility | nmiller |

Left vm

| | | |
|---|---|---|
| 02/21/2013 | email fr Joe frwd to mgr/HR/my boss | rcacioppo |

Casagrande v. OhioHealth 001211

-Thank you Amy. :)   Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness  614-566-3747  fax 614-566-6772  OhioHealth  3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908 _____   FORTUNE "100 Best Companies to Work for 2010 " _____ -----Amy S Sayers/Staff/OhioHealth wrote: -----   To: Rose M Cacioppo/Staff/OhioHealth  From: Amy S Sayers/Staff/OhioHealth  Date: 02/21/2013 06:06PM  Cc: Christine Moranda/Staff/OhioHealth@OhioHealth, Michael D Kramb/Staff/OhioHealth@OhioHealth, Nancy Miller/Staff/OhioHealth@OhioHealth, Susan Talebi/Staff/OhioHealth@OhioHealth  Subject: Re: Fw: FMLA question  Rose,  Here are the letters I sent. This is the letter I was supplied with to use from AH&W. The first letter (posting) was sent to Joe via Certified Mail on 11/8/12 and was claimed by Joe as I never received it back. The second letter (position filled) was sent on 12/11/12 via certified mail. It came back to me in January so I sent him a copy of the letter via regular mail. Thanks!  (See attached file: Joseph Casagrande FMLA Denial Position Posting Letter 11-8-12.doc) (See attached file: Joseph Casagrande FMLA Denial Position Filled Letter 12-11-12.doc)  Amy Sayers, RN, MSN  Nurse Manager  7 Orange  Riverside Methodist Hospital  566-4747 (office)  229-8206 (pager) _____   FORTUNE "100 Best Companies to Work for 2010 "    ----Forwarded by Rose M Cacioppo/Staff/OhioHealth on 02/21/2013 08:09AM ----   To: Amy S Sayers/Staff/OhioHealth@OhioHealth  From: Rose M Cacioppo/Staff/OhioHealth  Date: 02/21/2013 08:08AM  Cc: Susan Talebi/Staff/OhioHealth@OhioHealth, Christine Moranda/Staff/OhioHealth@OhioHealth, Michael D Kramb/Staff/OhioHealth@OhioHealth, Nancy Miller/Staff/OhioHealth@OhioHealth  Subject: Fw: FMLA question  Amy: Can you email me a copy of any correspondence that was sent to Joe? He may be talking about a the letter you sent to actually post his position dated 12/11/2013 but I do not have that on file. I am not sure. However we have letters denying him as pf 11/5 based on medical taking him off work as of 11/2.  Joe called me yesterday (2/21/2013) inquiring and I told him I'd review the policy and law and provide that information to him. This morning I received the below email with him providing the information to me.  Chris is out of the office until TUesday. I will work with her to reply.   Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness  614-566-3747  fax 614-566-6772  OhioHealth  3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908 _____   FORTUNE "100 Best Companies to Work for 2010 "  Rose M. Cacioppo, MA, CRC  Disabiliky Case Manager  Associate Health and Wellness  614-566-3747  fax 614-566-6772  OhioHealth  3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908 _____   FORTUNE "100 Best Companies to Work for 2010 "    ----Forwarded by Rose M Cacioppo/Staff/OhioHealth on 02/21/2013 08:05AM ----   To: RCACIOP2@OhioHealth.com  From: Jcasa123@aol.com  Date: 02/21/2013 12:23AM  Subject: FMLA question  Hi Rose:  I'm writing this email with regard to the telephone conversation we had Wednesday morning (2/20/2013) concerning the Family Medical Leave Act and the determination letter to me dated December 11, 2012 from my unit manager Amy Sayers indicating that I did not qualify for job protection under the provisions of FMLA and OhioHealth policies.  Upon reading the law it appears there are two tests (1. employment period and 2. hours worked) which need to be met.  First is the employment period, which is required to be at least twelve months; and the second is the hours worked requirement which is determined over a rolling calendar year and requires 1,250 of hours worked within that rolling calendar year.  Upon reading OhioHealth Human Resources Policy #704.210 as revised February 2012 it states as follows:  "Associates are eligible for Family Medical Leave if they  have been employed by OhioHealth for at least twelve (12) months and have worked a minimum of 1,250 hours during the previous twelve (12) months."  In addition, the FML Act indicates the following under Title I, Section 101 paragraph 2 "Eligible employee"  IN GENERAL.--The term "eligible employee" means an employee who has been employed  (i) for at least 12 months by the employer with respect to whom leave is requested under section 102; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.  Based on the above I believe the letter referenced above dated December 11, 2012 indicating that I did not meet the FMLA eligibility requirements was an incorrect determination, and in fact, I had met both the employment and hours worked requirements under both the FML Act and OhioHealth policy due to the following reasons:  1:  My employment start date was December 5, 2011. Therefore, based on the definition of employment, my 12 months of "employment" had been satisfied as of December 5, 2012. According to your letter to me dated February 1, 2013 indicating that my original termination date would have been February 24, 2013, the end of my temporary disability period (subsequently extended to April 20, 2013 per your email to me on February 15) as of December 5, 2012 I should have still been considered an employee of OhioHealth, as so defined, and therefore I was an employee of OhioHealth for at least 12 months as of my 12 month anniversary date, meeting requirement number 1.  2. As of the effective date of my temporary disability period (my disability pay began on November 9, 2012) although this date is before my 12 month anniversary of December 5, 2012 I had accumulated more that the required 1,250 hours worked in the rolling twelve month period. My total hours worked since December 5, 2011 to the beginning of my temporary disability period and also as of December 5, 2012 (the rolling 12 month period) amounted to 1,345.50 hours which exceeds the minimum required, meeting requirement number 2.  Therefore, it is my belief that I fulfilled both the employment and hours requirement for FMLA and I indeed qualified for job protection, and other protections under the provisions of OhioHealth company policy and also under the FMLA. Also, I believe that it was incorrectly determined by OhioHealth that I did not qualify, and therefore received an incorrect notice of determination from OhioHealth which I relied upon at the time. I therefore request that this determination be re-examined and re-determined as my being qualified for FMLA protection as of the date of qualification.  Also for my information purposes please inform me specifically how it was determined that I did not qualify for FMLA coverage and protection according to the OhioHealth letter to me dated December 11, 2012 as indicated above.

Casagrande v. OhioHealth 001212

Thank you. Sincerely, Joseph Casagrande BSN, RN 614-581-8001

| 02/20/2013 | PC to HR recruiter x5829 | nmiller |

PC to recruiter, Rebbeca Reynolds. She stated that the manager has several applicants. She will check with the manager and will get back with WPAS.

| 02/20/2013 | email to Nancy & Mike Kramb | rcacioppo |

(Called back Joe and advised it could be another 2 weeks; Joe said he got the impression fr interviewer that he would be hearing from themw ithin 1 week-EE to email Nancy & Mike update on other jobs he applied to, also will inquire about the contingent position that was also being posted in that practice)/rc No problem. Rose M. Cacioppo, MA, CRC Disability Case Manager Associate Health and Wellness 614-566-3747 fax 614-566-6772 OhioHealth 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908 _____ FORTUNE "100 Best Companies to Work for 2010" ———Nancy Miller/Staff/OhioHealth wrote: ——— To: Rose M Cacioppo/Staff/OhioHealth From: Nancy Miller/Staff/OhioHealth Date: 02/20/2013 11:24AM Subject: Re: Joe Casagrande If you could please :) Nancy Miller, CRC phone: 566-4246 pager: 229-1677 fax: 566-6772 _____ FORTUNE "100 Best Companies to Work for 2010" Thanks Nancy! (Will you ulet Joe know or do you want me to call him?) Rose M. Cacioppo, MA, CRC Disability Case Manager Associate Health and Wellness 614-566-3747 fax 614-566-6772 OhioHealth 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908 _____ FORTUNE "100 Best Companies to Work for 2010" ———Nancy Miller/Staff/OhioHealth wrote: ——— To: Rose M Cacioppo/Staff/OhioHealth@OhioHealth From: Nancy Miller/Staff/OhioHealth Date: 02/20/2013 10:29AM Subject: Re: Joe Casagrande I contacted the a recruiter and she will be checking with the manager to determine the outcome. The manager interviewed several internal transfers and it may take her out to an additional two weeks to make a decision. Nancy Miller, CRC phone: 566-4246 pager: 229-1677 fax: 566-6772 _____ FORTUNE "100 Best Companies to Work for 2010" To: Rose M Cacioppo/Staff/OhioHealth@OhioHealth From: Michael D Kramb/Staff/OhioHealth Date: 02/20/2013 10:38AM Cc: Nancy Miller/Staff/OhioHealth@OhioHealth Subject: Re: Joe Casagrande Thanks for the update Rose! _____ Michael D. Kramb Associate Relations Coordinator OhioHealth Human Resources 550 Thomas Lane | Columbus, OH 43214 Office (614) 566-4309 | Fax (614) 566-6953 mkramb2@ohiohealth.com I just touched base with JOe. Heads up: Nancy/Mike: He has not heard back from Grant plastic surgery office (he is post-interview)--so I advised him to give you a call Nancy to see if you can find out anything. Mike--He will also send out an email re: other positions he applied to if you can help get his app in front of employment specialist. Thanks! Nancy if you have any feedback on positions he applies for, he will appreciate...he will copy you on this email. Thanks. Rose M. Cacioppo, MA, CRC Disability Case Manager Associate Health and Wellness 614-566-3747 fax 614-566-6772 OhioHealth 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908 _____ FORTUNE "100 Best Companies to Work for 2010"

| 02/20/2013 | spoke to EE | rcacioppo |

-a little disappointed; have not heard from the plastic surgery center...; CM advised himto leave vm with Nancy and see if she can get any info. Advised him to keep her in loop of other jobs. -EE main reasonto call -he rec'd FMLA denial let and was looking it over; wanted to understand why he was denied; CM explained the need to have worked 1 year as well as have 1250hrs in rolling calendar year from day he went off. EE asked for policy; Cm will send along with FMLA law. -rcacioppo

| 02/15/2013 | email reply to Joe; ext. approved | rcacioppo |

Thank you Joe. Your request has been approved and we have extended your TERM date through 4/20/2013 (approx. 8 weeks). We have your release for RTW at full duty for 3/1/2013. I do not need anything at time time. I hope this time gives you some breathing room as you conduct your job search. Please continue to use Nancy as a resource. Have a good weekend. Regards, Rose M. Cacioppo, MA, CRC Disability Case Manager Associate Health and Wellness 614-566-3747 fax 614-566-6772 OhioHealth 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908 _____ FORTUNE "100 Best Companies to Work for 2010" ———Jcasa123@aol.com wrote: ——— To: rcaciop2@ohiohealth.com From: Jcasa123@aol.com Date: 02/15/2013 03:47PM Subject: Extension Hi Rose: With regard and in response to your certified letter dated February 1, 2013 concerning my current leave of absence, and to verify our telephone conversation of February 14 regarding the same; I would like to request extended leave from OhioHealth as I wish to remain employed by OhioHealth despite the possibility I will not be able to return to work at the conclusion of my leave period. Let me know if there is anything else I need to indicate or provide to you and OhioHealth with regard to this particular issue. Thank you, Joseph Casagrande BSN, RN 614-581-8001

| 02/15/2013 | New term date 4/20/13 task mgr set | mheyder |

| 02/15/2013 | Sent term ext. ltr per CM | mheyder |

| 02/15/2013 | HR, WPAS agree to TERM EXT | rcacioppo |

Casagrande v. OhioHealth 001213

Thank you Susie and Nancy. Marsha: I've edited the TERM extension confirmation letter in Prognos; can you please send out? Thank you. Rose M. Cacioppo, MA, CRC Disability Case Manager Associate Health and Wellness 614-566-3747 fax 614-566-6772 OhioHealth 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908 _____ FORTUNE "100 Best Companies to Work for 2010 " ----Forwarded by Rose M Cacioppo/Staff/OhioHealth on 02/15/2013 01:01PM ---- To: Rose M Cacioppo/Staff/OhioHealth From: Susan Talebi/Staff/OhioHealth Date: 02/15/2013 11:56AM Cc: Christine Moranda/Staff/OhioHealth, Nancy Miller/Staff/OhioHealth, Michael D Kramb/Staff/OhioHealth, Diane M Heyder/Staff/OhioHealth Subject: RE: Review for TERM extension re: Joseph Casagrande (z) #77893 I approve this. Sent with Good (www.good.com) FORTUNE "100 Best Companies to Work for 2010 " ----Nancy Miller/Staff/OhioHealth wrote:---- To: Rose M Cacioppo/Staff/OhioHealth@OhioHealth From: Nancy Miller/Staff/OhioHealth Date: 02/15/2013 12:46PM Cc: Christine Moranda/Staff/OhioHealth@OhioHealth, Diane M Heyder/Staff/OhioHealth@OhioHealth, Michael D Kramb/Staff/OhioHealth@OhioHealth, Susan Talebi/Staff/OhioHealth@OhioHealth Subject: Re: Review for TERM extension re: Joseph Casagrande (z) #77893 I agree with the extension Nancy Miller, CRC phone: 566-4246 pager: 229-1677 fax: 566-6772 _____ FORTUNE "100 Best Companies to Work for 2010 "

| | | |
|---|---|---|
| 02/15/2013 | Email to HR-review extension of TERM | rcacioppo |

HI Susie: Associate Health would like to consult with you for extension of term date: re: Joseph Casagrande #77893hire date: 12/5/2011 PAF 24hrs (per week) Manager: Amy Sayers LTD status: Pending Actual TERM date: 2/24/2013 The above named associate has requested: __x__extension of their leave of absence as a reasonable accommodation until 4/20/2013 _____seeking a reasonable accommodation upon their RTW (job placement will be necessary as their position is not available as FML exhausted. Review and Recommendations: Associate has been off work continuously since 11/2 released by his doctor to RTWFD as of 3/1/2013; He been talking regularly with Case Manager, Human Resources and is consulting with WPAS as he proceeds with job search; he is awaiting outcome of Mon. 2/11/2013 interview ata Grant practice (plastic surgery clinic?)-- _____approve _____do not approve Rose M. Cacioppo, MA, CRC Disability Case Manager Associate Health and Wellness 614-566-3747 fax 614-566-6772 OhioHealth 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908 _____ FORTUNE "100 Best Companies to Work for 2010 "

| | | |
|---|---|---|
| 02/14/2013 | spoke to EE | rcacioppo |

-thinks interview went well-had phone interview on 2/7 and in person interview on 2/11--with plastic surgeon's office/Grant. will send follow up thank you. -his dr. filled out pw for CIGNA with RTW for CIGNA Mar. 1st; CIGNA sent him let req. additional info. -preference is to stay for OhioHealth; we talked about extension request of TERM since TER Mis 2/24/2013; Dr confirmed okay to release -had meeting with EAP/RIck--went really well; return as needed. askedif should still keep Mike in loop; Nancy said no since he works in special situation; CM advised that if he doesn't hear back on application to call nancy and get her advice. CM would think they could make a call in; CM will update Nancy on what I advised. -rcacioppo

| | | |
|---|---|---|
| 02/12/2013 | Certified Mail Receipt revd | mheyder |

| | | |
|---|---|---|
| 02/12/2013 | Per CM- term to be extended-will let DCA know | mheyder |

Per CM-Rose C- term to be extended-will let DCA know

| | | |
|---|---|---|
| 02/11/2013 | spoke to Nancy, WPAS | rcacioppo |

Called WPAS to let her know I gave heads up to JOe that we sent TERM let and that I'm anticipating ho will ask for extension of term as accommodation thru 3/1 and to assist in job search; CM will consider sending request to committee for additional 8 weeks beyond term date of 2/24/2013 (--4/20/2013). WPAS reminded CM that EE has interview this week and so will see if that pans out for Joe. -rcacioppo

| | | |
|---|---|---|
| 02/08/2013 | Spoke with Joe | nmiller |

Spoke with Joe. He rcvd a call from Plastics Clinic @ GMC. He had a telephone interview on Thursday and feels that it went well. He stated, to them, that he is seeking a transfer from pm hospital shifts to day Mon-Friday. WPAS asked what role the EE expected WPAS perform. EE again explained job trial, but the EE stated he had no perm restrictions and is not interested in WPAS assistance w/job trial

| | | |
|---|---|---|
| 02/08/2013 | spoke to Nancy, spoke to Joe | rcacioppo |

Joe & Nancy talked; Nancywill assist informally giving him input on jobs he has questions about before he applie. He will apply normally and give heads up to Michael; He has interview at Grant Plastic Surgery; Met with Dr. D-- has completed the paperwork and faxed in to CIGNA. Will leave the ERTWFD of 3/1/2013. has follow up meeting with Rick on 12/13/2013. intends to call psychiatrist referrals Rick provided via this case manager,,,, -rcacioppo

| | | |
|---|---|---|
| 02/07/2013 | vm/email fr Joe-CM reply | rcacioppo |

Casagrande v. OhioHealth 001214

Great and just picked up your voicemail. I do hope your meeting goes well with Dr. DiPietra. Let's catch up tomorrow when you call in for Nancy-I will be on the call--she knows. :)   Rose M. Cacioppo, MA, CRC Disability Case Manager  Associate Health and Wellness  614-566-3747  fax 614-566-6772  OhioHealth  3545 Olentany River Road  Suite 425  Columbus, OH 43214-3908
                                                FORTUNE *100 Best Companies to Work for 2010 *
------jcasa123 <jcasal23@aol.com> wrote: ——  To: "RCACIOP2@OhioHealth.com"
<RCACIOP2@OhioHealth.com> From: jcasa123 <jcasal23@aol.com> Date: 02/07/2013 11:16AM  Subject: Re:
psychiatrist referrals  Thanks Rose (and Rick) after I meet with Dr D. today I will call them.    Sent from my
iPhone

02/06/2013    email to Joe re: psychiatrist referrals.                                        rcacioppo
Rick gave me the names of the following of who he hears the most of in terms of taking new patients (and having
our insurance):  Dr. Shehata (451-8400) at Upper Arlington Behavioral Health on Henderson Road.  Dr. Lowe at
Providers for Healthy Living (664-3595) in Dublin.  Let us know if these options fall through.   Rose M.
Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness  614-566-3747  fax 614-566-6772
OhioHealth  3545 Olentany River Road  Suite 425  Columbus, OH 43214-3908
                                                FORTUNE *100 Best Companies to Work for 2010 *
                    _____

02/06/2013    email fr Rick/EAP                                                              rcacioppo
Thank you Rick!!   Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness
614-566-3747  fax 614-566-6772  OhioHealth  3545 Olentany River Road  Suite 425  Columbus, OH 43214-3908
                                                FORTUNE *100 Best Companies to Work for 2010 *
------Derrick R Gehlbach/Staff/OhioHealth wrote: ——  To: Rose M Cacioppo/Staff/OhioHealth@OhioHealth
From: Derrick R Gehlbach/Staff/OhioHealth Date: 02/06/2013 08:20AM  Subject: psychiatrists for client  Hi
Rose. I appreciate all the work that you are doing for this case. Right now, the name that I hear the most in terms of
taking new patients (and having our insurance) is Dr. Shehata (451-8400) at Upper Arlington Behavioral Health on
Henderson Road. Also, Dr. Lowe at Providers for Healthy Living (664-3595) in Dublin is another resource that we
have been sending people to. Let me know if these options fall through. Thanks! Rick
                                                FORTUNE *100 Best Companies to Work for 2010 *
                    _____

02/06/2013    email reply fr Mike                                                           rcacioppo
Thanks again Mike. BTW, Nancy spoke with him yesterday at length on 2/5 and a second phone call is set for
Friday 2/8 at 11am between him and Nancy.    Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate
Health and Wellness  614-566-3747  fax 614-566-6772  OhioHealth  3545 Olentany River Road  Suite 425
Columbus, OH 43214-3908                                                FORTUNE *100 Best
Companies to Work for 2010 *   ——Michael D Kramb/Staff/OhioHealth wrote: ——  To: Rose M
Cacioppo/Staff/OhioHealth@OhioHealth From: Michael D Kramb/Staff/OhioHealth@OhioHealth Date: 02/06/2013 08:23AM
Cc: Nancy Miller/Staff/OhioHealth@OhioHealth, Susan Talebi/Staff/OhioHealth@OhioHealth  Subject: Re: Joe
Casagrande  I have emailed the recruiters for the positions Joe has applied to. They informed me that they have
forwarded his resume on to the hiring managers.  Thanks, MK
                                        Michael D. Kramb  Associate Relations Coordinator
OhioHealth  Human Resources  550 Thomas Lane | Columbus, OH 43214  Office (614) 566-4309 | Fax (614)
566-6953  mkramb2@ohiohealth.com  FORTUNE *100 Best Companies to Work for 2010 *   Rose M
Cacioppo—02/05/2013 02:10:48 PM—Nancy: Can you give me an initial appt time for him? Michael: Any updates
on jobs he has applie  From: Rose M Cacioppo/Staff/OhioHealth  To: Nancy
Miller/Staff/OhioHealth@OhioHealth, Michael D Kramb/Staff/OhioHealth@OhioHealth  Cc: Susan
Talebi/Staff/OhioHealth@OhioHealth Date: 02/05/2013 02:10 PM  Subject: Joe Casagrande     Nancy: Can you
give me an initial appt time for him?   Michael: Any updates on jobs he has applied for?   I talked to Joe
today-he's very anxious as his TDP runs out on ~2/12/2013. I am trying to let him know that this process will take
time and that he should try to apply for unemployment as well as continue to put in for jobs via the normal
application process. He said he has applied for food stamps. I told him that we will get back to him as soon as we
can and that we are trying to help a number of people at this time who have been displaced. Thank you.
Regards,   Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness
614-566-3747  fax 614-566-6772  OhioHealth  3545 Olentany River Road  Suite 425  Columbus, OH 43214-3908

02/06/2013    EE called                                                                      rcacioppo

Casagrande v. OhioHealth 001215

EE called; states doing okay but left that phone call with Nancy Miller not really happy; probably shouldn't have really taken the call bec. not i nbest environment at time...was at gym; he felt that Nancy did not know him; states 'feels like I'm in catch-22 bec. u can't help me with a workplace accommodation bec. not sure what it is and he hasn't been able to get anything from his doc'. She did ask what he thought he was going to need; he tells me that 1) he thinks he shouldn't take a night shift position; he thinks he should start off at 8s then progress to 12s possibly he would like Nancy's help giving him feedback on jobs he does see bec. the JDs are so general that he's not sure or not if it may be good fit.  What bothered him about call was that he felt like he was being strongly talked into doing , job trial; felt insulted by that; as has 2 bachelor's degrees; CM suggested he get more information about what the job trial is but told him he is not obligated to partake.  EE points out with some validity, that whe we all met with his sister, him, Jean, Mike Kramb and myself, we agreed that HR/Nancy would help him find out what these jobs entail; since then he has difficult time getting that info; CM suggested I join in meeting with Nancy on Friday and try to clear the air.   Phone meeting 11am 2/8 set with WPAS. -rcacioppo

02/05/2013     Allison, Dr.DiPietra 552-5108                                          rcacioppo

spoke to Allison; had note on my desk that looked like she had called but not sure when so I returned call; she wasn't sure if she had called or if Dr. DiPietra had called so she will talke to Dr. D and have hmi call me; Cm asked if he could call tmw as I will be leaving office shortly. -rcacioppo

02/05/2013     Nancy WPAS spoke to Joe C.                                          rcacioppo

WPAS spoke for 65min with Joe C; she will casenote. Advised EE and asked pointed questions re: his needs-EE had certain parameters which she encouraged him to open; EE to review and they are to talk again on Friday 2/8/2013. WPAS to follow up with mgrs re: certain jobs that Joe put in for. -rcacioppo

02/05/2013     email to Nancy & Michael cc: Susie                                   rcacioppo

Nancy: Can you give me an initial appt time for him?  Michael: Any updates on jobs he has applied for?  I talked to Joe today-he's very anxious as his TDP runs out on ~2/12/2013. I am trying to let him know that this process will take time and that he should try to apply for unemployment as well as continue to put in for jobs via the normal application process. He said he has applied for food stamps. I told him that we will get back to him as soon as we can and that we are trying to help a number of people at this time who have been displaced. Thank you.  Regards, Rose M. Cacioppo, MA, CRC Disability Case Manager  Associate Health and Wellness 614-566-3747 fax 614-566-6772  OhioHealth  3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908
                                                                FORTUNE "100 Best Companies to Work for 2010 "

02/05/2013     emailed Joe let for ODJFS                                           rcacioppo

put in Prognos—see prognos form lets. "let for ODJFS" -rcacioppo

02/05/2013     spoke to EE                                                        rcacioppo

EE called as frustrated as not being able to get response fr Allison/Dr. DiPietra. Sent an email last week; and dropped by; Last saw Dr. DiPietra on 1/18/2013. Cm suggested he just make a new appointment.  EE sounded very anxious-hasn't heard anything fr MD, Susie Talebi, or NancyMiller-left 2 msgs.   Did hear fr Michael; but on phone, stairse Michael seems anxious to get off as has somewhere to go,.  Advised him that I mailed it. -rcacioppo

02/01/2013     Mailed let for ODJFS to Joe                                        rcacioppo

February 1, 2013  To Whom It May Concern:  Re: Joseph Casagrande DOB: 03/19/1956  Joseph Casagrande began using temporary disability pay, a pay benefit from his employer OhioHealth Corp/Riverside Methodist Hospital,  on 7/18/2012. He was paid TDP during his medical leaves of absence. TDP benefit lasts equivalent of up to 17 weeks (411.43 hours) in rolling calendar year. His TDP will be used up/expires on ~2/12/2013.   Please let me know if I can provide any other information.   Regards,      Rose Cacioppo, MA, CRC, CDMS  Disability/Return-To-Work Case Manager  OHIOHEALTH INC.  Associate Health & Wellness Department  3545 Olentangy River Road  Columbus, OH  43214  Tel 614-566-3747  Fax 614-533-0039

02/01/2013     FAxed CIGNA LTD employer side info

DATE:  2/1/2013   SUBJECT:   Joe Casagrando incident/        TO: CIGNA/ Erin McNeill         FAX #:   1-412-402-3518         FROM:   Rose M. Cacioppo, MA,CRC, CDMS Case Manager, Return-To-Work Programs/Disability Services, Associate Health & Wellness 614-566-3747 tel
         NO. OF PAGES INCLUDING COVER:    65          Erin:   Please find employer side information new LTD claim with medical.  Let me know if you need more pay information etc. Thank you.  RC

02/01/2013     Term PAF task mgr set                                             mheyder

02/01/2013     Term date 2/24/13 ltr sent                                        mheyder

Casagrande v. OhioHealth 001216

Sent to mgr, CM, Margery and Susan Talebei RE: Joseph Casagrande Clock Number: 77893 LTD Status: Unknown Estimated TERM DATE: 02/24/2013 (may change due to interactive process) Associate Health Disability Management will: Send associate end of 6 month Leave of Absence letter - via certified and regular U.S. Mail Copy of end of 6 month Leave of Absence letter attached to this email Following interactive dialogue (receipt of accommodation request)- Submit termination PAF - T09 (Did not return from LOA) If a leave extension is required following interactive process, AHW case manager will inform HRIS; benefits; manager; associate relations rep If associate returns to work before TERM date: AHW (disability case manager / vocational specialist) are to send email to HRIS indicating RTW (return to work) so PAF can be cancelled Copy to manager, benefits and associate relations rep MANAGER Print end of 6 month Leave of Absence letter for associates' file Contact associate relations rep for HR questions Note the associate will remain on your roster until the termination is completed. Contact Associate Health and Wellness disability line at 614-566-4100 or 740-615-4100 if you have any questions Attachment: Associate - Six Month LOA Letter

| | | |
|---|---|---|
| 02/01/2013 | TDP end date 2/4/13 | mheyder |

01/31/2013     PC w/Joe post Rick's call/reviewed TERM            rcacioppo

-advised him of the 2 paths--re: 1) LTD 2) RTW with medical formally requesting 3) RTW with preference for different position -Rick might have been under impression that I'm waiting and that's not true; he said he has been following up with HR. CM agrees. CM wil lmake sure Michael knows we are okay with proceeding with job search based on low acuity positions. -wil lbe speaking to Dr. DiPietra -advised Joe of TERM date process; told him that since we are anticipating he may not have a position to return to by his release date of 3/1, I've asked our office to advise of estimated TERM date as that date will be our goal to get him employed by; said usu. it's about 60 days after TDP ends date as TDP ends when he's been off approx. 120 days but it may not be exactly as EE had other LOA periods during 2012 which will count towards the 180days off. If not re-employed by that estimated TERM date, we can look at if appropriate to extend--there is a process to request accommodation of extension which he needs to read when he gets letter fr us; since he's in an active job search, I would be able to put in a request but let's see where he's at towards end of month. EE to 0up with Michael and nancy for assistance with job search. -rcacioppo -called EE back at end of day on 1/31/2013; advised him that his actual TERM is 2/24 so we will send letter but then to call me to discuss for possible extension. -rcacioppo

01/31/2013     left vm for EE at 1:32p            rcacioppo

spoke to EE earlier but got off phone when Rick called so calling EE back to continue our conversation. CM asked DCA to look at TERM date estimate. -rcacioppo

01/31/2013     email to DCA re: TERM date            rcacioppo

Marsha: What would be his TERM date if he was to stay off?    Rose M. Cacioppo, MA, CRC Disability Case Manager Associate Health and Wellness 614-566-3747 fax 614-566-6772 OhioHealth 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908
FORTUNE "100 Best Companies to Work for 2010 "

01/31/2013     spoke to Rick/EAP            rcacioppo

Originally seen by Rick in July--due orig. to neck issues and having meds; Rick gave me some history; proceeded to miss 4/5 sessions out of 3 mos; aware that he had substance issues; as of yesterday Joe filled him in on the fact that he had a substance abuse issue. EE said he's been doing okay; will see him on 2/13/2013; and continue to see him; advised EE to besuper aggressive--apply to jobs; follow up w/Nancy; also told him to apply outside the system as well; advised him to even network with his former mgr (Amy Sayeres); Doesnt' feel comfortable ethically to fill out pw for LTD and will defer to PCP-Dr. DiPietra; CM said that this is good and asked for Rick's help in continuing to see EE for support and to help him connect with more regular provider when appropriate as mentioned EE's issues getting into see someone. -rcacioppo

01/31/2013     PC fr Joe C.            rcacioppo

-got my message--will make sure Allison gets my fax with questionnaire; -left vm for Nancy M. on 1/30/2013 afternoon -applied for 3 positions on line--not the ones he gave to Michael--he will advise Michael

01/31/2013     PC fr Joe C. 1/30/12            rcacioppo

Joe called again in afternoon 1/30 to advise Dr. D's fax no. 552-5122 attn: Allison if I fax-he said he also will stop by their office. CM already faxed an 8pg fax of the behavioural health questionnaire to that no to Dr. D's attn. Left Joe a msg on 1/31/2013 8:32am--that I faxed above; that Nancy M. has his resume and to should call her and let her know his availability to meet; and to follow up with Michael as Michael is going to touch base with the recruiters on positions he was interested in. -rcacioppo

01/31/2013     Ret PC to Rick/EAP            rcacioppo

Rick G. EAP counselor left vm that JOe saw him on 1/30/13 and is telling him that he feels things have 'stalled'. CM just spoke to EE that morning and advised him to call Nancy Miller to get on her calendar; will also report that Michael is talking t orecruiters re: positions he applied for. -rcacioppo

01/30/2013     reply fr Michael

Casagrande v. OhioHealth 001217

Thank you Michael--if you can email Nancy a list of the positions (just the job title and ref# if avail) he showed interest in (I'm not sure I recorded them), that would be great. Nancy may be able to add input re: what she thinks of those positions in relation to acuity etc and then in relation to any other concerns that Joe expresses when he meets with her. He is following up with his doc and seeing EAP today for follow up care.  Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness  614-566-3747  fax 614-566-6772  OhioHealth 3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908

----------Forwarded by Rose M Cacioppo/Staff/OhioHealth
on 01/30/2013 10:24AM ------  To: Rose M Cacioppo/Staff/OhioHealth@OhioHealth  From: Michael D Kramb/Staff/OhioHealth Date: 01/30/2013 10:19AM Cc: Nancy Miller/Staff/OhioHealth@OhioHealth  Subject: Re: Joe Casagrande   Rose,  Thank you for the update. I will look at the positions he applied for today and speak with the recruiters for those positions.   Thanks, MK
Michael D. Kramb  Associate Relations Coordinator  OhioHealth Human Resources  550 Thomas Lane | Columbus, OH 43214  Office (614) 566-4309 | Fax (614) 566-6953  mkramb2@ohiohealth.com

| 01/30/2013 | email to Nancy cc: Michael Kramb | | rcacioppo |

Nancy:  Joe has been released as of 2/1/2013 to RTW but his position in Amy's area has been posted and associate agrees he needs to apply for nursing jobs with less acuity; he's okay to return to bedside and Amy told him and HR that she would support reference in positions in nursing wit hless acuity; Joe is excellent with patients, we understand. He is an experienced worker but relatively new to nursing profession. His resume is filed in Prognos. I've told him to call you as he has passed some ref# to Michael in HR but has not yet applied as eager to find out more about each position and if appropriate fit . We thought it would be helpful if you got involved.   Michael: I did tell him to go ahead and apply for up to 3 positions he thought would be a good fit to get ball rolling again. Hope that is okay.  Regards,  Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness  614-566-3747  fax 614-566-6772  OhioHealth 3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908  _____  FORTUNE "100 Best Companies to Work for 2010"

| 01/30/2013 | Re-fax & Mailed to Dr. DiPietra/spoke to EE | | rcacioppo |

Just realized fax to Dr. DiPietra didn't go through so refaxed and mailed it; informed JOe. Joe told me he sent an email last week and will be following up with him again.  EE is set to go to EAP at 11:30am  EE feeling really frustrated because was told to hold off in applying--Michael Kramb has the jobs he has applied for; CM told him to go ahead and apply for 3 jobs; EE feels Dr. will support him; also told him to go ahead and call Nancy and set up time to consult re: positions.  -rcacioppo

| 01/25/2013 | fax to Dr. DiPietra | | rcacioppo |

DATE: 1/25/2013     SUBJECT:   Joe Casagrande DOB: 3/19/56    TO: Dr. John DiPietra     FAX #:   864-0306 tel:  614-864-6010    FROM:  Rose M. Cacioppo, MA,CRC, CDMS Case Manager, Riverside Hospital - Return-To-Work Programs/Disability Services, Associate Health & Wellness 614-566-3747 tel       NO. OF PAGES INCLUDING COVER: 7        Dear Dr..
DiPietra:  Joe is reaching the end of his employer-provided benefit of short-term disability pay in February and in order to allow him to continue getting some income if he remains off work, we advised him to put in claim for long-term disability pay (LTD) through CIGNA since he had elected this benefit. His intention is to return to work but he states he is requesting an accommodation of assistance in finding position that would allow him to do nursing but on units with less acuity.  He said that you support the fact that he is disabled from his current position of an RN on the Med/Surg Telemetry floor. Joe could be eligible for some pay benefit if he is deemed unable to work in his current position     1) I understand CIGNA sent you the attached behavioral health questionnaire. Since you are the doctor that is writing him of work due to mental health reasons and a provider of many years in Joe's care, I believe it will assist Joe's claim if CIGNA had some sort of detailed statement/commentary from you regarding Joe's ability to return-to-work and his symptoms. Erin, the claims representative at CIGNA, advised me that you do not need to fill in any of the the Axis I-V diagnosis codes specifically but to fill out the form to best of your knowledge of the patient in regards to Return to work and his symptoms.  Also in addition to your statements, if you have any prior office visit notes, hospital/discharge records; report from Shepherd Hill this will help substantiate a long-term disability claim. (And our hope is Joe will only need this benefit a short while once he finds a position that is a better fit for his medical needs). I've re-attached the Behavioral Health Questionnaire that should be returned to CIGNA directly at fax 855-805-9610.   2) On the job end, we are trying to assist Joe while he 's off work apply for other positions that we think you would release him to in terms of lower acuity positions. If you could provide a note to us, his employer, on your recommendations: le confirm he is unable to return to his current positions but may do  RN duties but recommend setting with low-acuity of patient care, etc.---anything else you would recommend to help us identify positions in terms of functional abilities or inabilities---, and an okay to refer to Workplace Accommodation Specialist for assistance with job search. Our Fax is 533-0039.    If you would like to discuss please feel free to call me. Thank you once again!  Sincerely,  Rose M. Cacioppo

| 01/25/2013 | spoke to Michael | | rcacioppo |

Advised Michael that I spoke to Joe and advised him that if he thought that something was a good fit based on lower acuity or lower stressed RN jobs that to advise Joe to put in; Joe is going to talk to his doc but it appers they will recommend jobs with less acuity.  Cm to refer WPAS.  -rcacioppo

| 01/25/2013 | spoke to Joe-re: Beh form fr CIGNA | | rcacioppo |

Casagrande v. OhioHealth 001218

--advised Joe that Erin said that Dr. doesn't have to fill out Axis I-IV info; just anything re: a statement re: RTW and symptoms. CM to fax/call DR. D. -Michael--can't move forward before knowing what any limitations are for; I thought what we decided; CM to talk to him as wants Joe to get some apps in due to TDP end; -feels like stuck in a mud pit; going back to my sister's all that time it helped me; didn't feel need IOP; but does want to get started in some counseling; set to see Rick next week; -rcacioppo

| 01/23/2013 | PC to Erin/CIGNA-LTD | | rcacioppo |

I do not have the Employer sided information. Thanks so much!! Policy Number: Policy Holder: Underwriting Company: Erin M Claim Manager Long Term Disability Cigna Group Insurance PO BOX 22325 Pittsburgh, PA 15222-0325 1-800-238-2125 x3164 Fax: 855-805-9610 Confidential, unpublished property of Cigna. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2013 Cigna. From: RCACIOP2@OhioHealth.com [mailto:RCACIOP2@OhioHealth.com] Sent: Wednesday, January 23, 2013 3:04 PM To: McNeill, Erin L 250 Subject: Joe Casagrande incident no 28506773 Erin: Do you have employer side info for Joe? I can't recall receiving it and I know he has applied. I don't think I sent but I just wanted to make sure! Thanks :) Also have a question and left you a vm. Rose M. Cacioppo, MA, CRC Disability Case Manager Associate Health and Wellness 614-566-3747 fax 614-566-6772 OhioHealth 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908
_____ FORTUNE "100 Best Companies to Work for 2010 "
_____ CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright (c) 2013 Cigna Erin: Do you have employer side info for Joe? I can't recall receiving it and I know he has applied. I don't think I sent but I just wanted to make sure! Thanks :) Also have a question and left you a vm. Rose M. Cacioppo, MA, CRC Disability Case Manager Associate Health and Wellness 614-566-3747 fax 614-566-6772 OhioHealth 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908

| 01/23/2013 | Met with EE | | rcacioppo |

Joe at Riverside helping friend who is having TKR; saw Dr. DiPeitra and Dr. DiPeitra says he supports his disability however doesn't feel qualified to fill out a mental health status exam to the detail that CIGNA presents. Joe gave me permission to contact Dr. DiPietra as CM believes some letter indicating Dr's history with patient will be helpful even if he doesn't put Axis I info etc.

| 01/18/2013 | PAF change- off work 11/2/12 | | mheyder |

Thank you for submitting PAF changes for Casagrande,Joseph, Emplid 77893. Your transaction has been received by the HRIS department for processing. Most transactions will be processed within the pay period of the effective date. Terminations and pay increases with an effective date in the middle of a pay period will be processed the following pay period.

| 01/16/2013 | email to Nancy, WPAS, & Susie | | rcacioppo |

Nancy: Can you attend meeting with Joe Casagrande and myself along with case manager Jean, case manager from OhioHealth Group who is assisting on this Friday at 12:30p--not sure if I actually had you put on calendar or not. Susie: Joe has been on medical LOA and is ready to apply for other positions he may be more suited for then his position that Amy Sayers just filled on his floor. Would you want to meet and greet him on Friday at 12:30p--he will be in my office and he has some general questions re: applications such as how he should answer the question if has he been off work more than such and such # of days? I think he left you a vm this afternoon as well about it. He saw 5 positions that he's interested in applying for. He may or may not have any medical restrictions upon his release to RTW. Currently written off work thru 3/1 but his TDP runs out mid-Feb and he's okay to apply/interview. If he has no restrictions I will advise him to work directly with you. I know the idea was to find a better fit for this relatively newly trained nurse. Regards, Thanks, Rose M. Cacioppo, MA, CRC Disability Case Manager Associate Health and Wellness 614-566-3747 fax 614-566-6772 OhioHealth 3545 Olentangy River Road Suite 425 Columbus, OH 43214-3908 _____
FORTUNE "100 Best Companies to Work for 2010 "

| 01/16/2013 | spoke to Joe C. | | rcacioppo |

Applied for 5 positions for Ohiohealth--internal things--have you missed more than a certain # of days; should he call Susie? He said he left a vm this afternoon; saved the positions, didn't finish applying. -rcacioppo

| 01/16/2013 | email reply to Amy-position filled | | rcacioppo |

Casagrande v. OhioHealth 001219

Yes I will notify him. Thanks Amy. You can send regular mail if you wish as well.   Rose M. Cacioppo, MA, CRC Disability Case Manager  Associate Health and Wellness  614-566-3747 fax 614-566-6772  OhioHealth  3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908 _____ FORTUNE "100 Best Companies to Work for 2010 "  ——— Amy S Sayers/Staff/OhioHealth wrote: ——  To: Rose M Cacioppo/Staff/OhioHealth@OhioHealth  From: Amy S Sayers/Staff/OhioHealth  Date: 01/16/2013 12:14PM  Subject: Joseph Casagrande   Hi Rose,  I can't remember if you were handling Joseph's case. His certified letter was returned to with the stamp unclaimed about his job being filled here on 7 Orange. Can you notify him that his position here on 7 Orange has been filled? Thank you!  Amy Sayers, RN, MSN  Nurse Manager  7 Orange  Riverside Methodist Hospital  566-4747 (office)  229-8206 (pager) _____ FORTUNE "100 Best Companies to Work for 2010 "

| | | |
|---|---|---|
| 01/10/2013 | CM to reschedule 1/11 voc appt. | rcacioppo |
| | CM to reschedule 1/11 to 1/18 | |
| 01/08/2013 | email fr Jean/left vm | rcacioppo |

left vm to confirm 12:30pm time._____   Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness  614-566-3747 fax 614-566-6772  OhioHealth  3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908 _____ FORTUNE "100 Best Companies to Work for 2010 "  ——— Forwarded by Rose M Cacioppo/Staff/OhioHealth on 01/08/2013 01:33PM ——  To: "RCACIOP2@OhioHealth.com" <RCACIOP2@OhioHealth.com>  From: "Lefebvre, Jean" <jlefebvre@ohiohealthgroup.com>  Date: 01/07/2013 12:22PM  Subject: RE: Joe   Hi Rose,  Just got off the phone with Joe. He sounds great and wants to start talking about rtw. I did tell him that I thought you should manage the rtw but that I am willing to join you when the 2 of you would like to meet. I hope that is ok. He asked me if I could make this Friday or next Friday. I am open this Friday afternoon or all day next week.  I could be available this Wednesday after 115. Let me know if you decide to schedule some time to sit down with him.  Also, have you heard if (another associate/rc deleted name)is still planning on surgery this week? I have tried to contact her with no reply. If she is having surgery, I plan to go and check on her while she is in the hospital.  Thanks, Jean  Jean Lefebvre RN, CCP  Senior Case Manager  OhioHealth Group  jlefebvre@ohiohealthgroup.com  Office 614-566-0011  Cell 614-981-3655

| | | |
|---|---|---|
| 01/08/2013 | 12:30pm appt with Joe/Jean/Joes' sister | rcacioppo |
| | -rcacioppo | |
| 01/08/2013 | email fr Joe to his family doctor | rcacioppo |

Casagrande v. OhioHealth 001220

Received. I will put in the file. Thanks Joe.   Rose M. Casioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness  614-566-3747  fax 614-566-6772  OhioHealth  3545 Olentangy River Road  Suite 425 Columbus, OH 43214-3908                               FORTUNE "100 Best Companies to Work for 2010"   -----Joe <jcasa123@aol.com> wrote: -----  To: "rcaciop2@ohiohealth.com" <rcaciop2@ohiohealth.com> From: Joe <jcasa123@aol.com> Date: 01/08/2013 11:45AM  Subject: Fwd: To Dr DiPietra , update from patient Joe Casagrande (personal and confidential)     Sent from my iPod  Begin forwarded message: From: <mailto:Jcasa123@aol.com>Jcasa123@aol.com <mailto:Jcasa123@aol.com> Date: January 4, 2013 11:31:18 AM EST  To: <mailto:info@canyonmc.com>info@canyonmc.com <mailto:info@canyonmc.com> Subject: To Dr DiPietra , update from patient Joe Casagrande (personal and confidential)  Hi Dr D.:  I wanted to update you on things since I completed Detox at Shepard's Hill in Newark on Monday December 17.  1. The next day 12/18 I had an evaluation meeting with Anne Price at Neil Kennedy Recovery Clinic in Dublin for their intensive outpatient rehab program. Thinking that they would get me in quickly I still have yet to have a single meeting after many phone calls on my part. So basically they have dropped the ball. 2. Meantime after getting out of Detox on 12/17 I have been staying at my sister and brother in law's house in Powell. She and I were both concerned about me going back to my house alone that it would be easier for me to be tempted to go back to what I was doing before...In addition, we also thought it would be easier to go to the intensive outpatient sessions (3 per week) from my sister's home base in Powell rather than my place on the east side of Columbus.  3. on the positive side I'm letting you know that I am no longer on any sleep medications at all, neither prescription or over the counter, When I told Anne Price at Neil Kennedy that I had taken Ambien the nite before I met with her on Dec 18 (script from you) she said that I could not be on Ambien and be in that program...after that meeting I contacted your office and asked for Trazedone instead as that was what they gave me at Shepards Hill and its non addictive but you told me to go on over the counter. instead..so I only took the Ambien for two nites Dec 17 and Dec 18 and stopped that..after that I took Unisom (over the counter) for the next two nites but I woke up with shaking on the Unisom, so I just decided to go off everything sleep-med-wise and I've been able to sleep pretty well mainly because my extreme anxiety and stress levels have dropped considerably, which is what was causing my sleeping problem to begin with. So I've not taken anything for sleep since Dec 20,  4. There has been such a delay in Neil Kennedy getting me into a program and they don't have any psychiatrists on staff, counselors only,, (they make psych only as referrals out). I questioned with Rose at OhioHealth if it even makes sense at this point since its been 2.5 weeks since being out of Detox. I suggested to Rose that I just do my counseling through OhioHealth employee assistance program ..last summer I met with Rick from there twice about my extreme anxiety...  5. Also from a financial situation I am on ST Disability thru Feb 12. In 2012 I had met all my Aetna insurance deductibles and co pays and could have done 2 to 3 weeks of intensive rehab for free (100% covered)..now its 2013 and all that goes away... and I was told these counseling meetings will cost $120 per session out of pocket. I spoke with my OhioHealth disability case manager Rose Cassiopo yesterday and told her I thought this program may not be helpful anyway since its been such a delay in getting me in and they don't have psychs on staff anyway...also its unaffordable for me since I'm only getting disability pay....I mentioned to her that I'd really just like to be referred to a psych directly who is in my network plan thru my Aetna insurance . She suggested that I contact you and possibly go back to the original plan of the psych referral you gave me several months ago.. at the time after me calling that psych you recommended, his office called back and said they were not accepting new patients until January 2013. I don't recall his name and I'm not at my house to find his name on the paper you wrote for me several months ago. So I was wondering if you thought it was still a good idea to see him directly and would you be able to contact his office for me to get me in quickly if possible. just like you did for Shepard's Hill, you called them when my sister Toni and I were in your office last time.  6. Also Rose mentioned that you had me on ST Disability through February... I have long term disability and she suggested I start the paperwork for that to play . it safe as it could take several weeks for them (Cigna) to make a decision (its through Cigna Insurance whereas OhioHealth self insures on the short term side) as my ST runs out Feb 12 according to my conversation with Rose yesterday.  7. If need be I can come see you again so you can assess me or consult with me during an office visit. whatever makes you feel more comfortable.  Let me know what you think Dr D.  Hope all that makes sense.. Thanks again  Joe Casagrande  614-581-8001

01/08/2013   spoke to Joe/spoke to Jean L.                                                           rcacioppo

01/03/2013   (614)581-8001 spoke to Joe
Told him that I spoke to Jean; she mentioned re: assistance with RTW;  Called assessment person he met with 2 weeks ago this past Tuesday; Has been keeping Jean informed; finally talked to Ann, the evaluator; need to call 1-800# and they will verify his insurance; on 1/2; hit extension and it went to vm; he left another detailed vm for this afternoon. This morning did get a live person; spoke to a Jerod; send pw to Ann to get it set up;  Did Joe ever inform his family doctor; Ann had him fill out release forms. Encouraged Joe to call his doctor;  Not feeling in danger; feels comfortable at his sister's; doesn't have desire to go back to what he was doing during this time period. States Neil Kennedy sessions Even in network it might be $120 per session per Jerod who he spoke with on phone. CM again suggested he touch base with Dr. DiPietra as EE also talking about whether counseling sessions vs psychiatry would be best route. CM suggested he check out the NK sessions--supposed to be for 9 sessions so EE will but also may check out EAP again.  CM gave EE LTD information; EE to do intake as TDP end will come before estimated RTW of 3/1.  -rcacioppo   -rcacioppo

12/28/2012   PC fr Joe                                                                                       rcacioppo

Casagrande v. OhioHealth  001221

Joe called to give me update; he spoke to Jean L. yesterday, after detox had eval at Neil Kennedy but since then hasn't heard back from them; Cm left vm back asking Joe to call his doctor to see if they can contact NK for him; asked him to call me back on monday as will be out of office rest of afternoon. -rcacioppo

| 12/27/2012 | left return vm for Joe C. | rcacioppo |
|---|---|---|

left vm back fr Joe who left me vm on 12/20 at 2:50pm; Joe was calling to touch base/give update. CM left vm stating look forward to hearing from him and hoped things were going a bit better.  -rcacioppo

| 12/18/2012 | email fr Jean Lefebvre-follow up | rcacioppo |
|---|---|---|

Oh Great, Jean. Glad you were able to connect with Joe. And glad we are connected!   Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness  614-566-3747  fax 614-566-6772  OhioHealth  3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908
                                FORTUNE *100 Best Companies to Work for 2010 *
-----"Lefebvre, Jean" <jlefebvre@ohiohealthgroup.com> wrote: ----  To: "RCACIOP2@OhioHealth.com" <RCACIOP2@OhioHealth.com> From: "Lefebvre, Jean" <jlefebvre@ohiohealthgroup.com> Date: 12/18/2012 12:02PM Subject: RE: Joe  I decided to call Joe today to offer support and he did call me back. He sound good with some anxiety and plans to attend appt at 3pm today.  Just thought I would let you know and thanks for all of the assistance. Jean

| 12/17/2012 | PC fr Sister, Toni Carroll | rcacioppo |
|---|---|---|

PC fr sister, Toni--with Joe--discharged from intox. at Shepherd Hill;   PC fr Joe--not as difficult as he thought it bc--had him on a phenobarbitol, step down--taking that for 3 more weeks and then following up with Neil Kennedy Recovery Cetner -appt tmw. Dec. 18th. Sister will accompany them.    Scared of getting out as they were giving me Trazodone to help him sleep; which in turn turned him to alcohol.   Going to pick

| 12/14/2012 | PC to Sister | rcacioppo |
|---|---|---|

Spoke to Toni; she got him over to the rehab --AETNA covers the 3-5 days of detox but not the inpatient stay--it would cost $11000--so they will go to Neil Kennedy afterwards for outpt. The doctor there discouraged said it wouldn't work if they did that and Joe was discouraged and almost left. Toni scolded the doctor but convinced Joe to stick to the plan to do the detox and then they will go to Neil Kennedy.  She will be calling him tonight. and I asked if she could let him know I got his msg and am thinking of him. She also reminded him of importance of papertrail for LTD disability etc. if needed.   CM gave my cell# in case she needed anything. -rcacioppo

| 12/13/2012 | PC fr Joe's sister | rcacioppo |
|---|---|---|

Dr. DiPietra wrote script to help EE with withdrawing fr alcohol (sister insisted he give him something); trying to get him into Shepard's Hill facility in Newark; Sister checking if within network. TExted Joe tonight bec. he took the med and he had a rough night, she made sure there was nothing in the house for him to drink.  DR. D. calls dhimself and spoke to the MD at Shephard's Hill.   Joe upset bec. Dr. DiPietra talked to me and wanted to know what it was about; CM told her that Dr. P was upset took personal affront as genuinely cares about Joe and my name was noted in the letter so he called me. I explained that Joe had seenTim Nuss who referred him to Talbot Hall, and said front desk would help connect and front desk said they didn't do that and from there Joe had to do it on his own and had a lot of trouble helping.

| 12/13/2012 | LOA extension ltr sent | mheyder |
|---|---|---|

| 12/13/2012 | Reed mx- ERTW 3/1/13 | mheyder |
|---|---|---|

| 12/12/2012 | spoke to Dr. DiPietra/Allison | rcacioppo |
|---|---|---|

spoke to Dr. DiPietra; he was upset by letter he received from Toni, Joe's sister. He went on in length. Has been JOe's doctor for 20 years.Said they had risk mgt reviewed and he's reaching out bec. myname was mentioned in letter as indicating I was 'surprised that his office wasn't doing more' in way of referral. CM stopped Dr. DiPietra to assure him that Joe did have trouble getting connected to Talbot and Parkside and that we had sent fax to get extended off work and I had left a couple of msgs with Tim Nuss the name that Joe gave me to get off work mx. extended. so yes, surprised that his office didn't insure a connection with tx. was made. I apologized as told him I have the utmost respect for him and his position and work with physicians here. I said in future I will be more careful of what I say to family members and did encourage them to make a new appt with him to discus the issue. In end, he said he was assured by my intention and we commisserated on our Italian background. Dr. D. prides himself on his empathy has 4 daughters, etc. he says.  -rcacioppo

| 12/11/2012 | spoke to EE | rcacioppo |
|---|---|---|

-informed EE that mgr is filling position and sending letter; didn't want to blindside him;  -Dr.s office doesn't want to prescribe meds that he need--needs med or only resort he said he has is to drink; when started "Indium"-Ambien-- to help him sleep when working night shift; when went to Grant in August-the d/c pw said to continue the "Ambien"-followed up to doc and he said not going to give indium; but EE needs the Indium sleep. -his PCP called after recieving letter so has appt on 12/12.--sister encouraging him to go but down.  -Dublin called and they need him to be de-toxed.  -states listening to classical music helps him--telling me about Wonamaker Flash Mob video on YouTube at the Macy's Philly--  -when mgrs stating that not a good fit, it hit him and he became depressed; EE said he felt like a failure and they said no, no, no but it didn't help him bec. that's where he was at; CM told him similar thing that sometimes things aren't a good fit but it does not mean he's not talented. He should keep trying to find out where would be a good fit.  -rcacioppo

Casagrande v. OhioHealth 001222

| | | |
|---|---|---|
| 12/11/2012 | PC fr Sister, Toni Carroll on 12/10 | rcacioppo |

-EE has phone so use same# -EE has appt with Neil Kennedy Recovery Center on 12/14 -Sister not able to get him into Parkside-very difficult. so they will go to Dublin (NKRC). Cm told her I'd give him a call to touch base this week; told her not to worry about the mx. but appreciated her getting it fr recovery center when possible. CM to continue TDP. -rcacioppo

| 12/11/2012 | email fr Amy, mgr.-filled position | rcacioppo |
|---|---|---|

To: Amy S Sayers/Staff/OhioHealth@OhioHealth From: Susan Talebi/Staff/OhioHealth Date: 12/11/2012 12:20PM Cc: Rose M Cacioppo/Staff/OhioHealth@OhioHealth, Diane M Heyder/Staff/OhioHealth@OhioHealth Subject: Re: Joe Casgrande  That is fine, thank you for the update :)  st  Susan Talebi  Associate Relations Consultant  Human Resources  Phone: 614-566-4829  Fax: 614-566-6953  Email: stalebi@ohiohealth.com  Confidentiality Notice: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, distribution or disclosure is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of the original message. _____  Thank you Amy.  We will refer him to work with Associate Relations for new position when able to RTW. Currently still on LOA probably through end of year. Thanks.  Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness  614-566-3747  fax 614-566-6772  OhioHealth  3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908 _____  FORTUNE *100 Best Companies to Work for 2010 *  ----Amy S Sayers/Staff/OhioHealth wrote: ----  To: Rose M Cacioppo/Staff/OhioHealth@OhioHealth  From: Amy S Sayers/Staff/OhioHealth Date: 12/11/2012 11:16AM Cc: Diane M Heyder/Staff/OhioHealth@OhioHealth, Susan Talebi/Staff/OhioHealth@OhioHealth Subject: Re: Joe Casagrande  Hi Rose, Diane, and Susie,  I received approval for Joe Casagrande's position, so I am completing and sending his letter today that I have filled his position effective today since I have one of my staff members that want his position. Thanks!  Amy Sayers, RN, MSN  Nurse Manager  7 Orange  Riverside Methodist Hospital  566-4747 (office)  229-8206 (pager) _____  FORTUNE * 100 Best Companies to Work for 2010 *

| 12/07/2012 | PC fr EE | rcacioppo |
|---|---|---|

-verbal permission to talk to Toni Carroll given by EE; -EE's sister calling Neil Kennedy which gave them; give an 1800# initial assessment;

| 12/06/2012 | left vm at Canyon Medical Center | rcacioppo |
|---|---|---|

Tim Nuss and I playing phone tag; CM left detailed msg with a LuLu letting her know that we need an off work note from Tim to help extend patient's off work and also his sister informed me that his cell no is not working and left Sister's number for Tim to reach out as EE is in crisis and has not yet started treatment.  -rcacioppo

| 12/06/2012 | pls lcontinue TDP pay | rcacioppo |
|---|---|---|

CM and EE following up on mx. -rcacioppo

| 12/06/2012 | Toni Carroll sister of EE called614-893-2906 | rcacioppo |
|---|---|---|

returned PC to sister of EE who explained that EE's cell phone stopped working on Sunday so she asked for update on disability . CM told her I've been unsuccessful in reachin gTim Nuss, NP, who I've been playing phone tag with. We have continued to extend TDP.  Sister admitted EE had to miss 11/27 appt with Neil Kennedy Recovery Center bec. he cannot drive; and she was very sick last week; Cm gave her number so she can schedule.She will also contact EE's doctor as feels he should be helping out more.  She will see EE tmw. as CM asked that he give verbal or email permission for me to talk with her further. Gave her my email address. Thanked her for calling as we had been concerned.  -CM left Jean Lefebre an update-she is a case manager at for clinical intergration at OhioHealth assisting in case and had also been trying to reach him.  -rcacioppo

| 11/28/2012 | Tim/Canyon MEd. center 864-6010 | rcacioppo |
|---|---|---|

Tim/Canyon Medical Center left me return vm on Monday 11/26 in re: to Joe.-left me vm.  Cm ret. call this morning; still waiting on extended off work medical. -rcacioppo

| 11/27/2012 | TDP end date 2/12/13 ltr sent | mheyder |
|---|---|---|

Casagrande v. OhioHealth 001223

TDP End Date  RE: Joseph Casagrande Clock Number: 77893  FMLA expiration date: N/A  Per Federal guidelines you may post their position following their use of 12 weeks of FML job protection.  If Applicable, TDP End date: 2/12/2013  TDP Hours: 224.23 SSP Hours: N/A TAP Hours: .17  Associate Health Disability Management will:  Send associate FML/TDP end letter (see attached)  Pay remaining TDP/SSP/TAP hours  Notify manager/associate 6 weeks prior to 180 days on a Leave of Absence  IF YOU POST THE POSITION:  · Contact your Associate Relations Rep  · Call your associate to inform them of this expiration and your intent to post the position  · Follow-up by sending the attached letter of your intent to post position via certified mail  · Send second letter if you fill the position  o Use attached letter both times and modify for your circumstances  · If associate is released before the position is filled, you must take them back in the same or equivalent position  Before making any changes to the PAF (scheduled hours) while your associate is on an LOA, please ensure to review changes with your Associate Relations Representative  DO NOT TERMINATE ASSOCIATE AT THIS TIME  · Your associate must be on a leave of absence for 180 days in a rolling calendar year before termination is considered  · You will be notified approximately 6 weeks prior to your associate being out on a leave of absence for 180 days unless the associate has returned to work.  Contact Associate Health and Wellness Disability Line at 614-566-4100 or 740-615-4100 if you have any questions.  Attachment: FMLAExpiredMgrLtr08.07.08.doc    D. Marsha Heyder  Disability Claims Analyst  Associate Health & Wellness   Ph# 614-566-3237  Fax# 614-566-6772
FORTUNE "100 Best Companies to Work for 2010 "

| | | |
|---|---|---|
| 11/26/2012 | left vm for Joe | rcacioppo |

-rcacioppo

11/26/2012    email reply to Jean-picked up her vm                                        rcacioppo

Jean,  Thanks for leaving him message. I picked up your message about noon today as was out of office before then.  And it seems Joe did not listen very well to your instruction regarding presenting himself for inpatient evaluation and then letting them determine if inpatient was appropriate. He did end up getting an appointment in Dublin as outpatient at Neil Kennedy REcovery Center. Rick/EAP passed along a message to Joe with this resource. Joe said he now has appt there tomorrow 11/27 at 5pm. He indicated Parkside would have been more convenient geographically however was willing to go to Dublin.  Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness  614-566-3747  fax 614-566-6772  OhioHealth  3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908
FORTUNE "100 Best Companies to Work for 2010 "    -----"Lefebvre, Jean" <jlefebvre@ohiohealthgroup.com> wrote: -----  To: "RCACIOP2@OhioHealth.com" <RCACIOP2@OhioHealth.com>  From: "Lefebvre, Jean" <jlefebvre@ohiohealthgroup.com>  Date: 11/26/2012 12:06PM  Subject: Parkside  Hi Rose,  I left a message for Joe to call me back. I did call Parkside again to double check admission policy but I had to leave a message. I was informed and had informed Joe that he would have to register, a 2 hour assessment would be done to see if he required inpatient admit vs could be managed as an outpatient. I am waiting to double check that this is the case. I had provided him with 3-4 names of psychiatrists that are in network for him to call last week so I guess I will await his call back.  Jean Lefebvre RN, CCP  Senior Case Manager  OhioHealth Group jlefebvre@ohiohealthgroup.com  Office 614-566-0011  Cell 614-981-3655  ***This message is to be used exclusively by the addressee(s). This message contains information that is privileged, confidential and exempt from disclosure pursuant to ORC 2305.25, 2305.251, 2305.252 and 2305.253. Unauthorized disclosure of this information is strictly prohibited. If you received this transmission in error, please delete the message and any attachments and notify the sender of the error immediately via email reply.***  _____ This message was secured by ZixCorp <http://www.zixcorp.com/>(R).

11/21/2012    send TDP end let pls.                                                          mheyder

Thanks Amy.  Marsha: can you please send TDP end date letter to Joe for planning purposes and let me know of estimated TERM date... Thanks.  Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness  614-566-3747  fax 614-566-6772  OhioHealth  3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908    _____ FORTUNE "100 Best Companies to Work for 2010 "

11/21/2012    emails bet. Jean L. & Rose, CMs                                              rcacioppo

Sounds good.  Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness  614-566-3747  fax 614-566-6772  OhioHealth  3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908    _____ FORTUNE "100 Best Companies to Work for 2010 "  -----"Lefebvre, Jean" <jlefebvre@ohiohealthgroup.com> wrote: -----  To: "RCACIOP2@OhioHealth.com" <RCACIOP2@OhioHealth.com>  From: "Lefebvre, Jean" <jlefebvre@ohiohealthgroup.com>  Date: 11/26/2012 02:40PM  Subject: RE: Parkside  Thanks for the update. I will attempt to touch base with him again on Wednesday if I do not hear from him prior to this.  Jean    -----Forwarded by Rose M Cacioppo/Staff/OhioHealth on 11/21/2012 03:21PM -----  To: Rose M Cacioppo/Staff/OhioHealth@OhioHealth  From: Amy S Sayers/Staff/OhioHealth  Date: 11/21/2012 02:30PM  Subject: Re: Joe Casagrande   Thanks, Rose. I have not notified Joe yet of this information as I am awaiting the approval of his posted position, but I have "filled" his position with a new graduate nurse on my unit. As soon as I have approval of the posted position, I will notify him of this news. Thanks!  Amy Sayers, RN, MSN  Nurse Manager  7 Orange  Riverside Methodist Hospital  566-4747 (office)  229-8206 (pager) _____ FORTUNE "100 Best Companies to Work for 2010 "

Casagrande v. OhioHealth 001224

| | | |
|---|---|---|
| 11/21/2012 | EE has appt -Neil Kennedy | rcacioppo |

has appt at Neil Kennedy Recovery Center—Nov. 27th 5pm—1.5 hr assessment; but on other side of town from him in Dublin; EE said Parkside is closest to me ; CM still necs to call Paula and Parkside -rcacioppo -spoke to Parkside--they do have an IOP and accept AETNA however typically patients

| | | |
|---|---|---|
| 11/21/2012 | left vm for Tim Nuss CNP Canyon Med center | rcacioppo |

was told Tim is not in office today; will return on 11/26/2012. -rcacioppo

| | | |
|---|---|---|
| 11/21/2012 | email to mgr/DCA-extend TDP | rcacioppo |

-----Forwarded by Rose M Cacioppo/Staff/OhioHealth on 11/21/2012 03:21PM ----- To: Rose M Cacioppo/Staff/OhioHealth@OhioHealth From: Amy S Sayers/Staff/OhioHealth Date: 11/21/2012 02:30PM Subject: Re: Joe Casagrande Thanks, Rose. I have not notified Joe yet of this information as I am awaiting the approval of his posted position, but I have "filled" his position with a new graduate nurse on my unit. As soon as I have approval of the posted position, I will notify him of this news. Thanks! Amy Sayers, RN, MSN Nurse Manager 7 Orange Riverside Methodist Hospital 566-4747 (office) 229-8206 (pager) Joe is not ready to RTW; we are trying to secure appt with specialist and his referring provider is not very helpful. I know you have posted/filled position. I will be referring Joe to work with our workplace accommodation specialist and HR when ready to RTW. Marsha: a note to payroll: Please extend TDP through end of next pay period ending 12/8/2012--I will follow up for medical with his provider. Rose M. Cacioppo, MA, CRC Disability Case Manager Associate Health and Wellness 614-566-3747 fax 614-566-6772 OhioHealth

| | | |
|---|---|---|
| 11/21/2012 | spoke to EE | |

-Rick, EAP 's assistant called him-and gave him the number of another possibility. "Neil Kennedy Recovery Center"6543 Commerce Parkway, Dublin, OH 43017 (614) 210-0416 -CM to follow up with Tim Nuss to get extended off work medical. -CM will see if any other resources would be suggested. -waiting on call back fr Jean LeFevbre -rcacioppo

| | | |
|---|---|---|
| 11/20/2012 | EE called | rcacioppo |

STates he called Parkside and they said don't do eval. CM told him I'd follow up with Jean and get back to him; also advised him to sched. with EAP again. He said Rick booked thru Dec. 4th-so CM advised him to take a sameday/emergency appt -rcacioppo

| | | |
|---|---|---|
| 11/19/2012 | spoke to Jean LeFebure | rcacioppo |

| | | |
|---|---|---|
| 11/19/2012 | Mgr. posting position | rcacioppo |

EE confirmed receipt of certified letter; Mgr had called them previously. -rcacioppo

| | | |
|---|---|---|
| 11/19/2012 | spoke to EE | rcacioppo |

EE went to Grant ER yest. -had anxiety attack at Kroger's yesterday-they are recommending parkside inpatient. Did not get into see Rick; cancelled it ; not sure, it's stupid; Jean LeFevre at OhioHealth Group; 981-3655tel She said shewas going to try and help get into see a psychiatrist; left vm Tim, NP at my Canyon medical center; Dr. DiPietro referred him to Dr. Young--called but not accepting patients; Amy his mgr posted and position; -rcacioppo

| | | |
|---|---|---|
| 11/15/2012 | Return PC to EE-EAP appt 11/15/2012 | rcacioppo |

EE left me vm on Wed. 4:10p—Parkside has no outpt. eval. program so he went ahead and made appt with EAP -Rick at 10am. CM ret. call on 4:45pm (Thurs) and left vm back; asked him to call me back in morning; wondering how EAP went and if Rick had suggested resources. -rcacioppo

| | | |
|---|---|---|
| 11/14/2012 | PC fr EE | rcacioppo |

Went to Talbot Hall, they said it would be out of network-charge would be $660--would be responsible for half of that; They suggested the Woods at Parkside. CM asked if he will call Parkside. He said he would. Did not go to EAP bec. was going to Talbot's. Did not see the need to go to two places. CM suggested he call Parkside but if cannot get in to go ahead and reschedule with EAP. CM will touch base with EE tomorrow. -rcacioppo

| | | |
|---|---|---|
| 11/14/2012 | (614)581-8001 | rcacioppo |

left vm for EE to follow up; Kathy S. gave me update on Tuesday 11/13 events while I was out of ooffice. Had taken call from Joe. -rcacioppo

| | | |
|---|---|---|
| 11/13/2012 | gave assoc. Aetna phone # | ksipes |

1-877-748-5043 Aetna precert. Assoc. was at Talbot and was having difficulty. CM called Ohiohealth Group --and Tabot is out of network, but if pre-cert--ok. Cm notified Joe, and Talbot working on pre-cert. Cm briefly spoke with someone at Talbot to attempt to resolve. She stated has been working on for 4 hours with Aetna. Asking if anything else avail. in network--gave Ohiohealth Group #. --Cm called Joe back-vm if got worked out. KSipes

| | | |
|---|---|---|
| 11/09/2012 | spoke to EE | rcacioppo |

Casagrande v. OhioHealth 001225

PC to EAP--Dave to call EE back to schedule with Rick Gould; Left vm for Kathy Hill/OhioHealth Group 566-0108 OSU East-Talbot Hall 257-3760-transferred to a call Pam in financial services--asking her to call me or Joe back Joe will call me in an hour (about 11am) to see if anyone called him back. --rcacioppo --EE called me back--11am -scheduled with Rick/EAP for 4:30pm on Monday We haven't heard back from Kathy Hill at OhioHealth Group nor Talbot Hall; -CM called Talbot Hall again trying to reach Pam/Financial Services...; stated Pam is not here today at all; but counselor will take care of pre-cert when he is down there. -CM called EE bak and told him that the best thing to do at this point is to go down and meet with the counselor to explore pre-cert etc. He said okay but he thinks for today-he is feeling under the weather--(feels cold coming on) may resched. for Monday; CM said is he sure--maybe best to just go and address--but ultimately he will decide; has EAP set up for Monday; CM to call him if hear back from anyone; EE to call me definitely by Tues to let me know how things are going. -rcacioppo

11/08/2012    EE called; suggested outpt OSU east                                                 rcacioppo

Dr. referring him to Talbot Hall; day before called-they said walk in facility; sister took him to Talbot Hall--and they said you needed appt.-walk in for detox only--he doesn't need that; has appt set up for 11/9/2012; can't seem to find if they are in network or not; called AETNA--not sure if in network or not; went on-line but hard to navigate--'worst system' (CM agreed it was hard); offered to call Kathy in benefits at 566-0108..Kathy Hill CM left vm for Paula K to see if she knew but told him I'm not sure why; -rcacioppo from 5:30p to 7, Joe and I on phone with AETNA and finally Talbot's hall, got no where--very frustrating; CM to report issue to OhioHealth Group and benefits. We decided we would make calls in morning; Talbot Hall needs to precertify. -rcacioppo

11/07/2012    (614)581-8001 PC to EE--                                                            rcacioppo

left vm for EE to let him know we rec'd mx from Dr. Nuss taking him off work thru ERTW 11/23/2012 (day after Thanksgiving); wished EE a good day today and to let me know if he needs anything; told him we have what we need to have him on LOA and get paid TDP. To call me closer to this RTW date with update ie if being extended. -rcacioppo -

11/07/2012    Recd mx- ERTW 11/23/12                                                              mheyder

11/05/2012    Fax to Dr. Nuss with form B                                                         rcacioppo

DATE:    11/5/2012    SUBJECT:    Joseph Casagrande DOB: 3/19/56    TO: Dr. Tim Nuss
FAX #:    614-552-5122 tel;    FROM:    Rose M. Cacioppo, MA,CRC, CDMS Case Manager,
Riverside Hospital - Return-To-Work Programs/Disability Services, Associate Health & Wellness 614-566-3747 tel
NO. OF PAGES INCLUDING COVER: 2    Dear Dr. Nuss:    I am a case manager in the Associate Health & Wellness office at Joe's workplace. I understand that you will be taking him off work for a medical leave of absence. Joe asked me to fax the following form B leave of absence form to you for completion.    Please indicate medical reason for off work, begin date and estimated RTW date (or next appt for re-val.)    Please fax back to: 533-0039.    If you have any questions please advise.    Sincerely,    Rose M. Cacioppo, MA, CRC

11/05/2012    reopen case/pay                                                                     rcacioppo

-rcacioppo

11/05/2012    Dr. Tim Nuss fax 552-5122                                                           rcacioppo

11/05/2012    EE called/Initial assessment                                                        rcacioppo

Advised him that mgr informed me he was going to contact me; told him our office went ahead and sent out his LOA pw and the FMLA letter (denied as he's there less thana year); did advise him that he's elig. for TDP    EE said he's doing okay, he Saw MD today; CM offered to fax MD the paperwork; MD referred him to go to Talbot Hall--where he can go as walk-in and be be seen psychiatrist, outpt. basis...;    CM offered EAP as well;    Did meet with EAP in past he said (with Rick);    CM asked him what happened; he said on Sunday they found him; he has missed work on Friday/SAt--had taken some sleep meds...kept taking them; just wanted to sleep, not wanting to talk to anybody, wanting to hibernate; his roommate found him, then called his sister and someone had called the medics; they took him to Grant-- he said he hadn't been eating anything either; medic came, was groggy and pale, took blood sugar and really low; CM asked him if anyone was with him today; he said yes, his sister is here-- who lives in town.    CM asked if anything going on at work or personally that caused him stress. He said they told him he should look for another position as that floor is too difficult; that made him feel bad...and there are other personal things going on, he said; CM said I was sorry to hear that and encouraged him to keep him in touch with me; when feeling better perhaps we can work with him in identifying positions that are better suited. Cm confirmed he is an RN so CM added that that can give us more flexibility as there are many different environments for RNs. CM offered to fax his Dr. the LOA form B; and advise dhiml to follow up with his MD andgive permission to send back.    Dr. Tim Nuss fax 552-5122 -rcacioppo

11/05/2012    FMLA denial ltr/notification sent                                                   mheyder

11/05/2012    FMLA denied-less than 1250 hrs                                                       mheyder

Casagrande v. OhioHealth 001226

| | | |
|---|---|---|
| 11/05/2012 | Sent EE LOA packet | mheyder |

**11/05/2012**  spoke to mgr-- — rcacioppo

EE was no call no show this weekend, mgr. said family found him at home in bed, and he's going through some mental health issues; mgr said I had worked with him in the past; mgr gave EE mynumber. She spoke to Susie and they agreed he should be put on medical LOA. Per mgr, EE has doctor's appt at 11:45am--mgr advised EE to get things rolling with AHW; mgr. said I should be hearing back from him today  CM will go ahead and send LOA packet to Joseph; also mgr requesting form letter; EE aware that mgr will need to post position as EE has been here less than 1 year;   -rcacioppo   -asked Marsha, DCA to open pay and send out LOA packet  -rcacioppo

**08/09/2012**  email to mgr/DCA; close pay/paf — rcacioppo

Thank you for the update! Amy Sayers, RN, MSN Nurse Manager 7 Orange Riverside Methodist Hospital 566-4747 (office) 229-8206 (pager)                     fyi Marsha:
I'm closing out of case; released as of 8/7 to RTW; I believe first scheduled work day is this Friday August 10th; can you make sure PAF change is done from LOA. Thank you.   cc: Amy :)--Joe reconfirmed he has no need for transitional work. BTW, He is very appreciative of the conversation he had with you prior to LOA. It took a load off him. Thanks for being great!  Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness 614-566-3747 fax 614-566-6772  OhioHealth 3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908

**08/09/2012**  CASE CLOSED — rcacioppo

EE, DOB: 3/19/56, STaff RN Third Shift  mgr. Amy Sayers med/surg telemetry  hire date: 12/5/2011 36hrs FMLA denied (as not worked here a year)  off work fr 7/20 to  ERTW 8/7/2012  dealing with severe anxiety, panic attacks  treated by Tim Nuss, CNP  Actual LW: 20 days  CM spoke to EE while on LOA--dealing with meds adjustment related to HighBP ; discussed possibility of short transition but EE met with his provider on 8/3 and confirmed he thought he was okay to RTW FD; released as of 8/7; first scheduled day back wil lbe ~8/10.  -rcacioppo

**08/09/2012**  EE ret PC 8/8; CM ret. PC 8/9 — rcacioppo

EE called to confirm all is well; he started back to work full duty; states does not need transition; met with his doc last Friday; emailed his mgr.  Asked me to follow up on question re: TB;  CM left return vm; CM consulted with Roberta, RN in AHW; EE is compliant re: TB thru end of Nov. 2012; told himI he can come up anytime to get TB.  Advised him I got his msg and to let me know how his weekend at work goes, but understand he doesn't need transition  CM to close out of case here. -rcacioppo

**08/07/2012**  left vm for mgr. — rcacioppo

to discuss if Joe needs transition on weekend.  -rcacioppo

**08/07/2012**  left vm for EE — rcacioppo

-rcacioppo

**08/02/2012**  EE ret. PC to CM — rcacioppo

EE returned PC; EE is being released to RTW on 8/7; next scheduled workday is 8/10 Fri, 8/11 Sat.  EE said he is planning to let his mgr if she posts some shorter shifts, to try and come back short 4-8hrs.;  Already feels so guilty feeling like a slugh; my fear is to come back in middle of 12s and has HBP and anxiety; almost 100% sure everything is under control.  Time period has been good for him to adjust meds;  planning to be back on full sched. for next weekend and he's going into see his doctor to see his opinion (and EAP-3rd one-Rick)  So much stress; having pain in back in neck; though it was muscle strain; missed a Sunday at work; the next monday went into doc--anti-inflammatory med; shot BP way up; same week of power outage--had to go to ER--out of BP and took awhile for that medication to get into system; the BP med wasn't doing the job for whole day;would go to work, feel BP giong out of control; led to anxiety and snowballed. Now feeling better.  EE said AMy was wonderful, once he finally got in to talk to her--she relieved a lot of anxiety;  Said he's been doing good; work has been well otherwise prior--he was having good customer scores; relatively new, hired in Dec--so a bit slower than others who have been there longer but doing well;  Plan;  EE to meet with Rick EAP tmw. and/or his Doctor to discuss if need any TW.  CM to touch base with AMy, mgr. if needed TW hours, for weekend of 8/10... could she maneuver.. CM to call him after speaking to Amy.  EE wants to know if due for TB or the one he took in Dec when hired as notice went around for annual TB testing.  CM said would doublecheck; clock# 77893.  EE to call me after speaking to EAP.  -rcacioppo

**07/31/2012**  initial email to mgr. Amy — rcacioppo

Thank you, Rose!  Amy Sayers, RN, MSN Nurse Manager 7 Orange  Riverside Methodist Hospital  566-4747 (office) 229-8206 (pager)                     fyi I also left a vm considering his estimated RTW date is 8/7. Thanks.  Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness 614-566-3747 fax 614-566-6772  OhioHealth 3545 Olentangy River Road Suite 425  Columbus, OH 43214-3908                     FORTUNE *100 Best Companies to Work for 2010 *   fyi--I've been assigned case manager to assist Joseph while on LOA from 7/20 to estimated RTW date on file of 8/7. I'm sending an initial contact letter introducing transitional work services if necessary. If you or he have any questions please contact me directly at 566-3747.  Rose M. Cacioppo, MA, CRC  Disability Case Manager  Associate Health and Wellness 614-566-3747 fax 614-566-6772  OhioHealth 3545 Olentangy River Road  Suite 425  Columbus, OH 43214-3908

Casagrande v. OhioHealth 001227

| 07/31/2012 | Mailed initial contact let to EE/PC to EE | rcacioppo |
|---|---|---|
| | Mailed initial contact let to EE with form B, TW fact sheet, with my card.   Left initial vm as well considering ERTW is 8/7;  -rcacioppo | |
| 07/31/2012 | CASE REVIEW | rcacioppo |
| | EE, DOB: 3/19/56, STaff RN  Third Shift  mgr. Amy Sayers mod/surg telemetry  hire date: 12/5/2011  36hrs  FMLA denied (as not worked here a year)  LTD elected? yes as of 1/1/2012   off work fr 7/20 to  ERTW 8/7/2012  dealing with severe anxiety, panic attacks  treated by Tim Nuss, CNP   sending intial contact let and initial email to mgr. -rcacioppo | |
| 07/24/2012 | Assigned Rose C | mheyder |
| 07/24/2012 | Mgr, Amy Sayers | awhite |
| 07/24/2012 | FMLA Denial Notification/letter sent | awhite |
| | To: Joseph Casagrande  cc: Susan T.   RE: FMLA DENIAL NOTIFICATION:  RE: Joseph Casagrande Clock Number: 77893 FMLA Denial LOA date: 7/19/12 - 8/7/12   Your associate has requested FML job protection. It has been DENIED as your associate does not meet the eligibility criteria. Per Federal guidelines you may post their position.  IF YOU POST THE POSITION:  ·Contact your Associate Relations Rep  ·Call your associate to inform them of this denial and your intent to post the position · Follow-up by sending the attached letter of your intent to post position via certified mail  · Send second letter if you fill the position  o Use attached letter both times and modify for your circumstances  · If associate is released before the position is filled, you must take them back in the same or equivalent position  DO NOT TERMINATE ASSOCIATE AT THIS TIME  · Your associate must be off 180 days in a rolling calendar year to be terminated  · You will receive notification of the end of TDP/TERM date and instructions unless the associate has returned to work.  Before making any changes to the PAF (scheduled hours) while your associate is on an LOA, please ensure to review changes with your Associate Relations Representative.  Contact Associate Health and Wellness Disability Line at 614-566-4100 or 740-615-4100 if you have any questions. | |
| 07/24/2012 | Rcvd mx - ERTW 8/7/12 | awhite |
| 07/24/2012 | Rcvd LOA & ROI forms | awhite |
| 07/24/2012 | FMLA Denied - empl'd < one year | awhite |

Casagrande v. OhioHealth 001228

Re: Joe Casagrande
Rose M Cacioppo
to:
Michael D Kramb
01/30/2013 10:24 AM
Cc:
Nancy Miller
Show Details


Security:

To ensure privacy, images from remote sites were prevented from downloading. Show Images


Thank you Michael—if you can email Nancy a list of the positions (just the job title and ref# if avail) he showed interest in (I'm not sure I recorded them), that would be great. Nancy may be able to add input re: what she thinks of those positions in relation to acuity etc and then in relation to any other concerns that Joe expresses when he meets with her. He is following up with his doc and seeing EAP today for follow up care.

Rose M. Cacioppo, MA, CRC
Disability Case Manager
Associate Health and Wellness
614-566-3747
fax 614-566-6772
OhioHealth
3545 Olentangy River Road
Suite 425
Columbus, OH 43214-3908

FORTUNE "100 Best Companies to Work for 2010 "


----Michael D Kramb/Staff/OhioHealth wrote: ----
To: Rose M Cacioppo/Staff/OhioHealth@OhioHealth
From: Michael D Kramb/Staff/OhioHealth
Date: 01/30/2013 10:19AM
Cc: Nancy Miller/Staff/OhioHealth@OhioHealth
Subject: Re: Joe Casagrande

Rose,
Thank you for the update. I will look at the positions he applied for today and speak with the recruiters for those positions.

Thanks,
MK


Michael D. Kramb
Associate Relations Coordinator
OhioHealth Human Resources
550 Thomas Lane | Columbus, OH 43214
Office (614) 566-4309 | Fax (614) 566-6953
mkramb2@ohiohealth.com

FORTUNE "100 Best Companies to Work for 2010 "



Rose M Cacioppo---01/30/2013 10:03:35 AM---Nancy: Joe has been released to work 2/1Casagrande/2010hioHealth 001153
but his position in Amy's area has been posted.

From: Rose M Cacioppo/Staff/OhioHealth
To: Nancy Miller/Staff/OhioHealth@OhioHealth
Cc: Michael D Kramb/Staff/OhioHealth@OhioHealth
Date: 01/30/2013 10:03 AM
Subject: Joe Casagrande

Nancy:

Joe has been released as of 2/1/2013 to RTW but his position in Amy's area has been posted and associate agrees he needs to apply for nursing jobs with less acuity; he's okay to return to bedside and Amy told him and HR that she would support reference in positions in nursing wit hless acuity; Joe is excellent with patients, we understand. He is an experienced worker but relatively new to nursing profession. His resume is filed in Prognos.
I've told him to call you as he has passed some reff# to Michael in HR but has not yet applied as eager to find out more about each position and if appropriate fit . We thought it would be helpful if you got involved.

Michael: I did tell him to go ahead and apply for up to 3 positions he thought would be a good fit to get ball rolling again. Hope that is okay.

Regards,

Rose M. Cacioppo, MA, CRC
Disability Case Manager
Associate Health and Wellness
614-566-3747
fax 614-566-6772
OhioHealth
3545 Olentangy River Road
Suite 425
Columbus, OH 43214-3908

FORTUNE "100 Best Companies to Work for 2010 "